# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MATTHEW RIGNEY and DANIELLE HALL, individually, as the surviving parents and next of kin of Ryan Rigney and Rileighanna Rigney, deceased, and as the parents and legal guardians of M.R. and B.R., minors,

TRACY KILBURN, individually and as the surviving spouse and next of kin of Robert Scott Kilburn, deceased,

MICHELLE FELICIANO, individually and as the surviving parent and next of kin of Lucy Lane Connor, deceased,

KAYLA CELENE BRAKE, individually and as next of kin of Regenia Lynn Brake, deceased,

CARRIE JAZMIN BRAKE, individually,

KENDRA SKYLAR BRAKE, individually,

CAMERON LEVESTER GUY, individually,

QUENTIN ISAIAH BRAKE, individually,

PEGGY BETTY, individually and as surviving spouse of James Michael Betty, deceased,

DOROTHY MAY HANDLING, individually and as the surviving daughter and next of kin of Hallie Lee Gerber, deceased,

JOSEPH PRASNIKAR, individually,

THOMAS SANDERS, individually and as the surviving brother and next of kin of Joshua Lee Tyrone Hendrix, deceased,

No. 3:22-cv-0342
Memorandum in Support of Motion to Dismiss

KIMBERLY KEE, individually and as the surviving spouse and next of kin of Mark Steven Kee, deceased,

TIFFANY RENAE BRYANT and SHANE KEITH BRYANT, individually and as the surviving parents of Lilly-Anne Grace Bryant, deceased,

      Plaintiffs,

    v.

CSX TRANSPORTATION, INC., JAMES HUGHEY, and SHERRY HUGHEY,

      Defendants.

## MEMORANDUM IN SUPPORT OF CSX TRANSPORTATIONS, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12 (B)(6)

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 2

ARGUMENT............................................................................................................................ 3

   I.   **The Complaint Does Not Plausibly Allege a Duty Of CSXT to Protect the Public From Floods.**............................................................................................................. 3

   II.  **The ICCTA and the FRSA Preempt Plaintiffs' Effort to Regulate Rail Transportation Through Tort Claims.** ......................................................................... 7

      **A. The ICCTA Preempts Plaintiffs' Effort to Dictate Rail Regulation Through Tort Law.** ............................................................................................................... 7

      **B. The FRSA Preempts Plaintiffs' Efforts to Impose Additional Duties Regarding CSXT's Rail Safety Obligations.**............................................................................ 11

CONCLUSION ...................................................................................................................... 14

CERTIFICATE OF SERVICE

i

**Cases**

*A & W Props., Inc. v. Kansas City S. Ry. Co.*,
200 S.W.3d 342 (Tex. App. 2006)........................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................3

*Baker v. Canadian Nat'l/Ill. Cent. Ry. Co.*,
397 F.Supp.2d 803 (S.D. Miss. 2005)................................................................................12

*Bradshaw v. Daniel*,
854 S.W.2d 865 (Tenn. 1993)..............................................................................................3

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981)............................................................................................................11

*CSX Transp., Inc. v. City of Plymouth*,
92 F.Supp.2d 643 (E.D. Mich. 2000), *judgment aff'd on other grounds*, 283
F.3d 812 (6th Cir. 2002) ...................................................................................................8, 9

*CSX Transp., Inc. v. City of Sebree, Ky.*,
924 F.3d 276 (6th Cir. 2019) ............................................................................................7, 8

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993)..........................................................................................................7, 12

*Griffioen v. Cedar Rapids & Iowa City Ry. Co.*,
914 N.W.2d 273 (Iowa 2018) ..............................................................................................9

*Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*,
685 F. Supp. 2d 747 (M.D. Tenn. 2010)...........................................................................2, 3

*In re Derailment Cases*,
416 F.3d 787 (8th Cir. 2005) .............................................................................................12

*In re Katrina Canal Breaches Consol. Litig.*,
No. 05-4182 Section "K"(2), 2007 U.S. Dist. LEXIS 95799 (E.D. La. Dec 27, 2007) ....5, 6, 7

