IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW RIGNEY and DANIELLE HALL, individually, as the surviving parents and next of kin of Ryan Rigney and Rileighanna Rigney, deceased, and as the parents and legal guardians of M.R. and B.R., minors, | |
| TRACY KILBURN, individually and as the surviving spouse and next of kin of Robert Scott Kilburn, deceased, | |
| MICHELLE FELICIANO, individually and as the surviving parent and next of kin of Lucy Lane Connor, deceased, | |
| KAYLA CELENE BRAKE, individually and as next of kin of Regenia Lynn Brake, deceased, | |
| CARRIE JAZMIN BRAKE, individually, KENDRA SKYLAR BRAKE, individually, CAMERON LEVESTER GUY, individually, | No. 3:22-cv-00342 |
| QUENTIN ISAIAH BRAKE, individually | JUDGE WAVERLY D. CRENSHAW, JR. |
| PEGGY BETTY, individually and as surviving spouse of James Michael Betty, deceased, | MAGISTRATE JUDGE ALISTAIR NEWBERN |
| DOROTHY MAY HANDLING, individually and as the surviving daughter and next of kin of Hallie Lee Gerber, deceased, | Memorandum in Support of Motion to Dismiss Amended Complaint |
| JOSEPH PRASNIKAR, individually, | |
| THOMAS SANDERS, individually and as the surviving brother and next of kin of Joshua Lee Tyrone Hendrix, deceased, | |
| KIMBERLY KEE, individually and as the surviving spouse and next of kin of Mark Steven Kee, deceased, | |
| TIFFANY RENAE BRYANT and SHANE KEITH BRYANT, individually and as the surviving parents of Lilly-Anne Grace Bryant, deceased, | |
| HENRY KERSTEN, individually and as the surviving spouse and next of kin of Leslie Meek Kersten, deceased, | |
| BRITTNEY LEANN MCCORD, individually and as the surviving mother and next of kin of Kellen Cole Burrow, | |

deceased, and as the parent and legal guardian of W.S., K.G. K.M., and K.B., minors,

NICHOLAS DAVID SHAWL, individually and as the surviving son and next of kin of Robin Denise Bradley, deceased,

DONALD WAYNE JACKSON, individually and as the surviving son and next of kin of Donna Gail Bradley, deceased,

WILLIAM LEON LUTEN, individually and as the surviving son and next of kin of Mary Louise Luten, deceased,

JEFFREY NEWMAN and DEBBIE NEWMAN, individually and as the surviving parents and next of kin of Amber Rose Newman, deceased,

THOMAS LEE ALMOND, individually and as the surviving son and next of kin of Linda Bryant, deceased,

ANGELA LAY REEVES, individually and as the surviving wife and next of kin of Joseph Anthony Reeves, deceased,

JOANNA REEVES, individually,

SUSAN VOEGELI, individually and as the grandmother and legal guardian of C.V.,

KELSEY SCHULTZ, individually and as the surviving mother and next of kin of Nathanal Dwayne Steward Whitsett, deceased,

Plaintiffs,

v.

CSX TRANSPORTATION, INC.,

Defendant.

**MEMORANDUM IN SUPPORT OF CSX TRANSPORTATIONS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT <u>UNDER FED. R. CIV. P. 12 (B)(6)</u>**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ....................................................................................................... 2

ARGUMENT ..................................................................................................................... 3

    I.       The Amended Complaint Does Not Plausibly Allege a Duty of CSXT to Protect the Public from Floods. ............................................................................................. 3

    II.     The ICCTA and the FRSA Preempt Plaintiffs' Effort to Regulate Rail Transportation Through Tort Claims. ............................................................................. 7

        A. The ICCTA Preempts Plaintiffs' Effort to Dictate Rail Regulation Through Tort Law. ................................................................................................................... 7

        B. The FRSA Preempts Plaintiffs' Efforts to Impose Additional Duties Regarding CSXT's Rail Safety Obligations. .......................................................................... 13

CONCLUSION ................................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & W Props., Inc. v. Kansas City S. Ry. Co.*,
200 S.W.3d 342 (Tex. App. 2006)................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................3

*Baker v. Canadian Nat'l/Ill. Cent. Ry. Co.*,
397 F.Supp.2d 803 (S.D. Miss. 2005)......................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................17

*Bradford v. Union Pac. R.R. Co.,*
491 F.Supp.2d 831 (W.D. Ark. 2007)......................................................................................19

*Bradshaw v. Daniel*,
854 S.W.2d 865 (Tenn. 1993)....................................................................................................3

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981)..................................................................................................................13

*CSX Transp., Inc. v. City of Plymouth*,
92 F.Supp.2d 643 (E.D. Mich. 2000), *judgment aff'd on other grounds*, 283
F.3d 812 (6th Cir. 2002) .............................................................................................................8

*CSX Transp., Inc. v. City of Sebree, Ky.*,
924 F.3d 276 (6th Cir. 2019) .................................................................................................7, 8

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993)..............................................................................................................14, 18

*Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*,
270 F.Supp.2d 1183 (C.D. Cal. 2003) ....................................................................................16

*Figueroa v. Portage Cnty., Ohio*,
No. 20-4111, 2021 WL 4860154 (6th Cir. Oct. 19, 2021) ......................................................17

*Griffioen v. Cedar Rapids & Iowa City Ry. Co.*,
914 N.W.2d 273 (Iowa 2018) ...................................................................................................9

Case 3:22-cv-00342    Document 67    Filed 03/29/23    Page 4 of 28 PageID #: 485

*Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*,
685 F.Supp.2d 747 (M.D. Tenn. 2010)...................................................................2, 3

*In re Derailment Cases*,
416 F.3d 787 (8th Cir. 2005) .................................................................................14, 16

