IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW RIGNEY, et al. | **)** |
| | **)** |
| Plaintiffs, | **)** |
| v. | **) No. 3:22-CV-00342** |
| | **)** |
| CSX TRANSPORTATION, INC., | **) JUDGE WAVERLY D. CRENSHAW, JR.** |
| | **)** |
| Defendant. | **) MAGISTRATE JUDGE ALISTAIR NEWBERN** |
| | **)** |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 41(B) AND RULE 37(c)

COME NOW the Plaintiffs, MATTHEW RIGNEY and DANIELLE HALL, *et al.*, by and through their respective counsel, and for their response to Defendant CSX Transportation, Inc.'s Motion to Dismiss Pursuant to Rule 41(B) and Rule 37(c) states as follows:

## **INTRODUCTION**

Defendant's Motion should be denied in its entirety. First, Defendant failed to comply with Local Rules 7.01 or 37.01 before filing the instant Motion and should be denied for that reason. Second, any incomplete disclosures made by Plaintiffs were inadvertent, unintentional, and not willful. More importantly, Defendant has had possession of all the documents, video, and other evidence that it claims were withheld by Plaintiffs since February 2025. As a result, CSX has suffered no prejudice. Rather than acknowledging that what it received from Plaintiffs differed in form from what CSX already had, Defendant waited until the final minutes of the fact discovery deadline to contrive a claim of prejudice, clearly attempting to improperly dismiss Plaintiffs' case, which reveals that Defendant's Motion is intended only to inflame this Court and cast Plaintiffs' counsel in an unfavorable light.

**FACUAL RECITATION**

Defendant's Motion includes irrelevant facts, contorts reality and makes unfounded allegations without any supporting evidence or investigation. Accordingly, Plaintiffs offer a recitation of the salient facts with response to Defendant's accusations where necessary.

*2022 Waverly PD Production*

Defendant's Motion begins by asserting that in 2022 "Plaintiff received voluminous relevant materials core to this case from the Waverly Police Department . . ." Defendant attempts to create an initial impression that Plaintiffs have had all of the information that Defendant received via its subpoena as early as 2022. This is simply untrue.

In March 2022, in response to Plaintiff's FOIA request, Plaintiffs received a Dropbox link of information from Waverly Police Chief Gillespie. A screenshot (referred to as Fig. 1) of the Dropbox reveals the limited evidence provided at that time:



**Exhibit 1** Declaration of J. Mincieli ¶1. Defendant next claims that the contents of this file were not produced in a timely fashion. Not true. The "Brookside" folder, the one most complained of by Defendant contained three (3) subfolders titled "_lib", "Converted Files" and "lib." *See*

screenshot reference Fig. 2 below.



The "Converted Files" folder is identical to the folder of the same name that was separately produced in the Dropbox as seen in Fig. 1. *Id.* ¶2.

The Brookside "_lib" subfolder contained four (4) videos that were inaccessible and could not be viewed upon receipt, which likely accounts for the Waverly Police Department's designation of these files containing an "Error." *See* Fig. 3 below. *Id.* ¶3.



The Brookside "lib" subfolder contained the following (reference Fig. 4):[1]



---

[1] Fig. 4 is a compilation of three (3) screen shots.

| | | | | |
|---|---|---|---|---|
| h080000.011 | Oct 26, 2021 | 1.64 GB | | ••• |
| ih080000.001 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.002 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.003 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.004 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.005 | Oct 26, 2021 | 638.72 KB | | ••• |
| ih080000.006 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.007 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.008 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.009 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.010 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.011 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.012 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.013 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.014 | Oct 26, 2021 | 638.73 KB | | ••• |
| ih080000.015 | Oct 26, 2021 | 574.67 KB | | ••• |



| | | | |
|---|---|---|---|
| h080000.001 | Oct 26, 2021 | 1.73 GB | ••• |
| h080000.002 | Oct 26, 2021 | 1.72 GB | ••• |
| h080000.003 | Oct 26, 2021 | 1.43 GB | ••• |
| h080000.004 | Oct 26, 2021 | 1.44 GB | ••• |
| h080000.005 | Oct 26, 2021 | 1.54 GB | ••• |
| h080000.006 | Oct 26, 2021 | 1.82 GB | ••• |
| h080000.007 | Oct 26, 2021 | 1.98 GB | ••• |
| h080000.008 | Oct 26, 2021 | 1.22 GB | ••• |
| h080000.009 | Oct 26, 2021 | 1.74 GB | ••• |
| h080000.010 | Oct 26, 2021 | 2.46 GB | ••• |