*In re Katrina Canal Breaches Consol. Litig.*,
No. 05-04182, 2009 WL 224072, at *1 (E.D. La. Jan. 26, 2009)..........................................9

Case 3:22-cv-00342   Document 2   Filed 05/12/22   Page 4 of 22 PageID #: 7

*Jones Creek Investors, LLC v. Columbia Cty., Ga.*,
  98 F.Supp.3d 1279 (S.D. Ga. 2015) ............................................................................9

*Kae v. Cumberland Univ.*,
  194 F.Supp.3d 676 (M.D. Tenn. 2016) ........................................................................4

*Kurns v. R.R. Friction Prods. Corp.*,
  565 U.S. 625 (2012) ...................................................................................................11

*Lanier v. Norfolk S. Corp.*,
  256 F.App'x 629 (4th Cir. 2007) .................................................................................6

*Lecroy v. CSX Transp., Inc.*,
  No. 2:14-cv-21128-RMG, 2014 WL 11046154, at *2 (D.S.C. Nov. 17, 2014) ........6

*Ludwig v. Norfolk S. Ry. Co.*,
  50 F.App'x 743 (6th Cir. 2002) ...........................................................................12, 13

*Maynard v. CSX Transp., Inc.*,
  360 F.Supp.2d 836 (E.D. Ky. 2004) ...........................................................................9

*Nashville & Chattanooga R.R. Co. v. King*,
  53 Tenn. 269 (1871) .............................................................................................4, 5, 6

*Nickels v. Grand Trunk W. R.R., Inc.*,
  560 F.3d 426 (6th Cir. 2009) .....................................................................................12

*Pere Marquette Hotel Partners, L.L.C. v. United States*,
  No. CIV.A 09-5921, 2010 WL 925297 (E.D. La. Mar. 10, 2010) .........................5, 6

*Rogers v. Louisville Land Co.*,
  367 S.W.3d 196 (Tenn. 2012) .....................................................................................3

*Rucker v. Metro. Gov't of Nashville & Davidson Cty.*,
  No. 89-165-II, 1990 WL 182275 (Tenn. Ct. App. Nov. 28, 1990) .............................5

*S.D. ex rel. S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*,
  280 F.Supp.2d 919 (D.S.D. 2003) .............................................................................11

*Sharp v. Ingham Cty.*,
  23 F.App'x 496 (6th Cir. 2001) ...................................................................................3

*Staples v. CBL & Assocs., Inc.*,
  15 S.W.3d 83 (Tenn. 2000) ..........................................................................................4

*Suchon v. Wis. Cent., Ltd.*,
  No. 04-C-0379-C, 2005 WL 568057 (W.D. Wis. Feb. 23, 2005) ...............................9

iii

*Tipton v. CSX Transp., Inc.*,
   No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426 (E.D. Tenn. July 7, 2016)............8, 10, 11

*Waubay Lake Farmers Ass'n*,
   No. 12-4179-RAL, 2014 WL 4287086................................................................9

*Wilburn v. City of Memphis*,
   No. W2009-00923-COA-R3-CV, 2010 WL 1407233 (Tenn. Ct. App. Apr. 9, 2010)..............4

**Statutes**

49 C.F.R. § 213.7 ...................................................................................13

49 C.F.R. § 213.33 .................................................................................13

 49 C.F.R. §213.37 .................................................................................13

49 C.F.R. § 213.39 .................................................................................13

49 C.F.R. § 213.233 ...............................................................................13

49 C.F.R. § 213.237 ...............................................................................13

 49 U.S.C. § 10102(6) ..............................................................................8

49 U.S.C. § 10102(9) ...............................................................................8

49 U.S.C. § 10501(b) ............................................................................7, 8

49 U.S.C. § 20101 ..................................................................................11

49 U.S.C. § 20103(a) ..............................................................................12

49 U.S.C. § 20106(a)(1) ..........................................................................12

49 U.S.C. § 20106(b)(1) ..........................................................................12

Federal Railroad Safety Act (FRSA) ................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..............................................................................2

Interstate Commerce Commission Termination Act of 1995 (ICCTA) ............... *passim*