*In re Katrina Canal Breaches Consol. Litig.*,
No. 05-4182 Section "K"(2), 2007 U.S. Dist. LEXIS 95799 (E.D. La. Dec 27, 2007) ....5, 6, 7

*In re Katrina Canal Breaches Consol. Litig.*,
No. 05-04182, 2009 WL 224072 (E.D. La. Jan. 26, 2009)........................................ 9

*Jones Creek Investors, LLC v. Columbia Cnty., Ga.*,
98 F.Supp.3d 1279 (S.D. Ga. 2015).......................................................................9

*Kae v. Cumberland Univ.*,
194 F.Supp.3d 676 (M.D. Tenn. 2016)....................................................................4

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012)................................................................................................13

*Lanier v. Norfolk S. Corp.*,
256 F.App'x 629 (4th Cir. 2007) ............................................................................6

*Lecroy v. CSX Transp., Inc.*,
No. 2:14-cv-21128-RMG, 2014 WL 11046154 (D.S.C. Nov. 17, 2014) .................6

*Latimer v. Robinson*,
338 F.Supp.2d 841 (M.D. Tenn. 2004), aff'd, No. 04-5828, 2005 WL 1513103
(6th Cir. June 21, 2005) ........................................................................................10

*League of United Latin Am. Citizens v. Bredesen*,
500 F.3d 523 (6th Cir. 2007) ................................................................................17

*Ludwig v. Norfolk S. Ry. Co.*,
50 F.App'x 743 (6th Cir. 2002) .............................................................................14

*Maynard v. CSX Transp., Inc.*,
360 F.Supp.2d 836 (E.D. Ky. 2004) ......................................................................9

*Nashville & Chattanooga R.R. Co. v. King*,
53 Tenn. 269 (1871)...........................................................................................4, 5, 6

*Nickels v. Grand Trunk W. R.R., Inc.*,
560 F.3d 426 (6th Cir. 2009) ................................................................................14

*Nottke v. Norfolk S. Ry. Co.*,
318 F.Supp.3d 1036 (N.D. Ohio 2018)..................................................................12

iii

*Pere Marquette Hotel Partners, L.L.C. v. United States*,
  No. CIV.A 09-5921, 2010 WL 925297 (E.D. La. Mar. 10, 2010) ........................................5, 6

*Rogers v. Louisville Land Co.*,
  367 S.W.3d 196 (Tenn. 2012)...................................................................................................3

*Rooney v. City of Philadelphia*,
  623 F.Supp.2d 644 (E.D. Pa. 2009) ............................................................................15, 16, 18

*Rucker v. Metro. Gov't of Nashville & Davidson Cnty.*,
  No. 89-165-II, 1990 WL 182275 (Tenn. Ct. App. Nov. 28, 1990)............................................5

*S.D. ex rel. S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*,
  280 F.Supp.2d 919 (D.S.D. 2003) .........................................................................................13

*Sharp v. Ingham Cnty.*,
  23 F.App'x 496 (6th Cir. 2001) .............................................................................................. 3

*Song v. City of Elyria, Ohio,*
  985 F.2d 840 (6th Cir. 1993) .................................................................................................11

*Staples v. CBL & Assocs., Inc.*,
  15 S.W.3d 83 (Tenn. 2000)......................................................................................................4

*Suchon v. Wis. Cent., Ltd.*,
  No. 04-C-0379-C, 2005 WL 568057 (W.D. Wis. Feb. 23, 2005) .............................................9

*Tipton v. CSX Transp., Inc.*,
  No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426 (E.D. Tenn. July 7, 2016).............8, 13, 19

*Village of Mundelein v. Wis. Cent. R.R.*,
  882 N.E.2d 544 (Ill. 2008) ....................................................................................................18

*Waubay Lake Farmers Ass'n*,
  No. 12-4179-RAL, 2014 WL 4287086 (D.S.D. Aug. 28, 2014) .............................................9

*Wilburn v. City of Memphis,*
  No. W2009-00923-COA-R3-CV, 2010 WL 1407233 (Tenn. Ct. App. Apr. 9, 2010)..............4

**Statutes**

49 U.S.C. § 10102(6) ...................................................................................................................8

49 U.S.C. § 10102(9) ...................................................................................................................8

49 U.S.C. § 10501(b) ................................................................................................................7, 8

49 U.S.C. § 20101......................................................................................................................13

49 U.S.C. § 20103(a) ................................................................................................................13

49 U.S.C. § 20106(a)(1).............................................................................................................14

49 U.S.C. § 20106(b)(1) ............................................................................................................14

Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101, *et seq.* ........................................ *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................................................2

Interstate Commerce Commission Termination Act of 1995 (ICCTA) .............................. *passim*

Tenn. Code Ann. § 20-5-113 .......................................................................................................4

**Other Authorities**

49 C.F.R. §213.1 *et seq.*............................................................................................................14

49 C.F.R. § 213.7 .................................................................................................................15, 16

49 C.F.R. §§ 213.31 ..................................................................................................................16

49 C.F.R. § 213.33 ............................................................................................................ *passim*

 49 C.F.R. §213.37 ....................................................................................................................15

49 C.F.R. § 213.39 ....................................................................................................................15

49 C.F.R. § 213.233 ..............................................................................................................15, 16

49 C.F.R. § 213.237 ..................................................................................................................15

https://aquaoso.com/water-rights ................................................................................................18

https://extension.okstate.edu/fact-sheets/whose-water-is-it-anyway.html...................................18

*Short-term Response to Flooding: A Guide for Communities and Local
    Governments* (July 2021)
    https://www.tn.gov/content/dam/tn/environment/water/policy-and-
    guidance/dwr-nr-g-08-flooding-response-faq-01132021.pdf .............................................5, 6

Tenn. Exec. Order No. 85 (Aug. 25, 2021).....................................................................................1

Wright & Miller,
    5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) .........................................................................2, 3

# INTRODUCTION

This lawsuit seeks to turn a natural disaster of historic proportion into a tort suit. The catastrophic flash flood of August 2021, unprecedented in recent times in dimension and degree, visited tragedy upon the people of Waverly, Tennessee. Plaintiffs now seek to find their culprit not in "record-breaking torrential rainfall and flash flooding"[1] but in a private railroad, CSX Transportation, Inc. ("CSXT").