*Id.* ¶5. The references to "h080000.001", et seq. correspond to the videos Plaintiffs' counsel received. There are fifteen in total, numbered h0800000.001 through h080000.015. Each appears twice in the subfolder, the second set prefixed by "ih".  The videos numbered .012 through .015 are the "Error" files that could not be accessed or opened upon receipt or ever. Thus, there are eleven (11) actual videos that were produced by the Waverly Police Department of the Brookside area in this subfolder.

The "Converted Files" subfolder contains eleven (11) videos bearing the same identification numbers (h080000.001 *et. seq.*) as designated by the Waverly Police Department. *See* below Fig. 5.



*Id.* ¶4. As can be seen, the videos received from the Waverly Police Department, ***do not include time stamps***. This accurately reflects the way in which the videos were received from Chief Gillespie in March 2022. They were not and have never been edited or caused to be edited by Plaintiffs' counsel and did not require a DVD player to view. *Id.* ¶¶4, 10.

The "Documents" folder contained a subfolder titled "Reports. " *See* Fig. 6 below.



That subfolder contained police reports for various flood victims.  There are 13 police reports in total. *See* Fig. 7 below.[2]

| Flood / Documents / Reports | | | |
|---|---|---|---|
| **Name** ↑ | **Modified** | **Size** | |
| 2768 Luten.pdf | Mar 7, 2022 | 218.78 KB | ••• |
| 2769 Kilburn.pdf | Mar 7, 2022 | 237.01 KB | ••• |
| 2770 Brake.pdf | Mar 7, 2022 | 220.76 KB | ••• |
| 2772 Reeves.pdf | Mar 7, 2022 | 221.2 KB | ••• |
| 2773 Winsett.pdf | Mar 7, 2022 | 220.7 KB | ••• |
| 2775 Bryant Lind... | Mar 7, 2022 | 193.97 KB | ••• |
| 2777 Kersten.pdf | Mar 7, 2022 | 194.32 KB | ••• |
| 2778 Kee.pdf | Mar 7, 2022 | 224.07 KB | ••• |

*Id.* ¶6. These reports were disclosed to Defendant as part of Plaintiffs' General Production as Bates numbers PLAINITFF_GENERAL_00632 through 00683. *Id.* Likewise, the eleven (11) videos[3] provided by the Waverly Police Department were produced in their native form (*see* Fig. 5) as PLAINITFF_GENERAL_00621 through 00631. *Id.* ¶4. This production was made in Spring 2023.

---

[2] Fig. 7 is a compilation of two screen shots.
[3] Not four (4) as Defendant asserts. *See* Defendant Motion Dkt. #197 p. 4.

| | 2779 Betty.pdf | Mar 7, 2022 | 193.96 KB | ••• |
|---|---|---|---|---|
| | 2781 Gerber.pdf | Mar 7, 2022 | 194.07 KB | ••• |
| | 2783 Hendrix.pdf | Mar 7, 2022 | 236.63 KB | ••• |
| | 2786 Newman.pdf | Mar 7, 2022 | 195.24 KB | ••• |
| | 2790 Bryant Lily.p... | Mar 7, 2022 | 234.2 KB | ••• |

The last folder in the WPD Dropbox is titled "Storage Company Video." Below Fig. 8 is a screen shot of the contents of the folder.