Tenn. Code Ann. § 20-5-113 ......................................................................4

**Other Authorities**

*Short-term Response to Flooding: A Guide for Communities and Local Governments* (July 2021)
https://www.tn.gov/content/dam/tn/environment/water/policy-and-guidance/dwr-nr-g-08-flooding-response-faq-01132021.pdf ...............................................5, 6

Tenn. Exec. Order No. 85 (Aug. 25, 2021)...................................................................................1

Wright & Miller,
5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) ...........................................................................2, 3

v

# INTRODUCTION

This lawsuit seeks to turn a natural disaster of historic proportion into a tort suit. The catastrophic flash flood of August 2021, unprecedented in recent times in dimension and degree, visited tragedy upon the people of Waverly, Tennessee. Plaintiffs now seek to find their culprit not in "record-breaking torrential rainfall and flash flooding"[1] but in a private railroad, CSX Transportation, Inc. ("CSXT").

The Complaint is legally deficient in two threshold respects, both questions of law for the Court.

First, whereas the law holds government responsible for protecting citizens against floods, plaintiffs would shift this duty to a private entity, CSXT. The duty the Complaint hypothesizes—a generalized duty in tort on the part of a private landowner to protect the general public from a flood—does not exist. There being no duty, there can be no tort.

Second, whereas federal law retains for federal rail authorities oversight of design and management of rail facilities, the Complaint would arrogate this power to plaintiffs under state tort law. The Complaint is a frontal assault on CSXT's operation of the Trace Creek Bridge and its infrastructure. While the federal Surface Transportation Board is empowered by Congress to oversee those operations, private plaintiffs are not. Likewise, the safety hazards plaintiffs allege—regarding drainage, inspection, and treatment of culverts—are addressed and governed by federal rail safety regulations that even plaintiffs do not allege were violated. Two separate rail preemption doctrines thus forbid the transformation in law that the Complaint would effect.

Respectfully, the Complaint should be dismissed.

---

[1] Tenn. Exec. Order No. 85 (Aug. 25, 2021).

<u>**BACKGROUND**</u>

The Complaint arises from a "horrific event", Complaint ¶ 1 ("Compl"), that being catastrophic flooding in August 2021 that occurred when torrential, unprecedented rainstorms hit communities in Tennessee including that of Waverly. Compl. ¶ 1. Rather than focus on that "horrific event," the Complaint takes aim at CSXT and at two other Tennessee landowners, Sherry and James Hughey.

In particular, the Complaint, striving mightily to never mention the historic rainstorm and its breathtaking speed and volume, seeks to shift focus toward one sliver of the resulting devastation in the form of CSXT's Trace Creek Bridge—a railroad bridge in place for almost 80 years carrying rail tracks across the Trace Creek located to the east of downtown Waverly. The Complaint takes issue with how CSXT designs and manages the Trace Creek Bridge. ¶¶ 34-35, 37. It faults CSXT for not acting as an arm of the government, supposedly by its failure to coordinate with town government and emergency responders. ¶ 31. Finally, the Complaint faults CSXT for not being meteorologists—for not tending to historic data on flood risks or anticipating this weather catastrophe. ¶¶ 39-61.

Based on these contentions, the Complaint asserts claims of wrongful death (Count I), negligent infliction of emotional distress (bystander) (Count II), negligent infliction of emotional distress (standalone) (Count III), and negligence (Count IV).

<u>**LEGAL STANDARD**</u>

A court may grant a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*, 685 F.Supp.2d 747, 748 (M.D. Tenn. 2010). While the Court "construes the complaint in the light most favorable to the plaintiff …" *Id.* at 749 (citing Wright & Miller, 5B Fed. Prac. & Proc.

2

Civ. § 1357 (3d ed.)); *Sharp v. Ingham Cty.*, 23 F.App'x 496, 498 (6th Cir. 2001), "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Hutchison*, 685 F.Supp.2d at 749. Under the "plausibility standard" for a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

## ARGUMENT

The Complaint does not state a plausible claim for relief. First, there is no duty in tort or statute of the sort the Complaint supposes—a generalized duty on the part of private landowners to protect communities against natural disasters. Neither CSXT nor other landowners are authorized flood protection agents in Tennessee. The Complaint seems to appreciate this by repeatedly referencing those who *do* in fact owe this duty—federal, state, and local government.