The Amended Complaint is legally deficient in two threshold respects, both questions of law for the Court.

First, whereas the law holds government responsible for protecting citizens against floods, plaintiffs would shift this duty to a private entity, CSXT. The duty the Amended Complaint hypothesizes—a generalized duty in tort on the part of a private landowner to protect the general public from a flood—does not exist. There being no duty, there can be no tort.

Second, whereas federal law retains for federal rail authorities oversight of design and management of rail facilities, the Amended Complaint would arrogate this power to plaintiffs under state tort law. The Amended Complaint is a frontal assault on CSXT's operation of the Trace Creek Bridge and its infrastructure. While the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") empowers the federal Surface Transportation Board ("STB") to oversee those operations, private plaintiffs may not. Likewise, plaintiffs' conclusory allegations regarding drainage, inspection, and treatment of culverts are preempted by the Federal Railroad Safety Act ("FRSA") and contain none of the necessary particulars pleading how CSXT supposedly violated any one of those regulations. Two separate rail preemption doctrines thus forbid the transformation in law that the Amended Complaint would effect.

---

[1] Tennessee Executive Order No. 85 (Aug. 25, 2021).

Respectfully, the Amended Complaint should be dismissed.

## BACKGROUND

The Amended Complaint arises from a "horrific event," Am. Compl. at 3, that being catastrophic flooding in August 2021 that occurred when torrential, unprecedented rainstorms hit communities in Tennessee including that of Waverly. Rather than focus on that "horrific event," plaintiffs opt to take aim at CSXT.

In particular, the Amended Complaint, striving mightily to never mention the historic rainstorm and its breathtaking speed and volume, seeks to shift focus toward one sliver of the resulting devastation in the form of CSXT's Trace Creek Bridge—a railroad bridge in place for almost 80 years carrying rail tracks across the Trace Creek located to the east of downtown Waverly. The Amended Complaint takes issue with how CSXT designs, manages, maintains, and inspects its track and adjacent structures at the Trace Creek Bridge. Am. Compl. ¶¶ 30-31, 33, 62, 65-66. It faults CSXT for not acting as an arm of the government, supposedly by its failure to coordinate with town government and emergency responders. Am. Compl. ¶ 27. Finally, the Amended Complaint faults CSXT for not being meteorologists—for not tending to historic data on flood risks or anticipating this weather catastrophe. Am. Compl. ¶¶ 35-57.

Based on these contentions, the Amended Complaint asserts claims of wrongful death (Count I), negligent infliction of emotional distress (bystander) (Count II), negligent infliction of emotional distress (standalone) (Count III), and negligence (Count IV).

## LEGAL STANDARD

A court may grant a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 748 (M.D. Tenn. 2010). While the Court "construes the complaint in the light most favorable to the plaintiff …," *id.* at 749 (citing Wright & Miller, 5B Fed. Prac. & Proc.

2

Civ. § 1357 (3d ed.)); *Sharp v. Ingham Cnty.*, 23 F.App'x 496, 498 (6th Cir. 2001), "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Hutchison*, 685 F.Supp.2d at 749. Under the "plausibility standard" for a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

## ARGUMENT

The Amended Complaint does not state a plausible claim for relief. First, there is no duty in tort or statute of the sort the Amended Complaint supposes—a generalized duty on the part of private landowners to protect communities against natural disasters. Neither CSXT nor other landowners are authorized flood protection agents in Tennessee. The Amended Complaint seems to appreciate this by repeatedly referencing those who *do* in fact owe this duty—federal, state, and local government.

Second, under two bodies of federal rail regulation, the claims asserted are preempted.

**I.    The Amended Complaint Does Not Plausibly Allege a Duty of CSXT to Protect the Public from Floods.**

Under Tennessee law, each of plaintiffs' tort claims—negligence and negligent infliction of emotional distress—depends upon on the existence of a duty of care owed by the defendant to the plaintiff. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) ("No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff …"); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012) ("The elements of a claim for negligent infliction of emotional distress include the

3

elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation."). The Tennessee wrongful death statute likewise hinges on a duty owed. Tenn. Code Ann. § 20-5-113 (West); *see also Wilburn v. City of Memphis*, No. W2009-00923-COA-R3-CV, 2010 WL 1407233, at *5-6 (Tenn. Ct. App. Apr. 9, 2010) (affirming award in wrongful death action given defendant's failure to uphold duty to plaintiff). And "[w]hether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *see also Kae v. Cumberland Univ.*, 194 F.Supp.3d 676, 683 (M.D. Tenn. 2016).

The Amended Complaint charges CSXT with the duty of flood protection for the general population of Waverly, Tennessee. Over and again, it enumerates CSXT's supposed obligations to mind the Trace Creek Bridge and associated infrastructure so as to safeguard the broader public. It then repeatedly characterizes CSXT as a virtual arm of government, required to coordinate with and aid government emergency responders in the matter of flood protection. *See, e.g.*, ¶ 62 (alleging CSXT should have "warned the residents of Waverly of the impending danger and afforded them the opportunity to evacuate their families before they were struck by millions of gallons of rapidly flowing waters" and "failure to warn local government and emergency officials as well as the downstream public").