| | Name ↑ ⌄ | Modified ⓘ ⌄ | Modified By ⌄ | File size ⌄ | Sharing ⌄ |
|---|---|---|---|---|---|
| 📁 | NVR1_90DA6A0A8CA2 | March 23, 2022 | Mailroom | 2 items | 👥 Shared |
| 📄 | 07125000S.ssf | March 7, 2022 | Guest Contributor | | 👥 Shared |
| ⚙️ | D3DX9_43.dll | March 7, 2022 | Guest Contributor | 1.91 MB | 👥 Shared |
| ⚙️ | hdavdec.dll | March 7, 2022 | Guest Contributor | 371 KB | 👥 Shared |
| ⚙️ | ImzExpDll.dll | March 7, 2022 | Guest Contributor | 92 KB | 👥 Shared |
| ⚙️ | m4avcdc.dll | March 7, 2022 | Guest Contributor | 928 KB | 👥 Shared |
| 🖥️ | MultiBackupViewer.exe | March 7, 2022 | Guest Contributor | 4.12 MB | 👥 Shared |

*Id.* ¶8. Pursuant to Plaintiffs' investigation in response to CSX's Motion, the contents of the subfolder "NVR1_90DA6A0A8CA2" were inaccessible. *Id.* However, using the video player supplied by the WPD titled "MultibackupViewer.exe" Plaintiffs did view only eight (8) of the videos with the player, which is not the entirety of those in the folder. *Id.* Chief Gillespie in his

correspondence identified this as the video player that would be needed to view the videos. ***Not the player for the Brookside videos as counsel for CSX suggests***. *See* Dkt. #197 p. 4, Ex. 197-2. Counsel for Plaintiffs concluded that although we could not view the videos they should nonetheless be disclosed. **Exhibit 2.**[4]

Plaintiffs' investigation did not determine whether the contents of the Storage Company Video had been disclosed or inadvertently not included in Plaintiffs' General Production. Nevertheless, what the electronic mail communication (Ex. 2) makes clear is Plaintiffs did not at any time intentionally withhold any documents from Defendants.

*Greg Vasil Statement*

Next, CSX alleges that Plaintiffs withheld a statement made by fact witness Greg Vasil to the Waverly PD. This also is untrue. The statement was produced as part of Plaintiffs' General Production as Bates No. PLAINTIFF_GENERAL_00679.[5] Ex. 1 ¶9.

*2023 Waverly PD Production*

On October 2, 2023, Plaintiffs subpoenaed the Waverly Department of Public Safety[6] for documents and evidence relevant to this case. Dkt. #197-10. The Waverly Police Department responded to the subpoena, in November of 2023. The contents of what the Waverly Department of Public Safety provided are identical to that which was produced to Defendant in February 2025. Below Fig. 9 is a screen shot of the materials produced by the

---

[4] Exhibit 2 is a placeholder as the actual document it relies upon is a privileged internal communication among Plaintiffs' counsel. Plaintiffs will disclose this communication to the Court upon the Court's request or at the hearing on this Motion.

[5] Defendant claims that Plaintiffs possessed a written statement of Greg Vasil. Plaintiffs do not. There is a reference to a written statement in the Waverly PD files. However, upon information and belief no such statement exists and to the extent it does, it is not in Plaintiffs' possession.

[6] The Waverly Department of Public Safety is comprised of the Waverly Police Department and the Waverly Fire Department. Accordingly, files from the Waverly Police Department are contained within the production from The Waverly Department of Public Safety.

Waverly Department of Public Safety in response to Plaintiffs' subpoena. **Exhibit 3**, Declaration of M.L. Story ¶3.

| Name | Date modified | Type | Size |
|---|---|---|---|
| 2019 Flood | 1/23/2025 10:09 AM | File folder | |
| Flood Case Files | 6/20/2024 8:18 AM | File folder | |
| Flood emails | 6/20/2024 8:18 AM | File folder | |
| Misc | 2/24/2025 3:10 PM | File folder | |
| Pics | 2/24/2025 4:13 PM | File folder | |
| Presentations | 7/16/2024 3:42 PM | File folder | |
| Records Requests | 6/20/2024 8:19 AM | File folder | |
| Video | 6/20/2024 8:22 AM | File folder | |
| 400.04-2 Unusual Occurrences | 9/24/2015 1:51 PM | Adobe Acrobat D... | 203 KB |
| 400.06-1 Incident Command System | 9/24/2015 1:56 PM | Adobe Acrobat D... | 333 KB |
| 2021 Annual Report | 10/25/2023 3:34 PM | Adobe Acrobat D... | 4,438 KB |
| HC Emergency Operations Plan | 9/28/2020 12:06 PM | Adobe Acrobat D... | 5,386 KB |