Second, under two bodies of federal rail regulation, the claims asserted are preempted.

I.  **The Complaint Does Not Plausibly Allege a Duty of CSXT to Protect the Public from Floods.**

Under Tennessee law, each of plaintiffs' tort claims—negligence and negligent infliction of emotional distress—depends upon on the existence of a duty of care owed by the defendant to the plaintiff. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) ("No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff …"); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012) ("The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation

3

in fact, and proximate causation."). The Tennessee wrongful death statute likewise hinges on a duty owed. Tenn. Code Ann. § 20-5-113 (West); *see also Wilburn v. City of Memphis*, No. W2009-00923-COA-R3-CV, 2010 WL 1407233, at *5-6 (Tenn. Ct. App. Apr. 9, 2010) (affirming award in wrongful death action given defendant's failure to uphold duty to plaintiff). And "[w]hether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *see also Kae v. Cumberland Univ.*, 194 F.Supp.3d 676, 683 (M.D. Tenn. 2016).

The Complaint charges CSXT with the duty of flood protection for the general population of Waverly, Tennessee. Over and again, it enumerates CSXT's supposed obligations to mind the Trace Creek Bridge and associated infrastructure so as to safeguard the broader public. It then repeatedly characterizes CSXT as a virtual arm of government, required to coordinate with and aid government emergency responders in the matter of flood protection. *See, e.g.*, ¶ 66 (alleging that CSXT should have "warned the residents of Waverly of the impending danger and afforded them the opportunity to evacuate their families before they were struck by millions of gallons of rapidly flowing waters" and "failure to warn local government and emergency officials as well as the public").

Tennessee law recognizes no such duty. Over a century ago, the Tennessee Supreme Court resolved that it would be error to "charge[] it to be the duty of [a] carrier to use all reasonable care and precaution to provide against extraordinary emergencies," when it considered a similar case in which plaintiffs brought an action against a railroad to recover flood-related damages. *Nashville & Chattanooga R.R. Co. v. King*, 53 Tenn. 269, 270 (1871). The *Nashville* Court explained that a "flood was an extraordinary emergency which no human sagacity guided by any of the known principles of human reasoning could have anticipated, and,

4

consequently, could have been able to provide against at all in advance." *Id.* There exists no "obligation on the company," said the Court, "to anticipate by previous preparation for such an extraordinary emergency as this flood." *Id.*

Other courts have held likewise in analogous settings. Illustrative is *In re Katrina Canal Breaches Consol. Litig.*, where plaintiff community members similarly sought to impose on CSXT a duty to protect them from an historic flood. In that Hurricane Katrina litigation, Judge Duval of the Eastern District of Louisiana was confronted with the same theory as here: that CSXT must safeguard the public against flooding. Rejecting the notion and granting CSXT's motion to dismiss, Judge Duval reasoned that "[p]laintiffs ha[d] not identified any statutory, jurisprudential, or common law imposing on a railroad a general duty to protect the public from flooding." No. 05-4182 Section "K"(2), 2007 U.S. Dist. LEXIS 95799, at *119 (E.D. La. Dec 27, 2007). Judge Duval added that "[t]he lack of such law is not unexpected" because "*the duty to protect the residents and citizens…from flood has been statutorily imposed on other entities*." *Id.* at *117 (emphasis added). *See also Pere Marquette Hotel Partners, L.L.C. v. United States*, No. CIV.A 09-5921, 2010 WL 925297, at *2 (E.D. La. Mar. 10, 2010) (recognizing and applying the *Katrina* holding to bar flood claims).