Tennessee law recognizes no such duty. Over a century ago, the Tennessee Supreme Court resolved that it would be error to "charge[] it to be the duty of [a] carrier to use all reasonable care and precaution to provide against extraordinary emergencies," when it considered a similar case in which plaintiffs brought an action against a railroad to recover flood-related damages. *Nashville & Chattanooga R.R. Co. v. King*, 53 Tenn. 269, 270 (1871). The *Nashville* Court explained that a "flood was an extraordinary emergency which no human

4

sagacity guided by any of the known principles of human reasoning could have anticipated, and, consequently, could have been able to provide against at all in advance." *Id.* There exists no "obligation on the company," said the Court, "to anticipate by previous preparation for such an extraordinary emergency as this flood." *Id*.

Other courts have held likewise in analogous settings. Illustrative is *In re Katrina Canal Breaches Consol. Litig*., where plaintiff community members similarly sought to impose on CSXT a duty to protect them from a historic flood. In that Hurricane Katrina litigation, the court was confronted with the same theory as here: that CSXT must safeguard the public against flooding. Rejecting the notion and granting CSXT's motion to dismiss, Judge Duval reasoned that "[p]laintiffs ha[d] not identified any statutory, jurisprudential, or common law imposing on a railroad a general duty to protect the public from flooding." No. 05-4182 Section "K"(2), 2007 U.S. Dist. LEXIS 95799, at *119 (E.D. La. Dec 27, 2007). Judge Duval added that "[t]he lack of such law is not unexpected" because "*the duty to protect the residents and citizens…from flood has been statutorily imposed on other entities*." *Id.* at *117 (emphasis added). *See also Pere Marquette Hotel Partners, L.L.C. v. United States*, No. CIV.A 09-5921, 2010 WL 925297, at *2 (E.D. La. Mar. 10, 2010) (recognizing and applying the *Katrina* holding to bar flood claims).

Time and again, courts and other authorities recognize that community flood protection is the function of government—whether federal, state, or municipal. *See, e.g.*, *Rucker v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 89-165-II, 1990 WL 182275, at *3, *10 (Tenn. Ct. App. Nov. 28, 1990) (local government "had a duty properly to construct and maintain the storm drainage system in that area"); *cf*. Tennessee Dep't of Environment & Conservation ("TDEC"), *Short-term Response to Flooding: A Guide for Communities and Local Governments* (July 2021) https://www.tn.gov/content/dam/tn/environment/water/policy-and-guidance/dwr-nr-g-08-

flooding-response-faq-01132021.pdf (emphasizing that TDEC regulates construction activities in or near lakes, rivers, streams, and wetlands). Plaintiffs themselves seem to acknowledge as much, frequently referencing the emergency responders who in fact owe the duty of flood protection. *E.g.,* Am. Compl. ¶ 8 (discussing FEMA); ¶ 27 ("local officials, 911, fire/rescue"); ¶ 68 ("local government and emergency officials").

Nor does the Amended Complaint allege any special relationship between the parties that might superimpose such a duty on a private entity. *See, e.g.*, *Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 633 (4th Cir. 2007) (in order for a duty of care to exist between an alleged tortfeasor and their victim, there must be "a relationship recognized by law" as the foundation of a duty of care); *Nashville & Chattanooga R.R. Co.*, 53 Tenn. at 270. In *Katrina*, plaintiffs' roles as citizens of the general public who resided in a county through which railroad tracks run was "insufficient to serve as the basis for concluding that [defendants] owed plaintiffs a general duty to protect them from flooding." *In re Katrina,* 2007 U.S. Dist. LEXIS 95799, at *119. The same was true in *Lecroy v. CSX Transp., Inc*., where a federal court considered and dismissed on the pleadings claims of individuals and businesses who lived and worked in the vicinity of a bridge, finding that plaintiffs "put[] forth no fact demonstrating a relationship between CSXT and the commuters who used the road located under the train track where CSXT's accident occurred." No. 2:14-cv-21128-RMG, 2014 WL 11046154, at *2 (D.S.C. Nov. 17, 2014).

So here. Plaintiffs, like those in *Katrina*, *Pere Marquette*, and *Lecroy*, are members of the general public who reside in a county through which CSXT runs rail track. "That relationship is insufficient to serve as the basis for concluding that CSXT owed plaintiffs a general duty to protect them from flooding." *In re Katrina*, 2007 U.S. Dist. LEXIS 95799, at *119. CSXT's railroad did not, and plaintiffs do not allege it to, "constitute part of the flood protection system"

6

of Waverly. *Id.* "CSXT owed plaintiff[s] no duty to design and construct the [railroad] crossing to prevent flooding or erosion of the [railroad] crossing." *Id.*

The same result should follow here.

**II.    The ICCTA and the FRSA Preempt Plaintiffs' Effort to Regulate Rail Transportation Through Tort Claims.**

The Amended Complaint alleges that CSXT violated various supposed duties concerning the operation, management, inspection, and maintenance of its railroad bridge at Trace Creek. Because these claims challenge the design, physical characteristics, and maintenance of the Trace Creek Bridge, including CSXT's track and railbed, they are preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). *See, e.g.*, *CSX Transp., Inc. v. City of Sebree, Ky.*, 924 F.3d 276 (6th Cir. 2019). Plaintiffs' claims are separately preempted by the Federal Railroad Safety Act ("FRSA") because (a) the subject matter of the claims is expressly covered by the statute and associated Federal Railroad Administration's ("FRA") rail safety regulations, including 49 C.F.R. § 213.33 concerning drainage facilities, and (b) given the opportunity by this Court to plead a violation of some FRA regulation, plaintiffs have failed to do so.

**A. The ICCTA Preempts Plaintiffs' Effort to Dictate Rail Regulation Through Tort Law.**

By enacting the ICCTA in 1995, Congress granted the federal STB exclusive jurisdiction over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

7

49 U.S.C. § 10501(b). Congress there determined that the "remedies provided under [the ICCTA] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Tipton v. CSX Transp., Inc.*, No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426, at * 6 (E.D. Tenn. July 7, 2016) (citing 49 U.S.C. § 10501(b)).