As Plaintiffs are represented by multiple firms in several states, all materials received from third-parties were uploaded to a OneDrive platform that could be shared by the firms. *Id.* ¶4. Unbeknownst to Plaintiffs' counsel until the filing of this Motion, when the subpoenaed documents were uploaded to the shared OneDrive, not all of the material uploaded. *Id.* ¶5, 8. Below at Fig. 10 is a screen shot of the uploaded OneDrive Waverly PD materials. *Id.* ¶5.

In March 2025 when the Waverly Police Department materials were produced to Defendant, as was customary, they were produced from the OneDrive. *Id.* ¶7. This is the reason that Plaintiffs did not produce the entirety of the materials it received from the Waverly Police Department rather than some nefarious plan to withhold evidence as suggested by Defendant. *Id.* ¶8. Nor was it a scheme to hide damaging videos and evidence. Certain items simply were not captured in the OneDrive upload.

*Miscellaneous*

In an attempt to paint Plaintiffs in a further bad light and imply more bad conduct, Defendant alleges Plaintiffs delayed disclosures of witnesses and that Plaintiffs did not supplement disclosures until "confronted by defense counsel." Dkt. 197 p. 6. Rather than there being some disreputable intent behind Plaintiffs' actions, Plaintiffs merely operated under the same set of rules that CSX has operated under throughout this case.

CSX takes issue with the fact that some of the first witnesses noticed for deposition by Plaintiffs Jessica Mallard, June Daly and Odell Poyner did not appear in Plaintiffs' initial disclosures. *See* Dkt. #197 p. 6, FN 1. However, on February 4, 2025 (five days after initially

proposing their depositions), Plaintiffs supplemented their initial disclosures to identify these witnesses. **Exhibit 4**, Plaintiffs' Supplemental Disclosures dated February 4, 2025. Within the last thirty (30) days, Defendant has unilaterally noticed subpoenaed depositions of witnesses who were previously never disclosed and later supplemented its initial disclosures to identify them. *See* **Exhibit 5** Electronic mail correspondence from Defendant dated October 31, November 12 and 13, 2025.

CSX next manufactures an issue over the fact that Plaintiff supplemented its productions to include subpoenaed and FOIA'd materials in 2025, although it had received the materials earlier. *See* Dkt. #197 p. 6. Yet Defendant followed the same practice. CSX acknowledges that it subpoenaed the City of Waverly and the Waverly Police Department in June 2023 and received responsive documents in July 2023. *Id.* p. 5. However, it did not produce those materials (or the materials it received from FEMA, FRA, HUD, the National Guard, NOAA, TDOT or TEMA a total of over 3500 pages) until January 2025. Dkt. #197-11. The explanation for this timing is straightforward: counsel for both sides discussed in late 2024 that each had obtained documents through subpoenas and FOIA requests, and that it was an appropriate time for all parties to make supplemental disclosures. This is evidenced in email correspondence between the parties at Dkt. 197-12 p. 11, where counsel for Plaintiff stated "As we discussed after Greg Vasil's deposition, all parties will supplement disclosures to make sure we all have the same information."

Finally, Defendant calls out Plaintiffs' counsel for advising that yet to be produced documents would only relate to witness Bobby Brown. Dkt. #197 p. 8, Dkt. 197-12 p. 9-10. This email exchange took place on February 14, 2025. *Id.* When one reviews the email chain to which counsel is referring, it is clear that Chief Gillespie's deposition had already been

cancelled. Thus, the only depositions that were potentially proceeding were Donald Jackson, Ronni Tonguette, June Daly and Bobby Brown. Dkt. 197-12 p. 7. Of those witnesses, the only one who served in an official capacity and for whom Plaintiffs possessed documents or evidence that was in the process of being produced was Bobby Brown. Accordingly, the statement criticized by Defendant was indeed accurate.