Time and again, courts and other authorities recognize that community flood protection is the function of government—whether federal, state, or municipal. *See, e.g.*, *Rucker v. Metro. Gov't of Nashville & Davidson Cty.*, No. 89-165-II, 1990 WL 182275, at *3, *10 (Tenn. Ct. App. Nov. 28, 1990) (local government "had a duty properly to construct and maintain the storm drainage system in that area"); *cf.* Tennessee Dep't of Environment & Conservation, *Short-term Response to Flooding: A Guide for Communities and Local Governments* (July 2021) https://www.tn.gov/content/dam/tn/environment/water/policy-and-guidance/dwr-nr-g-08-

5

flooding-response-faq-01132021.pdf (emphasizing that the Tennessee Department of Environment and Conservation regulates construction activities in or near lakes, rivers, streams, and wetlands). Plaintiffs themselves seem to acknowledge as much, frequently referencing the emergency responders who in fact owe the duty of flood protection. *E.g.,* Compl. ¶ 11 (discussing the Federal Emergency Management Agency); ¶ 31 ("local officials, 911, fire/rescue"); ¶ 72 ("Waverly city officials, the police, the fire department, emergency services"); ¶ 77(b) ("local government and emergency officials…"); ¶ 77(c) (same); ¶ 77(f) (same); ¶ 80 (same).

Nor does the Complaint allege any special relationship between the parties that might superimpose such a duty on a private entity. *See, e.g.*, *Lanier v. Norfolk S. Corp.*, 256 F.App'x 629,633 (4th Cir. 2007) (in order for a duty of care to exist between an alleged tortfeasor and their victim, there must be "a relationship recognized by law" as the foundation of a duty of care); *Nashville & Chattanooga R.R. Co.*, 53 Tenn. at 270. In *Katrina*, plaintiffs' roles as citizens of the general public who resided in a county through which railroad tracks run was "insufficient to serve as the basis for concluding that [defendants] owed plaintiffs a general duty to protect them from flooding." *In re Katrina,* 2007 U.S. Dist. LEXIS 95799, at *119. The same was true in *Lecroy v. CSX Transp., Inc.*, where a federal court considered and dismissed on the pleadings claims of individuals and businesses who lived and worked in the vicinity of a bridge, finding that plaintiffs "put[] forth no fact demonstrating a relationship between CSXT and the commuters who used the road located under the train track where CSXT's accident occurred." No. 2:14-cv-21128-RMG, 2014 WL 11046154, at *2 (D.S.C. Nov. 17, 2014).

So here. Plaintiffs, like those in *Katrina*, *Pere Marquette*, and *Lecroy*, are members of the general public who reside in a county through which CSXT runs rail track. "That relationship is

6

insufficient to serve as the basis for concluding that CSXT owed plaintiffs a general duty to protect them from flooding." *In re Katrina*, 2007 U.S. Dist. LEXIS 95799, at *119. CSXT's railroad did not, and plaintiffs do not allege it to, "constitute part of the flood protection system" of Waverly. *Id.* "CSXT owed plaintiff[s] no duty to design and construct the [railroad] crossing to prevent flooding or erosion of the [railroad] crossing." *Id.*

The same result should follow here.

## II. The ICCTA and the FRSA Preempt Plaintiffs' Effort to Regulate Rail Transportation Through Tort Claims.

The Complaint alleges that CSXT violated various supposed duties concerning the operation, management, inspection, and maintenance of its railroad bridge at Trace Creek. Because these claims challenge the design, physical characteristics and maintenance of the Trace Creek Bridge, including CSXT's track and railbed, they are preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). *See, e.g.*, *CSX Transp., Inc. v. City of Sebree, Ky.*, 924 F.3d 276 (6th Cir. 2019). To the extent that plaintiffs also premise their claims on supposed duties of safety beyond those established by FRA rail safety regulations, the claims are preempted by the Federal Railroad Safety Act ("FRSA"). *See, e.g.*, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 675 (1993).

### A. The ICCTA Preempts Plaintiffs' Effort to Dictate Rail Regulation Through Tort Law.

By enacting the ICCTA in 1995, Congress granted the federal Surface Transportation Board exclusive jurisdiction over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

7

49 U.S.C. § 10501(b). Congress there determined that the "remedies provided under [the ICCTA] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Tipton v. CSX Transp., Inc.*, No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426, at * 6 (E.D. Tenn. July 7, 2016) (citing 49 U.S.C. § 10501(b)).