The ICCTA defines "railroad" expansively to include "a bridge. . . used by or in connection with a railroad." 49 U.S.C. § 10102(6). "Transportation" is defined by the ICCTA to include "a locomotive, car, vehicle, vessel, . . . or equipment of any kind related to the movement of passengers or property, or both, by rail," and "services related to that movement." 49 U.S.C. § 10102(9). Bridges meet the ICCTA's definition of "transportation" in that they are "facilities" and "property" where "tracks are located," and are "related to the movement of passengers or property" by rail. 49 U.S.C. § 10501(b).

Heeding Congress's direction, courts have since applied the ICCTA expansively to preempt state law tort claims that have the effect of dictating how a railroad should run its railroad, including how a railroad manages and maintains its railroad, bridges, and structures. *See, e.g.*, *City of Sebree, Ky.*, 924 F.3d at 283 (the ICCTA preempted municipal ordinance that had effect of unreasonably interfering with rail operations that required use of method that reduced train safety and required railroad to obtain permit from city council prior to commencing any maintenance or construction project); *Tipton*, 2016 WL 11501426, at *6 (negligence claim arising from fire and subsequent release of toxic chemicals preempted by the ICCTA); *CSX Transp., Inc. v. City of Plymouth*, 92 F.Supp.2d 643 (E.D. Mich. 2000), *judgment aff'd on other grounds*, 283 F.3d 812 (6th Cir. 2002) (state statute limiting the amount of time a train could block a grade crossing was preempted by the ICCTA because it had the effect of requiring the railroad to undergo substantial capital improvements to upgrade its class of track, relocate its

8

yards, or upgrade speed); *Suchon v. Wis. Cent., Ltd.*, No. 04-C-0379-C, 2005 WL 568057, at \*3-\*4 (W.D. Wis. Feb. 23, 2005) (the ICCTA preempted nuisance action brought against railroad for vibrations and fumes affecting neighboring business because it would have had the effect of regulating railroad routes or practices).

Courts follow suit in tort actions, like those here, stemming from flooding. *E.g.*, *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 914 N.W.2d 273, 289 (Iowa 2018) (collecting flood preemption cases); *Maynard v. CSX Transp., Inc.*, 360 F.Supp.2d 836, 841-42 (E.D. Ky. 2004) (finding plaintiffs' flood-related negligence and nuisance claims "would interfere with the movement of commerce… Because it [was the railroad company's] construction and operation of the side tracks in this case which [gave] rise to the Plaintiffs' claims, those claims [were] expressly preempted by the ICCTA."); *Jones Creek Investors, LLC v. Columbia Cnty., Ga.*, 98 F.Supp.3d 1279, 1294 (S.D. Ga. 2015) ("[a]ny state tort claims against [the railroad company] for damages resulting from this construction to its infrastructure effectively govern [the railroad company's] ability to keep its rail lines in safe, working order"); *A & W Props., Inc. v. Kansas City S. Ry. Co.*, 200 S.W.3d 342, 343-44 (Tex. App. 2006) (plaintiff's claim alleging that railroad's failure to enlarge a culvert led to threat of flooding of plaintiff's property was preempted by the ICCTA); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-04182, 2009 WL 224072, at \*1 (E.D. La. Jan. 26, 2009) (plaintiffs' flood-related tort law claims preempted by the ICCTA because they were based on the railroad's alleged "negligent design and construction of roadbeds and other areas of track"); *Waubay Lake Farmers Ass'n v. BNSF Ry. Co.*, No. 12–4179–RAL, 2014 WL 4287086, at \*6 (D.S.D. Aug. 28, 2014) (the ICCTA preempted claims for damages resulting from alleged negligent design and construction of a culvert running beneath track and railroad's alleged failure to maintain its facilities).

9

As the case authority and Congress's statutory language make plain, the ICCTA prohibits state law from being used to "manage or govern" how a railroad designs, configures, or maintains its railroad and facilities, including railroad bridges, track, and structures. The Amended Complaint here seeks to accomplish just that. It alleges that CSXT is obliged to maintain and operate its Trace Creek Bridge in ways plaintiffs prefer or else face significant tort and statutory liability. *See* Am. Compl. ¶ 7 ("CSX failed to establish a system to regularly monitor and maintain the Culvert free of debris"); *id.* ¶ 11 ("afforded CSX hours to act to remove any debris clogging the Culvert; and, if this task proved too great, more than sufficient time to pick up a phone and warn Waverly's police and emergency responders of the imminent danger facing the community"); *id.* ¶ 31 ("CSX had a heightened duty to inspect the Culvert to make sure that it was unobstructed so that the anticipated increased flow of Trace Creek could pass through the Culvert unimpeded and not backup behind the Railbed Dam"); *id.* ¶ 33 ("the Railbed Dam was ill-equipped"); *id.* ¶ 57 ("[CSX] needed to maintain and upgrade its railroad bridges and culverts . . ."); *see also* Am. Compl. ¶ 59 ("CSX owed the following non-delegable duties of care: (a) The duty to ensure the natural passage of Trace Creek's water flow…").

Plaintiffs' claims against CSXT can only be understood as asserting that CSXT should have altered its design, construction, management, maintenance, and operation of the Trace Creek Bridge and its related rail tracks and structures in the face of increasingly frequent rain events in Middle Tennessee. This reality, evident in the now-operative complaint, is duly confirmed by the discovery requests plaintiffs propounded on CSXT after removal of this case to federal court.[2] Plaintiffs cannot credibly suggest their claims do not go to rail bridge design or

---

[2] The Court properly evaluates these items when assessing defendants' motion to dismiss. *Latimer v. Robinson*, 338 F.Supp.2d 841, 843 (M.D. Tenn. 2004), *aff'd,* No. 04-5828, 2005 WL 1513103 (6th Cir. June 21, 2005) (court can consider extrinsic evidence on motion to dismiss if the evidence consists of proceedings of which the court is permitted to take judicial notice; the documents' contents are alleged in plaintiff's complaint and their authenticity is

10

operation when the interrogatories they themselves propounded go precisely, and unequivocally, to this subject matter:

> 2. If the Trace Creek Bridge was designed in house by CSX or a predecessor entity, identify the department(s), titles and names of every individual involved in its design.