## ARGUMENT

*Defendant's Delays*

Local Rules 7.01 and 37.01 mandate that *prior* to filing a discovery motion the movant must initiate a meet and confer with opposition on the issues that underly the motion. M.D. Tenn L. R. 7.07, 37.01. These rules exist to encourage resolution of discovery disputes without court intervention, conserve judicial resources, and ensure that motions are filed only after the parties have meaningfully attempted to resolve their differences. CSX, failed to comply with each of these requirements, choosing instead to wait until after its Motion was filed before reaching out to Plaintiffs, an approach that amounts to an attempt to circumvent the procedural requirements and backdoor compliance with the Local Rules. For this reason alone Defendant's Motion should be denied. *Hospital Authority of Metropolitan Government of Nashville & Davidson County v. Momenta Pharmaceuticals*, 333 F.R.D. 390, 400 (M.D. Tenn. 2019) citing *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 582 (9th Cir. 2010) (holding that denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion).

Moreover, CSX received and has been in possession of the entirety of the Waverly Police Department evidence since February 11, 2025. Dkt #197 p. 7. That is when Defendant became aware of the fact that the Waverly Police Department previously provided the same materials to Plaintiffs, as confirmed by Chief Gillespie in his email to counsel. Dkt. #197-15. Since then, the

parties have submitted six Joint Status Reports and six Discovery Dispute Statements, many of which required conferences with the Court. At no point during any of these proceedings did Defendant assert or so much as mention that it believed Plaintiffs had been withholding evidence.

It is now apparent that Defendant deliberately refrained from raising the issue earlier and withheld it from the Court to bolster its erroneous claim that it was recently "caught by surprise" or unfairly prejudiced in some way. Had Defendant raised the issue in February 2025, through the appropriate procedural channels, Plaintiffs would have undertaken the same investigation they performed in response to this Motion, and the issue would have been resolved expediently. Instead, Defendant apparently believed it was to its strategic advantage to hold onto the information as for long as possible in order to sandbag Plaintiffs which reflect clear gamesmanship.

Defendant's true motive is further demonstrated by the events surrounding the scheduling of Waverly Police Chief Gillespie's deposition. In May 2025, counsel for Defendant assumed responsibility for coordinating the deposition and, upon information and belief, communicated with Chief Gillespie during that period. Despite multiple requests by Plaintiffs' counsel over several months attempting to secure a date, Defendant provided only one date in June that was unworkable for Plaintiffs. Ultimately, Plaintiffs' counsel had to resume the responsibility to schedule the deposition. *See* **Exhibit 6** Electronic mail correspondence dated August 20, 2025, between counsel relating to deposition of Chief Gillespie. Defendant's delay was simply an effort to create prejudice where none otherwise existed.

*Defendant's Non-Compliance with F.R.C.P. 11*

Defendant's Motion also brings the most serious of allegations against Plaintiffs, being the alteration and editing of evidence to deceive the opposition and manipulate the facts to obtain an unfair advantage. Defendant's admitted basis for these claims is that it received a Brookside video

from Chief Gillespie that was different than what was provided by Plaintiffs and that the Brookside videos when viewed with the video player show the time stamps. Defendant's sole "investigation" purportedly supporting this alleged misconduct is Chief Gillespie's sworn testimony, which Defendant asserts confirms its suspicions of wrongdoing.

In actuality when asked in October 2025 (approximately two years after producing documents to Plaintiffs), Chief Gillespie testified that he "assumed" that the materials he sent to Defendant were the same as those sent to Plaintiffs. Dkt. 197-19 at 65:4. When asked specifically about the time stamps, Chief Gillespie responded, "I don't recall, but I'm sure it may have yes." *Id.* at 66:13-17. When he was shown the videos with the time stamps Chief Gillespie testified that he did not remove any time stamps and that he did not alter any videos. *Id.* at 69:2 – 70:9. When pressed as to whether what was provided to Defendant was the same as what was previously provided to Plaintiffs, Chief Gillespie responded "As far as I know, every video I gave you is the same they gave in the public records request of the subpoena. I don't remember which came first. . . . Unless something came in that was new to us - -." *Id.* at 71:15-20.