The ICCTA defines "railroad" expansively to include "a bridge. . . used by or in connection with a railroad." 49 U.S.C. § 10102(6). "Transportation" is defined by the ICCTA to include "a locomotive, car, vehicle, vessel, . . . or equipment of any kind related to the movement of passengers or property, or both, by rail," and "services related to that movement." 49 U.S.C. § 10102(9). Bridges meet the ICCTA's definition of "transportation" in that they are "facilities" and "property" where "tracks are located," and are "related to the movement of passengers or property" by rail. 49 U.S.C. § 10501(b).

Heeding Congress's direction, courts have since applied the ICCTA expansively to preempt state law tort claims that have the effect of dictating how a railroad should run its railroad, including how a railroad manages and maintains its railroad, bridges, and structures. *See, e.g.*, *City of Sebree, Ky.*, 924 F.3d at 283 (the ICCTA preempted municipal ordinance that had effect of unreasonably interfering with rail operations that required use of method that reduced train safety and required railroad to obtain permit from city council prior to commencing any maintenance or construction project); *Tipton*, 2016 WL 11501426, at *6 (negligence claim arising from fire and subsequent release of toxic chemicals preempted by the ICCTA); *CSX Transp., Inc. v. City of Plymouth*, 92 F.Supp.2d 643 (E.D. Mich. 2000), *judgment aff'd on other grounds*, 283 F.3d 812 (6th Cir. 2002) (state statute limiting the amount of time a train could block a grade crossing was preempted by the ICCTA because it had the effect of requiring the railroad to undergo substantial capital improvements to upgrade its class of track, relocate its

8

yards, or upgrade speed); *Suchon v. Wis. Cent., Ltd.*, No. 04-C-0379-C, 2005 WL 568057, at *3-*4 (W.D. Wis. Feb. 23, 2005) (the ICCTA preempted nuisance action brought against railroad for vibrations and fumes affecting neighboring business because it would have had the effect of regulating railroad routes or practices).

Courts follow suit in tort actions, like those here, stemming from flooding. *E.g.*, *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 914 N.W.2d 273, 289 (Iowa 2018) (collecting flood preemption cases); *Maynard v. CSX Transp., Inc.*, 360 F.Supp.2d 836, 841-42 (E.D. Ky. 2004) (finding plaintiffs' flood-related negligence and nuisance claims "would interfere with the movement of commerce… Because it [was the railroad company's] construction and operation of the side tracks in this case which [gave] rise to the Plaintiffs' claims, those claims [were] expressly preempted by the ICCTA."); *Jones Creek Investors, LLC v. Columbia Cty., Ga.*, 98 F.Supp.3d 1279, 1294 (S.D. Ga. 2015) ("[a]ny state tort claims against [the railroad company] for damages resulting from this construction to its infrastructure effectively govern [the railroad company's] ability to keep its rail lines in safe, working order"); *A & W Props., Inc. v. Kansas City S. Ry. Co.*, 200 S.W.3d 342, 343-44 (Tex. App. 2006) (plaintiff's claim alleging that railroad's failure to enlarge a culvert led to threat of flooding of plaintiff's property was preempted by the ICCTA); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-04182, 2009 WL 224072, at *1 (E.D. La. Jan. 26, 2009) (plaintiffs' flood-related tort law claims preempted by the ICCTA because they were based on the railroad's alleged "negligent design and construction of roadbeds and other areas of track"); *Waubay Lake Farmers Ass'n v. BNSF Ry. Co.*, No. 12–4179–RAL, 2014 WL 4287086, at *6 (D.S.D. Aug. 28, 2014) (the ICCTA preempted claims for damages resulting from alleged negligent design and construction of a culvert running beneath track and railroad's alleged failure to maintain its facilities).