Pltfs. First Set of Interrogs. (Exhibit A, at 2). And this:

> 3. What velocity of water and volume of water was the Trace Creek Bridge designed to withstand?

And this:

> 6. Identify every architectural and/or engineering firm that were involved in the design and construction of the Raised Tracks.

If plaintiffs' claims do not take issue with bridge design and modification, then what of this interrogatory?

> 9. Identify any and all maintenance, modifications or repairs to the Trace Creek Bridge at any time. In answering this interrogatory, please describe the maintenance, modification, and/or repair, the date of the maintenance, modification, and/or repair, and identify the person(s) and/or entities who did the work.

And this?

> 10. Identify any and all maintenance, modifications or repairs to the Raised Tracks at any time. In answering this interrogatory, please describe the maintenance, modification, and/or repair, the date of the maintenance, modification, and/or repair, and identify the person(s) and/or entities who did the work.

---

unchallenged; and extrinsic material does not rebut, challenge, or contradict plaintiff's complaint). *See also Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993) (trial court properly considered materials defendant attached to motion to dismiss as not outside of the pleadings because the materials "did nothing more than verify the complaint" and "added nothing new, but, in effect, reiterated the contents of the complaint itself. . . [i]t did not rebut, challenge, or contradict anything in plaintiffs' complaint").

11

The list goes on, as plaintiffs make this case squarely and unequivocally about the architect and engineer of the Trace Creek Bridge and nearby tracks (Ex. A, at 1-8), the name of every individual involved in the Bridge's design (*id.* at 2), every hydrology or water flow study performed in the history of the Bridge (*id.* at 4), all maintenance, modifications, or repairs to the Bridge in its history (*id.* at 9), CSXT policy and procedures for bridge maintenance and repair (*id.* at 12-13), a lifetime recitation of every instance of repair, maintenance, or modification of the Bridge (*id.* at 14), and research, studies, and information relied upon by CSXT regarding the supposed need to upgrade railroad bridges and improve track drainage (*id.*).

Plaintiffs' requests for production follow suit, delving into CSXT's compliance with FRA regulations (*see* Pltfs. First Set of Document Requests (attached as Exhibit B, at 2-3), CSXT's training manuals for its bridge engineers (*id.* at 4), and water flow studies and simulations (*id.* at 6), among multiple other wide-ranging requests.

Plaintiffs, with their Amended Complaint and associated discovery, have thus revealed their intention to litigate how a railroad designs, constructs, and operates its rail bridge and structure, thus performing through civil action the role that Congress relegates to the federal STB. This, the ICCTA preempts. Nor can there be doubt that tort and wrongful death claims like plaintiffs' are forms of regulation for these purposes. *See, e.g.*, *Nottke v. Norfolk S. Ry. Co.*, 318 F.Supp.3d 1036, 1038 (N.D. Ohio 2018) (the ICCTA concerns "all state laws that may reasonably be said to have the effect of managing or governing rail transportation … which include state-law tort suits") (citation omitted). A sister court explained in a case arising under comparable circumstances that where plaintiffs' complaints allege that the railroad "owe[d] a duty of care to plaintiffs to design, operate, inspect, maintain, and repair its trains and railroad tracks . . . so as to prevent derailments," such claims "pertain[] to the operation, maintenance,

12

and construction of [the railroad's] railroad and tracks, and that it has more than a remote or incidental effect on rail transportation." *Tipton*, 2016 WL 11501426, at *8.

The Amended Complaint also seeks punitive damages. *See* Am. Compl. ¶¶ 72, 79, 86, 92. The Supreme Court has "recognized [that] state 'regulation can be ... effectively exerted through an award of damages,' and '[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) (citation omitted); *see also S.D. ex rel. S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F.Supp.2d 919, 934 (D.S.D. 2003) ("To allow [plaintiffs] to seek and recover punitive damages in a state court is to allow almost unlimited state 'regulation.'")

If permitted to proceed, this action would thus "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the ICCTA. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (citation omitted). Therefore, these claims should be dismissed.

### B. The FRSA Preempts Plaintiffs' Efforts to Impose Additional Duties Regarding CSXT's Rail Safety Obligations.

Plaintiffs' claims against CSXT are additionally and independently preempted by the FRSA because their subject matter is covered by FRA regulations promulgated pursuant to the Act, and because plaintiffs, now given the chance, have failed to plead plausibly violation of any FRA regulation.

Congress enacted the FRSA, 49 U.S.C. §§ 20101, *et seq.*, "to promote safety in every area of railroad operations and to reduce railroad-related accidents." 49 U.S.C. § 20101. The FRSA vests in the Secretary of Transportation [("Secretary")] broad powers to prescribe regulations for "*every area* of railroad safety." *Id.* § 20103(a) (emphasis added). In enacting the

13

FRSA, Congress sought nationwide uniformity in the area of rail safety: "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." *Id.* § 20106(a)(1). The Secretary has delegated its authority to prescribe safety regulations to the FRA. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662–63 (1993). The FRA in turn promulgated Track Safety Standards which establish the "minimum safety requirements for railroad track." 49 C.F.R. §213.1 *et seq*. In 2007, Congress amended the FRSA's preemption provision to clarify that while the FRSA bars states from imposing obligations in addition to or inconsistent with federal regulations, the FRSA does not preempt state tort claims premised on a rail defendant's alleged failure to comply with existing federal rail safety regulations. *See id.* § 20106(b)(1); § 20106(b)(1)(A).