Federal Rule of Civil Procedure 11(b) states:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. Pro. 11(b). Defendant filed the Motion seeking dismissal and sanctions against Plaintiffs and their counsel alleging Plaintiffs' counsel received videos from the Waverly Police

Department and then edited them by removing timestamps and nearly an hour of footage. Rule 11 requires that Defendant's claims be based upon an "inquiry reasonable under the circumstances" and that its factual contentions have "evidentiary support." *Id.* Yet Defendant's counsel filed this Motion without conducting any meaningful investigation and without offering a shred of evidence that Plaintiffs' counsel edited or altered any video. Instead, counsel received videos in various formats and concluded that the videos provided by Plaintiffs must have been altered and that Plaintiffs were therefore responsible for any perceived differences. The only "inquiry" undertaken was questioning Chief Gillespie as set forth above. Chief Gillespie admitted he has no idea about editing videos and doesn't know how to do so. Dkt. 197-19 70:8-9.

The reasonable inquiry into the serious accusation of editing and altering videos does not include the conclusions of an attorney or the testimony of a police chief. At most, such information might justify initiating an investigation, but it does not satisfy the inquiry requirement of Rule 11. A proper inquiry would include a forensic examination of the videos by a qualified expert capable of determining whether a video was altered, the nature of any alteration, when it occurred, and who performed it. Evidentiary support for such a motion would include the affidavit of the forensic reviewer. Defendant has not taken any of these steps. Instead, in its haste to cast blame on Plaintiffs, Defendant entirely failed to comply with the basic requirements of Rule 11.

As mentioned previously, Defendant has been in possession of the Waverly Police Department materials, including videos, since February 11, 2025. Counsel could easily have asked Chief Gillespie to bring the electronic files produced to Plaintiffs with him to the deposition to review them for content and determine if the "Conversion Files" exist among the Waverly Police Department's files. Counsel could have shown Chief Gillespie the unstamped videos and inquire if they form part of his files. They also could have asked for the name of the individual at the

Waverly Police Department who compiled or maintains the videos and other materials to uncover whether unstamped versions or any other versions exist at the Waverly Police Department. Counsel could have similarly asked to see what was provided to Plaintiffs in response to both the FOIA and subpoena response to confirm that the Converted Files weren't there. Counsel did none of these things to reasonably investigate her suspicions. In short, Defendant's Motion, leveling the most serious of accusations and seeking the harshest sanctions against Plaintiffs and their counsel, is based upon unsupported conclusions. Once again, neither Plaintiffs nor their attorneys altered or edited nor caused to have altered or edited any video or other evidence in this case. Defendant's Motion does not meet the basic threshold requirements of Rule 11 and, as a result, it is Defendant who should be sanctioned, not Plaintiffs. Fed. R. Civ. Pro. 11(c).

*Dismissal Is Not Warranted*

Defendant's Motion seeks multiple forms of relief, the most serious being dismissal of Plaintiffs' Complaint pursuant to F.R.C.P. 41(b). In determining whether to dismiss an action under Rule 41(b), Courts consider four factors: 1) whether the party's failure is due to willfulness, bad faith or fault; 2) whether the adversary was prejudiced by the dismissed party's conduct; 3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Johnson v. Kirwan*, 2025 U.S. Dist. LEXIS 179351, 2025 WL 2639887 at *3. None of the factors are dispositive on their own. *Id.* Courts recognize that dismissal is a harsh sanction which the Court should only order in extreme circumstances. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (internal quotation marks omitted)). Plaintiffs will address the four factors in order.