9

As the case authority and Congress's statutory language make plain, the ICCTA prohibits state law from being used to "manage or govern" how a railroad designs, configures, or maintains its railroad and facilities, including railroad bridges, track, and structures. The Complaint here seeks to accomplish just that. It alleges that CSXT is obliged to maintain and operate its Trace Creek Bridge in ways plaintiffs prefer or else face significant tort and statutory liability. *See* Compl. ¶ 7 ("CSX failed to establish a system to regularly monitor and maintain the Culvert free of debris"); *id.* ¶ 14 ("afforded CSX hours to act to remove any debris clogging the Culvert; and, if this task proved too great, more than sufficient time to pick up a phone and warn Waverly's police and emergency responders of the imminent danger facing the community"); *id.* ¶ 35 ("CSX had a heightened duty to inspect the Culvert to make sure that it was unobstructed so that the anticipated increased flow of Trace Creek could pass through the Culvert unimpeded and not backup behind the Railbed Dam"); *id.* ¶ 37 ("the Railbed Dam was ill-equipped"); *see also* Compl. ¶ 63 ("CSX owed the following non-delegable duties of care: (a) The duty to ensure the natural passage of Trace Creek's water flow…").

These allegations can only be interpreted to seek, through tort law, to manage or govern CSXT's treatment of the Trace Creek Bridge, its rail tracks, bed, and its structures, particularly, by managing and governing the railroad's decisions regarding bridge-related aspects of its rail operations. This, the ICCTA preempts. Indeed, a sister court, the United States District Court for the Eastern District of Tennessee, explained in a case arising under comparable circumstances that where plaintiffs' complaints alleged that the railroad "owe[d] a duty of care to plaintiffs to design, operate, inspect, maintain, and repair its trains and railroad tracks . . . so as to prevent derailments," such claims "pertain[] to the operation, maintenance, and construction of [the

10

railroad's] railroad and tracks, and that it has more than a remote or incidental effect on rail transportation." *Tipton*, 2016 WL 11501426, at *8.

The Complaint also seeks punitive damages. *See* Compl. ¶¶ 85, 93, 101, 108. The Supreme Court has "recognized [that] state 'regulation can be ... effectively exerted through an award of damages,' and '[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) (citation omitted); *see also S.D. ex rel. S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F.Supp.2d 919, 934 (D.S.D. 2003) ("To allow [plaintiffs] to seek and recover punitive damages in a state court is to allow almost unlimited state 'regulation.'")

If permitted to proceed, this action would thus "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the ICCTA. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (citation omitted). Therefore, these claims should be dismissed.

**B. The FRSA Preempts Plaintiffs' Efforts to Impose Additional Duties Regarding CSXT's Rail Safety Obligations.**

Plaintiffs' claims against CSXT are additionally and independently preempted by the FRSA. Insofar as plaintiffs seek to impose duties on CSXT beyond FRA regulations with respect to the inspection, maintenance, and safety of its rail tracks, beds, bridge structures, and drainage facilities, the claims cannot survive.

Congress enacted the FRSA, 49 U.S.C. §§ 20101, *et seq.*, "to promote safety in every area of railroad operations and to reduce railroad-related accidents." 49 U.S.C. § 20101. The FRSA vests in the Secretary of Transportation broad powers to prescribe regulations for "*every*

11

*area* of railroad safety." *Id.* § 20103(a) (emphasis added). In enacting the FRSA, Congress sought nationwide uniformity in the area of rail safety: "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." *Id.* § 20106(a)(1). In 2007, Congress amended the FRSA's preemption provision to clarify that while the FRSA bars states from imposing obligations in addition to or inconsistent with federal regulations, the FRSA does not preempt state tort claims premised on a rail defendant's alleged failure to comply with existing federal rail safety regulations. *See id.* § 20106(b)(1).