Therefore, with limited exception not germane here, a state law or suit such as those now before this Court are preempted by the FRSA when FRA regulations (a) "cover" or "substantially subsume" the subject matter of the action, unless (b) plaintiff sufficiently alleges failure to comply with those regulations. *See, e.g.*, *Easterwood*, 507 U.S. at 675 (maximum railroad-speed regulations "cover" the subject matter of train speed and therefore preempt any jury verdict that a train was traveling at excessive speed); *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430-31 (6th Cir. 2009) (federal regulation "substantially subsumes the issue of ballast size" and thus preempts claim based on injury allegedly caused by walking on oversized track ballast); *Ludwig v. Norfolk S. Ry. Co.*, 50 F.App'x 743, 748 (6th Cir. 2002) (wrongful death action preempted by the FRSA); *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005) ("It is clear that the FRA's regulations are intended to prevent negligent inspection ... Further, there is no indication that the FRA meant to leave open a state tort cause of action to deter negligent

14

inspection."); *Baker v. Canadian Nat'l/Ill. Cent. Ry. Co.*, 397 F.Supp.2d 803, 814 (S.D. Miss. 2005) (excessive speed claim preempted by FRSA).

Applying this two-part test results in all of plaintiffs' claims and theories of relief being preempted by FRSA. As to prong one, preemption obtains because, as now appears to be undisputed, the subject matter of those claims and theories is subsumed by overriding FRA regulations. The Amended Complaint alleges that CSXT violated several supposed common law duties regarding the safe operation, inspection, and maintenance of its "culvert"; the failure to inspect and repair unsafe "culvert" conditions; and the failure to report unsafe conditions.[3] Am. Compl. ¶¶ 31, 59, 62. Yet each of these subject matters is "covered" and "substantially subsumed" by FRA regulations. *See* 49 C.F.R. § 213.7 (designation of qualified persons to supervise certain renewal and inspect track); § 213.33 (regulating drainage); §213.37 (vegetation); § 213.233 (visual track inspections); § 213.237 (inspection of rail); § 213.39 (special inspections).

The same goes for plaintiffs' contentions as to drainage. As plaintiffs now acknowledge, 49 C.F.R. § 213.33, entitled "Drainage," provides that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." 49 C.F.R. § 213.33; *see also* Am. Compl. ¶ 65.

Courts examining state law claims, like those here, stemming from flood-related damages as a result of an alleged failure to maintain drainage and track facilities find them preempted as subsumed by FRA regulation. *See, e.g.*, *Rooney v. City of Philadelphia*, 623 F.Supp.2d 644, 668

---

[3] It should be noted that though the Amended Complaint throughout uses the term "culvert," the integrated structure it attacks in fact includes a rail bridge, rail tracks, and rail road bed.

at n. 19 (E.D. Pa. 2009) (holding the FRSA and certain FRA regulations, including §213.33, covered the subject matter at issue, and thus preempted plaintiffs' claims for damages stemming from flood that plaintiffs alleged was caused by the accumulation of water as a result of defendant's artificially created runoff pattern and failure to clean and maintain sewage drains). Thus, the court in *Rooney* held that plaintiffs' allegations of "a drainage problem at the Bridge and the adjacent tracks, which clogged the sewage drains with mud and ballast" and resulted in alleged flood-related damages to plaintiffs, concerned subject matter expressly covered by the FRA regulations at 49 C.F.R. §§ 213.31 (standards for roadbed and areas immediately adjacent), 213.33 (drainage requirements), 213.103 (ballast materials), and 213.133 (turnout requirements). *Rooney*, 623 F.Supp.2d at 666; *See also Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*, 270 F.Supp.2d 1183, 1187-88 (C.D. Cal. 2003) (FRSA preempted claims that railroad was negligent in maintenance, repair, and inspection of its track and noting that "[t]he FRSA not only mandates the frequency and manner of inspecting the tracks to detect deviations, but it mandates who is qualified to perform these inspections, 49 C.F.R. §§ 213.7, 213.233. This is precisely the subject matter of [plaintiff's] negligence claim; thus, it is preempted."); *In re Derailment Cases*, 416 F.3d at 794 ("a regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter" and holding that FRA regulations subsumed negligent inspection claim and was thus preempted by the FRSA).

This leaves only the second prong of the FRSA test, and only one remaining question for resolution: whether plaintiffs have proffered some theory, plausibly pled, that CSXT breached FRA regulations, thereby evading preemption. At a March 1, 2023 hearing in this case, the Court inquired whether plaintiffs intended to amend their complaints to so assert. Having been given this opportunity, the Amended Complaint is now in, and plaintiffs have not done so. Instead,

they simply dropped passing references to the FRA drainage regulation into a mere two paragraphs out of a 90-plus paragraph complaint, *without asserting a single fact* plausibly pleading a breach of the FRA drainage regulation. *See* Am. Compl. ¶¶ 65-66. And, as they assert no breach of any other FRA regulation such as those enumerated above, the remainder of their claims are likewise preempted.

In the process, plaintiffs advance two novel legal propositions of no relevance to the Court's analysis. *First*, that "[t]he common law duty of a landowner in Tennessee" is "compatible with" FRA's draining regulation. *Id.* ¶ 65. True or not, this is beside the point. The question at hand is whether CSXT has breached an FRA regulation, *not* the supposed correlation of that federal regulation with some state's common law.