*Plaintiffs did not act Willfully, With bad Faith or with Fault*

According to *Salisbury v. Holloway*, 622 Fed. Appx. 542 (6th Cir. 2015), relied upon by Defendant, bad faith, willfulness or fault can be found where "the record clearly evinces a party's 'delay or contumacious conduct.'" *Id.* at 545 (citations mitted). The *Salisbury* Court noted that mere dilatory conduct is not the same as contumacious conduct. *Id*. Contumacious conduct involves more egregious behavior such as missing a court appearance or "failing to participate in discovery." *Id.* Likewise in *Carpenter v. City of Flint,* 723 F.3d 700, 704-05 (6th Cir. 2013) the Court described contumacious conduct as "behavior that is 'perverse in resisting authority and stubbornly disobedient." (internal quotations omitted) (internal citations omitted). There the Sixth Circuit held that repeated failures to abide by local rules, delays in responding to a motion to strike, and the failure within an over five-month period to take action to move the case forward, did not reflect a clear record of contumacious conduct that required dismissal. *Id.* at 705.

Plaintiffs clearly did not fail to participate in discovery. Defendant's Motion points out only a fraction of the numerous discovery responses and supplementations made by Plaintiffs during the tenure of this case. The fact that Plaintiffs have made repeated disclosures of all materials in this case obtained via FOIA or subpoena from such entities as TDEC, TDOT and the Waverly Medical Examiner evidences Plaintiffs' dedication to the discovery process and the Federal Rules of Civil Procedure. *See* **Exhibit 7** Plaintiffs' March 6, 2025 disclosures.

Defendant attempts to characterize the inadvertent non-disclosure of certain Waverly Police Department documents as part of a broader pattern of misconduct, but this is demonstrably false. Plaintiffs made two separate disclosures of the Waverly Police Department materials, believing them both to be complete. At no point has this Court ordered Plaintiffs to produce discovery they had not already voluntarily provided. The Waverly Police Department materials is

clearly an isolated incident that does not remotely rise to the level of stubborn disobedience or contumacious conduct.

*Defendant Has Not Been Prejudiced*

The Sixth Circuit has held that "A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Carpenter* supra at 707 (citations omitted). Defendant's claims of prejudice in its Motion are contrived. Defendant came into possession of the entirety of the Waverly Police Department files on February 11, 2025. Thus, Defendant had every document or other piece of evidence contained therein to defend itself and to conduct the depositions of every witness whose depositions came thereafter. Had CSX actually been prejudiced after possessing the Waverly Police Department file, such as needing additional time to review the materials before taking additional depositions, it should have known that once the documents were received and taken steps to continue the depositions. In short, Defendant has not expended any unnecessary time, money, or effort in obtaining the Waverly Police Department materials from Plaintiffs, and its claims of prejudice are unfounded.

Defendant claims that it discovered Plaintiffs' alleged misconduct on October 24, 2025 at the deposition of Chief Gillespie. Dkt. #197 p. 21. However, even if true, the discovery of the purported conduct (which Plaintiffs vehemently deny) does not erase the fact that Defendant possessed all the materials it claims were withheld since February 2025. CSX had every opportunity since then to take depositions, issue discovery requests, track down leads and otherwise fairly conduct discovery. *Id.* Defendant's claims of delay and increased costs are likewise preposterous. The vast majority of the discovery that took place in this case did so after Defendant possessed the Waverly Police Department materials. Not having them before that did

not delay the case. In fact, this Court stayed depositions on October 30, 2023 (Dkt. #106) and the parties did not discuss scheduling depositions until January 2025. Dkt. #197 p. 6.

The only conceivable prejudice that Defendant could assert is that the Waverly Police Department materials received on February 11, 2025, might have been relevant to the depositions of Humphreys County Sheriff Chris Davis and Emergency Management Agency Director Odell Poyner. Even so, this "prejudice" must be viewed in its proper context. Defendant had these materials in its possession as of February 11, 2025, yet it took no steps to revisit or supplement the depositions of these witnesses. If Defendant truly believed the newly received materials were critical to those depositions, it could have sought to re-depose the witnesses or otherwise address the content. Its inaction, however, demonstrates that any purported prejudice is entirely speculative and self-inflicted, rather than a result of Plaintiffs' conduct.