Therefore, with limited exception not germane here, a state law or suit is preempted by the FRSA when the Act's implementing regulations (a) "cover" or "substantially subsume" the subject matter of the state law or action unless (b) plaintiff sufficiently alleges failure to comply with those regulations. *See, e.g.*, *Easterwood*, 507 U.S. at 675 (maximum railroad-speed regulations "cover" the subject matter of train speed and therefore preempt any jury verdict that a train was traveling at excessive speed); *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430-31 (6th Cir. 2009) (federal regulation "substantially subsumes the issue of ballast size" and thus preempts claim based on injury allegedly caused by walking on oversized track ballast); *Ludwig v. Norfolk S. Ry. Co.*, 50 F.App'x 743, 748 (6th Cir. 2002) (the FRSA preempted wrongful death action); *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005) ("It is clear that the FRA's regulations are intended to prevent negligent inspection ... Further, there is no indication that the FRA meant to leave open a state tort cause of action to deter negligent inspection."); *Baker v. Canadian Nat'l/Ill. Cent. Ry. Co.*, 397 F.Supp.2d 803, 814 (S.D. Miss. 2005) (claim of excessive speed preempted by FRSA).

12

The Complaint alleges that CSXT has violated several supposed duties regarding the safe, non-hazardous operation and maintenance of its "culvert"; the failure to inspect and repair unsafe "culvert" conditions; and the failure to report unsafe conditions.[2] *See, e.g.,* Compl. ¶ 63. Each such allegation, however, is subsumed by overarching safety-related purposes of the FRSA, and by FRA regulations in place that specifically regulate the railroad's actions as they pertain to precisely these subjects. *See, e.g.*, 49 C.F.R. § 213.7 (designation of qualified persons to supervise certain renewal and inspect track); § 213.33 (regulating drainage); §213.37 (vegetation); § 213.233 (visual track inspections); § 213.237 (inspection of rail); § 213.39 (special inspections). The explicit language of these regulations preempts these claims. For instance, 49 C.F.R. § 213.33, entitled "Drainage," states that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." This provision alone can only be interpreted to "cover" or "substantially subsume" plaintiffs' competing theory of how the Trace Creek Bridge should have been operated to prevent or direct drainage. And at no point does the Complaint assert that CSXT has violated any of these FRA regulations.

The Sixth Circuit, in another instance where a plaintiff alleged wrongful death tort claims against a railroad concerning the operation, maintenance, and design of a railroad structure, found that the plaintiff's negligence claim was preempted by the FRSA, affirming the district court ruling. *Ludwig*, 50 F. App'x at 747. The Court affirmed because federal regulations substantially subsumed the plaintiff's targeted topics. *Id.* at 747-48. Similarly here, the subject

---

[2] It should be noted that though the Complaint throughout uses the term "culvert," the integrated structure it attacks in fact includes a rail bridge, rail tracks, and rail road bed.

13

matter of plaintiffs' claims is substantially subsumed by federal safety regulations, and thus cannot survive FRSA preemptive scrutiny.

## **CONCLUSION**

Respectfully, the Complaint should be dismissed.


This 12th day of May, 2022.

Respectfully submitted,

/s/ John J. Bennett
John J. Bennett (BPR #31976)
**REIFERS, HOLMES & PETERS LLC**
80 Monroe Avenue, Suite 410
Memphis, TN 38103
(901) 521-2860
jbennett@rhpfirm.com

*Attorneys for Defendant CSX Transportation, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the following counsel of record, via U.S. Mail, postage prepaid on this 12th day of May, 2022.

Timothy V. Potter, Esq.
Andrew E. Mills, Esq.
Reynolds, Potter, Ragan &
Vandivort, PLC
210 East College Street
Dickinson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com

Peter J. Flowers, Esq.
Frank V. Cesarone, Esq.
Meyers & Flowers, LLC
3 North Second Street- Suite 300
St. Charles, Illinois 60174
630.232.6333
630.845.8982 Facsimile
pjf@meyers-flowers.com
fvc@meyers-flowers.com

C. Richard Newsome, Esq.
Newsome Melton, PA
201 South Orange Avenue - Suite
1500
Orlando, Florida 32801
407.648.5977
407.648.5282 Facsimile
newsome@newsomelaw.com

*Attorneys for Plaintiff*

Parks T. Chastain, Esq.
Cory R. Miller, Esq.
Ellen G. Hendrickson, Esq.
Brewer, Krause, Brooks & Chastain, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228
(615) 256-8787

*Attorneys for Defendants James & Sherry*

   /s/ *John J. Bennett*
John J. Bennett

15