S*econd*, the Amended Complaint asserts that CSXT's supposed failure to comply with FRA's draining regulation "establishes a breach by CSX of its duty as a Tennessee landowner…" *Id.* ¶ 66. For starters, plaintiffs plead nothing—literally not one thing—about how this breach was supposedly committed: not one of the "who, what, when, where, how" particulars that the *Twombly/Iqbal* standard demands of plaintiffs when pleading their claims. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (to survive a motion to dismiss under Rule 12(b)(6), plaintiffs' non-conclusory "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief") (emphasis in original); *Figueroa v. Portage Cty., Ohio*, No. 20-4111, 2021 WL 4860154, at *2 (6th Cir. Oct. 19, 2021) (affirming dismissal of plaintiff's complaint for failure to meet *Twombly* standard because he "did not identify any such policy or custom that may have caused his" injury on which his allegations of federal violation were based) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

17

Instead, the Amended Complaint simply recites the text of § 213.33, and, instead of engaging with it, moves on to the next topic in the Amended Complaint. The reader is thus left to guess at the "expected water flow" in Waverly at relevant times; how that water flow relates to CSXT's Trace Creek Bridge as opposed to other water sources; how the Bridge was or was not "maintained" to accommodate that water flow; what was or was not "kept free" in violation of the federal drainage standard and how "free" it must be; and all other particulars that make up the federal standard.

Moreover, plaintiffs here again seek to tie some supposed violation of federal regulation to a Tennessee duty, specifically CSXT's "duty as a Tennessee landowner." Am. Compl. ¶ 66. But Tennessee duties are beside the point of FRSA analysis. As the Supreme Court itself has explained, "reliance on the common law [is] 'incompatible with' FRSA and the Secretary's regulations." *Easterwood*, 507 U.S. at 675. Indeed, "local standards beyond those promulgated by [the] FRA would thwart FRSA's goal of achieving uniform, national standards for railroad operations." *Rooney*, 623 F.Supp.2d at 666, n. 19. *See also Village of Mundelein v. Wis. Cent. R.R.*, 882 N.E.2d 544, 556 (Ill. 2008) (invoking "the FRSA's comprehensive set of uniform safety standards.").

It is easy to see why. The water laws of the several states vary—and vary widely. *See* https://aquaoso.com/water-rights ("Water rights vary widely from state to state, with stark differences between the eastern and western United States."); https://extension.okstate.edu/fact-sheets/whose-water-is-it-anyway.html (contrasting the distinct water laws of seven states and observing that states address water challenges "in different ways through various approaches to water law and water rights"). If, as plaintiffs now suggest, they can salvage their Tennessee tort claims simply by associating FRA regulations with the water law of Tennessee, then presumably

18

a Maine plaintiff in some other case could likewise maintain her Maine tort claims by associating the very same FRA regulations with the quite distinct water law of Maine. The result would be the very patchwork of laws that the Secretary of Transportation meant to prevent by promulgating a single federal drainage standard.

This also puts to rest plaintiffs' insinuation that the FRA federal drainage standard and Tennessee water law are coextensive, literally one and the same. It is hard to know what else to make of plaintiffs' parroting, verbatim, their earlier articulation of Tennessee water law when articulating the FRA federal drainage standard of care. *Compare* Am. Compl. ¶¶ 54, 64 (describing the supposed duty under Tennessee water law "to prevent the unnatural accumulation of water on its property") *with* ¶¶ 65-66 (identical formulation of federal drainage law). *See* Am. Compl. ¶ 66 ("CSX's failure to comply with federal standard of care for railroad safety set forth in 49 CFR § 213.33 establishes a breach by CSX of its duty as a Tennessee landowner to prevent the unnatural accumulation of water on its property. . ."). It would be curious in the extreme if the Federal Rail Administration, when promulgating § 213.33, chose a single state's law as the barometer of the entire nation's rail drainage obligations—and even curiouser if the single state chosen was, coincidentally, that of Tennessee. If that were in fact the case, one would think the agency would at least have said so, and that plaintiffs would have so pled.

Because plaintiffs' claims are subsumed by FRA regulations and assert no plausible theory of breach of those regulations, they are preempted by the FRSA. *See, e.g.*, *Tipton*, 2016 WL 11501426, at *6 (inspection-related duty allegations held preempted by the FRSA on motion to dismiss); *Bradford v. Union Pac. R.R. Co.*, 491 F.Supp.2d 831, 838 (W.D. Ark. 2007) (negligent inspection, training, train design and safety claims preempted by the FRSA).

<u>**CONCLUSION**</u>

Respectfully, the Amended Complaint should be dismissed.

19

This 29th day of March, 2023.

Respectfully submitted,

/s/ *S. Camille Reifers*
S. Camille Reifers (BPR #19856)
John J. Bennett (BPR #31976)
REIFERS, HOLMES & PETERS LLC
80 Monroe Avenue, Suite 410
Memphis, TN 38103
(901) 521-2860
creifers@rhpfirm.com
jbennett@rhpfirm.com

*Attorneys for Defendant CSX Transportation, Inc.*

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 29th day of March, 2023, I electronically filed the foregoing

with the Clerk of the Middle District of Tennessee Electronic Filing System which sent notification

of such filing to the following:

TIMOTHY V. POTTER
ANDREW E. MILLS
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickinson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com

PETER J. FLOWERS
FRANK V. CESARONE
JONATHAN P. MINCIELI
CHRISTOPHER J. WARMBOLD
Meyers & Flowers, LLC
3 North Second Street- Suite 300
St. Charles, Illinois 60174
630.232.6333
630.845.8982 Facsimile
pjf@meyers-flowers.com
fvc@meyers-flowers.com
jpm@meyers-flowers.com
cjw@meyers-flowers.com

C. RICHARD NEWSOME
WILLIAM C. OURAND
Newsome Melton, PA
201 South Orange Avenue - Suite 1500
Orlando, Florida 32801
407.648.5977
407.648.5282 Facsimile
newsome@newsomelaw.com

*Attorneys for Plaintiffs*

/s/ *S. Camille Reifers*
S. Camille Reifers