*Plaintiffs Were Never Warned*

The next factor involves whether the dismissed party was warned that its actions could lead to dismissal. As a basic tenet, this means that the party was actually warned by the Court. *See* e.g. *Craddock v. FedEx Corp. Servs.*, 102 F. 4th 832, 837 (6th Cir. 2024) (plaintiff cautioned by Court that her pattern of providing incomplete and inaccurate responses about damages could result in dismissal) and *ECIMOS, LLC. V. Nortek Global HVAC, LLC*, 736 Fed. Appx. 577, 580 (6th Cir. 2018) (plaintiff warned by Court that continued failure to comply with discovery or Court orders will lead to dismissal); *see also Carpenter v. City of Flint*, 723 F.3d 700, 708 (6th Cir. 2013) (boilerplate warnings not sufficient to apprise a party of possibility of dismissal). Because Plaintiffs have received no such warning in this case, this element does not and cannot support dismissal.

*Less Drastic Sanctions*

The last factor evaluates whether less drastic sanctions were imposed or considered before dismissal. In this context the Sixth Circuit has stated: "For minor offenses, a judge cannot dismiss an action with prejudice… Put simply, the punishment must fit the crime." *ECIMOS, LLC* supra at 578. Moreover, "Dismissal with prejudice is warranted only where … a lesser sanction would not better serve the interests of justice." *Carpenter* supra at 709 (quotations omitted) (citations omitted). It has been held consistently that except in the most extreme circumstances, a court should first resort to imposing a lesser sanction before ordering dismissal with prejudice. *Id.* Last, where the claims are lodged at Plaintiffs' counsel, not Plaintiffs themselves the Sixth Circuit expressed an extreme reluctance to dismissal of a case to discipline a party's attorney because it deprives the plaintiff of his day in court due to the acts of his or her attorney. *Id.* at 704.

To be clear no sanctions have been imposed against Plaintiff to date nor any sought. The claims against Plaintiffs here can be summed up simply as the inadvertent non-disclosure of some materials that Defendant, itself, obtained via subpoena. There was no fraud, no intentional conduct and no malice aforethought on the part of Plaintiffs or their counsel which would warrant dismissal. While the Court has the broad authority to impose sanctions for certain violations, under the Sixth Circuit's analysis, dismissal with prejudice here for this minor and inadvertent issue would be entirely unwarranted.

## **CONCLUSION**

Beyond its failure to comply with Local Rules 7.01 and 37.01, the Defendant's Motion is entirely without merit and should be denied. The claims of altered or edited videos are baseless, unsupported by any investigation or evidence, and fail to meet the requirements of Rule 11. Dismissal with prejudice is an extreme sanction reserved for willful, bad-faith, or contumacious

conduct, none of which exists here especially considering Defendant has suffered no real prejudice. Plaintiffs were never warned by the Court, and any purported issues could be addressed with far less drastic measures. For each of the reasons stated herein, dismissal and sanctions are entirely unwarranted, and Defendant's Motion should be denied in its entirety.

Respectfully and jointly submitted, this 4th day of December 2025,

Counsel for Plainitffs,

*/s/ Jonathan P. Mincieli*

**PETER J. FLOWERS**          **IL BAR #6210847**
**JONATHAN P. MINCIELI**    **IL BAR #6274091**
**THOMAS M. CONNELLY**    **IL BAR #6332570**
**CHRISTOPHER J. WARMBOLD**
                                              **IL BAR #6314229**

Meyers & Flowers, LLC
3 North Second Street – Suite 300
St. Charles, Illinois  60174
630.232.6333
630.845.8982 Facsimile
pjf@meyers-flowers.com
jpm@meyers-flowers.com
tmc@meyers-flowers.com
cjw@meyers-flowers.com

**TIMOTHY V. POTTER**          **#017520**
**ANDREW E. MILLS**          **#031236**
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee  37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Response to Defendant's Motion to Dismiss Pursuant to Rule 41(B) and Rule 37(c) has been sent via CM/ECF to counsel for the Defendant CSX TRANSPORTATION, INC on this 4th day of December 2025.

/s/ Angelica Eloisa_____

**ANGELICA ELOISA**