MATTHEW RIGNEY et al.,

Plaintiffs,

v.

CSX TRANSPORTATION, INC.,

Defendant.

No. 3:22-cv-00342 (consolidated)

JUDGE WAVERLY D. CRENSHAW, JR.

MAGISTRATE JUDGE LUKE A. EVANS

---

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT CSX TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS OF KAYLA BRAKE, SHANE BRYANT, AND TIFFANY BRYANT**

---

COME NOW, Plaintiffs Kayla Brake, Shane Bryant, and Tiffany Bryant by and through counsel, and submit this Memorandum of Law in Response to CSX Transportation, Inc.'s ("CSXT" or "Defendant") Motion for Summary Judgment Regarding Negligent Infliction of Emotional Distress Claims of Selected Plaintiffs and in support thereof state as follows:

### INTRODUCTION

CSXT moves for summary judgment based on its allegations that Plaintiffs Kayla Brake, Shane Bryant, and Tiffany Bryant have failed to provide evidentiary support for their emotional distress claims in spite of their unimaginable experiences during the catastrophic flood events caused by CSXT on August 21, 2021, in Waverly, Tennessee.

Contrary to CSXT's proclamations, Plaintiffs have produced substantial evidence from which a jury could reasonably conclude that these three Plaintiffs have suffered severe emotional distress as a result of CSXT's wrongdoing. CSXT's motion glaringly fails to acknowledge both

1

lay and expert testimony establishing the significant emotional distress suffered by Kayla Brake and Shane and Tiffany Bryant as a result of their own horrific experiences in the raging flood waters along with their observations relating to the tragic losses of their mother and minor daughter, respectively. CSXT's most troubling omission of material facts is its failure to meaningfully address Plaintiffs' expert psychiatrist, Dr. William Newman. Dr. Newman has provided detailed, case-specific opinions regarding each Plaintiffs' experience during the flood events and the resulting emotional harm. CSXT's motion conspicuously sidesteps these opinions, a silence that speaks volumes and reflects an understanding that Dr. Newman's opinions plainly establish a genuine dispute of material facts that must be decided by a jury. Summary judgment, therefore, must be denied.

## **LEGAL STANDARD**

A motion for summary judgment should be granted only if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The Court may not weigh evidence, judge witness credibility, or resolve factual disputes; those functions are reserved for the factfinder. *Id.* Importantly, the nonmoving party need not "produce evidence in a form that would be admissible at trial" to defeat summary judgment (*Celotex*, 477 U.S. at 324); it need only show that sufficient evidence exists upon which a jury

2

could reasonably find in its favor. *Anderson*, 477 U.S. at 249. Finally, the Court must reject a motion for summary judgment if "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52. "Summary judgment is only appropriate 'if . . . depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the nonmoving party." *Id.*

## ARGUMENT

The two arguments CSXT advances in favor of summary judgment fail as CSXT both misapplies the law and neglects to acknowledge the significant factual record refuting its claims. Accordingly, CSXT's motion is unsupported by both law and fact and should be denied in its entirety.

**I.    Plaintiffs Have Elicited Sufficient Evidence to Recover Emotional Distress Damages Under Their Nuisance Claims.**

CSXT attempts to attack Plaintiffs' nuisance claims by alleging that Plaintiffs failed to provide sufficient evidence showing that CSXT interfered with Plaintiffs' use and enjoyment of private property or that they suffered a particularized injury apart from the general public. CSXT's arguments fail because it misapprehends both the nature of nuisance liability under Tennessee law as well as the evidentiary record.

First, Tennessee courts recognize nuisance liability in cases involving death and personal injury resulting from defective drainage conditions like the instant case. *See Rucker v. Metropolitan Government of Nashville & Davidson County*, 1990 Tenn. App. LEXIS 824, at *6–7. In *Rucker*,

3

Tennessee Court of Appeals affirmed a wrongful death judgment where a decedent drowned after a roadway flooded due to a defectively maintained drainage system, holding that the defendant's conduct "resulted in a nuisance and defective storm drainage system" that was a proximate cause of the death. *Id.* Therefore, *Rucker* forecloses CSXT's suggestion that Plaintiffs' nuisance claims are limited to "use and enjoyment of private property" and confirms that flooding conditions may give rise to liability under a nuisance theory for personal injuries and deaths. *See Id.*

Second, CSXT's attempt to foreclose Plaintiffs' emotional distress damages under a nuisance theory by claiming that Plaintiffs somehow failed to show they suffered an injury different and apart from the general injury to the public is similarly misplaced. Tennessee law provides that "[a] public nuisance becomes also a private nuisance as to any person who is especially injured by it." *Maxwell v. Lax*, 292 S.W.2d 223, 226 (Tenn. Ct. App. 1954). Tennessee law further recognizes that the same conduct may give rise to both public and private nuisance liability where it interferes with public rights while causing special injury to particular individuals. *Maxwell*, 292 S.W.2d at 226; *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 283–84 (Tenn. Ct. App. 1988). The inquiry is not whether others were also harmed by the same event, but rather, whether Plaintiffs were subjected to a distinct hazard created by CSXT's conduct.

Here, the record establishes that Plaintiffs were directly impacted by a concentrated, artificially released surge of impounded water, akin to a dam-break, rather than the generalized flooding experienced by the broader public. Plaintiffs' engineering expert, Dr. Gerald Blackler, performed an expansive hydrologic and hydraulic analysis of Waverly and the surrounding area and identified conditions consistent with significant water impoundment and altered flow dynamics associated with the catastrophic washout that occurred on August 21, 2021. Dkt No.

4

257-1, Dr. Blackler Report. Dr. Blackler's analysis evaluated the hydrologic system on a watershed-wide basis using accepted principles of hydrology and hydraulics. *Id.* He testified that a "watershed" consists of "all of the land area that would drain into a certain point," and that his work involved analyzing how water from that broader drainage area is routed through the system. Dkt No. 251-4, Dr. Blackler Dep. at 31:12–21; 40:22–25. Consistent with standard forensic hydrologic practice, Dr. Blackler also calibrated his modeling against real-world observations, including photographic and testimonial evidence, to ensure that the model accurately reflected conditions "observed on the ground." *Id.* at 28:18–24; 30:1–7. Taken together, this testimony demonstrates that Dr. Blackler employed a comprehensive, system-wide analysis that considered watershed inputs, flow routing, hydraulic constraints, and observed conditions throughout Waverly, Tennessee.

Lay testimony further reinforces Dr. Blackler's conclusion. Plaintiffs have presented eyewitness accounts describing the sudden, violent, and rapidly escalating nature of the flooding, consistent with a surge as opposed to a gradual accumulation from rainfall alone. Consistent with Dr. Blackler's opinions, Kayla Brake testified that she observed the water coming up "pretty quick" and "fast." Dkt No. 251-3, Kayla Brake Dep. at 42:11-43:18, 47:21-48:12, 49:18-21, 50:6-52:2. The rush of water became so forceful Kayla had to strip her clothes as they were weighing her down but, ultimately, she was still sucked under the raging water. *Id.* Similarly, the record contains testimony concerning Kayla's mother who was swept around her house by the strong current and ultimately sucked out of her apartment window by the floodwaters. Exhibit 3, Cameron Guy Dep. at 49:7-51:21. Likewise, Shane Bryant testified to observing the flooding in Waverly via a videocall with his daughter when he saw mobile homes floating and houses coming off their foundations. Dkt No. 251-6, Shane Bryant Dep. at 77:15-80:22. Shane was unable to make it to

5

his home because of all the water. *Id.* at 40:1-41:23. Finally, Tiffany Bryant also received a videocall from her daughters and observed cars floating away in the torrent of water and could tell her daughters were getting nervous. Dkt No. 251-7, Tiffany Bryant Dep. at 38:18-39:19. Tiffany herself became stuck in the floodwater when it quickly reached her shoulders with the force pulling her back and to the side. *Id.* at 46:24-47:10.

The Plaintiffs' accounts are corroborated by other witnesses and contemporaneous video evidence capturing the rapidly evolving conditions on the ground throughout Waverly. Dkt No. 257-1, Blackler Report, pp. 19-30. Rather than addressing this evidence under the appropriate standard, CSXT attempts to improperly require Plaintiffs to prove the precise path of every gallon of water on a plaintiff-by-plaintiff basis. Such granular determinations are neither feasible nor required, and each Plaintiff's circumstances present appropriate questions of fact for the jury. *Mohr v. DaimlerChrysler Corp.*, No. W2006-01382-COA-R3-CV, 2008 Tenn. App. LEXIS 619 at *19 (Ct. App. Oct. 14, 2008) quoting *Hamblen v. Davidson*, 50 S.W.3d 433, 440 (Tenn. Ct. App. 2000) ("While expert testimony may be required to prove causation in technically complex cases, the issue of causation is ultimately one for the jury to determine, and 'this Court has noted that a jury may infer a causal connection through the use of circumstantial evidence, expert testimony or both.'").

Here, the record permits a reasonable jury to conclude that CSXT's railroad embankment functioned as a barrier that effectively created a man-made lake of impounded water that, when suddenly released, amplified the force, velocity, and timing of floodwaters into a lethal washout that struck each of these three Plaintiffs and their decedents, resulting in the decedents' deaths and Plaintiffs' resulting emotional distress. Because the evidence supports an artificially created condition that interfered with the natural drainage and compromised public safety, while

6

simultaneously imposing individualized catastrophic harm to Plaintiffs and their loved ones, summary judgment must be denied.

## II. Plaintiffs Have Presented Substantial Evidence in Support of Their Negligent Infliction of Emotional Distress Claims.

Plaintiffs have provided substantial evidence supporting their stand-alone and bystander NIED claims consistent with Tennessee law.

A stand-alone NIED claim requires a plaintiff to prove: (1) the traditional elements of negligence (duty, breach, injury, and causation), (2) serious or severe emotional injury, and (3) expert medical proof of emotional injury. *See, e.g., Camper v. Minor*, 915 S.W.2d 437, 446 (1996) (establishing a general negligence approach for NIED claims); *Marla H. v. Knox County*, 361 S.W.3d 518, 529 (2011); *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 136 (2001), and *Henderson v. Vanderbilt Univ.*, 534 S.W.3d 426 (2017). CSXT's motion only disputes causation as it relates to Plaintiffs' stand-alone NIED claims.

Bystander NIED claims are characterized by Tennessee courts, particularly the *Eskin* court, to favor permitting recovery in increasingly broad circumstances. *Henderson v. Vanderbilt Univ.*, 2017 Tenn. App. LEXIS 364, *24-27 (citing *Eskin v. Bartee*, 262 S.W.3d 727 at 734-35 (noting that "the direction of the development of the law . . . relating to negligent infliction of emotional distress claims has been to enlarge rather than to restrict the circumstances amenable to the filing of a negligent infliction of emotional distress claim"). As the Tennessee Supreme Court noted in *Eskin*, "[t]he courts have not hesitated to permit the recovery of damages for negligent infliction of emotional distress when justice and fairness require it." *Eskin*, 262 S.W. 3d at 738. Accordingly, Tennessee courts provide four "objective standards" to be utilized by courts in determining whether to allow NIED claims to proceed beyond summary judgment, namely: (1) the plaintiff's physical location or proximity to the incident; (2) the plaintiff's awareness of the incident; (3) the

7

apparent seriousness of the victim's injuries; and (4) the closeness of the relationship between the plaintiff and the victim. *Eskin*, 262 S.W.3d at 736 (quoting *Ramsey v. Beavers*, 931 S.W.2d 527 at 531). These four factors are used to determine the foreseeability of a plaintiff's emotional distress. *Id*. CSXT suggests that each Plaintiffs' emotional distress was not foreseeable.

In *Eskin*, the Tennessee Supreme Court concluded that the plaintiff parent was permitted to pursue her bystander claim for NIED. In reaching this result, the Court noted that although the plaintiff did not see or hear the automobile strike her son, the plaintiff had a close familial relationship with the victim, and the plaintiff's proximity to the "injury-producing incident" was sufficient under the necessary objective standards because the plaintiff was able to arrive at the accident scene quickly before it significantly changed. *Eskin*, 262 S.W.3d at 738. The court further explained:

> In other words, while the bystanders did not have a sensory perception of the accident as it occurred, they had a direct sensory perception of the accident scene and the results of the accident soon after the accident occurred. In this circumstance, we have determined that it is appropriate and fair to permit recovery of damages for the negligent infliction of emotional distress by plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident. *Id.*

The *Eskin* court specifically noted two important considerations that led to its conclusion. First, the court noted that it has been "historically recognized" that severe emotional injuries to individuals are easily foreseeable where the plaintiff has a close personal relationship with an injured party. *Id.* Second, the court noted the lack of a principled basis to differentiate between an individual who sees an event that seriously injures or kills their relative and an individual who sees their dead relative or the scene shortly after the event. *See Eskin*, 262 S.W.3d at 739. Indeed, the Court recognized that "other courts" have likewise failed to make a distinction under similar circumstances. *Id.* at 739 n.29 (citing cases).

Consistent with this governing legal framework, the record clearly reflects that substantial evidence supports Plaintiffs' stand-alone and bystander NIED claims. Accordingly, CSXT is not entitled to summary judgment as a matter of law.

***Kayla Brake's stand-alone NIED claim is supported by the evidence.*** On the morning of the flood events, Kayla Brake was at her home located at 2378 Highway 13 South in Waverly, TN. This location is to the south and west of where the washout of the CSXT railroad occurred. Dkt No. 251-3, Kayla Brake Dep. At 8:19-9:18. West, or in other words, downstream, of the washout was the area affected by CSXT's negligence. Dkt No. 257-1, Dr. Blackler Report, pp 2-3. While at her home that morning, Kayla observed water in her backyard that she could not distinguish from Blue Creek or her neighbor's pond. Dkt No. 251-3, Kayla Brake Dep. at 40:12-41:25 (there was just "one big body of water."). The water rose "pretty quick" and "fast," rising to her chest level in a matter of minutes. *Id.* at 42:11-43:18, 46:15-48:12. Kayla felt like the water was sucking her in and it was "chaotic." *Id.* at 47:21-48:12. The water then became so forceful that Kayla had to strip her clothes because they were weighing her down. *Id*. at 50:6-22. Kayla then observed her shed float by when she was hanging onto a bush, which she later let go of and the water was so forceful it sucked Kayla underwater. *Id.* at 50:6-52:2. Kayla was later able to hold on to a barbed wire fence where she remained until she was eventually physically rescued by her neighbors. *Id.* Notably, Kayla herself testified that she attributes the flooding she experienced at her home to the railroad because of the sudden release of water and the way the water rose suddenly in a matter of minutes. *Id.* at 98:20-99:17.

Similarly, Plaintiff's hydrology expert, Dr. Blackler, opines that the CSXT railroad washout resulted in fast-moving waters and a fast-rising flood wave in Waverly, TN that reduced the amount of time citizens of Waverly, TN had to evacuate and reduced their ability to evacuate to safe ground.

Dkt No. 257-1, Blackler Report, p. 36, ¶¶ 1-13; Dkt No. 251-4, Blackler Dep. At 160:1-120 ("the model itself, as I said in my report, has the entire city in it."). These are the exact type of conditions Kayla Brake experienced while she was at her home in Waverly. Although CSXT attempts to improperly require Kayla to prove the precise path of every gallon of water that ravaged her home and forced her to cling to both a bush and a barbed wire fence before she was rescued, such specificity is not required, especially at the summary judgment phase, and the circumstances of Kayla's experience present appropriate questions of fact for the jury. *See Mohr*, No. W2006-01382-COA-R3-CV, 2008 Tenn. App. LEXIS 619 at *19 (Ct. App. Oct. 14, 2008). As such, Contrary to CSXT's argument, there is sufficient evidentiary support for the washout of CSXT's railroad causing or contributing to the flooding experienced by Kayla Brake. Further, as a result of that flooding, Kayla was diagnosed with PTSD by Plaintiff's expert psychologist, Dr. Newman, who opined within a reasonable degree of medical certainty that Kayla Brake's "diagnosis of PTSD is causally related to the catastrophic flood in Waverly, Tennessee on 8/21/21." Exhibit 4, Dr. Newman Report – Kayla Brake p. 10.[1] Accordingly, given the competent evidence supporting Kayla Brake's stand-alone NIED claim, summary judgment must be denied.

*Kayla Brake's bystander NIED claim is supported by the evidence.* Despite CSXT's assertion Kayla Brake's emotional distress was not foreseeable, there is abundant support throughout the evidentiary record to meet the four foreseeability factors utilized by Tennessee courts for bystander NIED claims. First, as described above, Kayla was physically located in Waverly throughout the day. She was originally located at her home in Waverly when she had her own terrifying experience in the raging floodwaters. Dkt No. 251-3, Kayla Brake Dep. at 42:11-43:18, 46:15-48:12, 47:21-48:12, 50:6-52:2. Shortly thereafter, she arrived at the Cash Saver plaza

---

[1] Plaintiffs have contemporaneously filed a Motion to File Exhibits under Seal, including this Exhibit 4.

where she described seeing her mother's house, "and it was just, like water." *Id.* at 60:8-21. Further, Kayla was aware of the incident in real time. She personally experienced the flooding as it occurred, and had multiple phone conversations with her mother as the flooding was worsening. *Id.* at 43:25-46:12. Third, the gravity of her mother's injuries was immediately apparent to Kayla. While searching for her mother, Kayla learned that her mother "went out the window" because of all of the floodwater coming into her house, and that she got separated and swept away in the water. *Id.* at 60:8-62:20. As Kayla continued her frantic search for her mother that day, she learned of her mother's death in real time and ultimately saw her body, which she described as dirty, bruised, and covered in mud. *Id.* at 63:6-18. Lastly, the evidence shows Kayla and her mother had a close relationship. Kayla testified she and her mother were "really, really, really, really close." *Id.* at 104:11-24. Kayla further testified that since losing her mother it feels like she lost part of her brain because she was that close to her mother. *Id.* Kayla considered her mother to be her best friend. *Id.* Based upon the foregoing, it is apparent that all four factors set forth in *Eskin* concerning the foreseeability of Kayla's bystander NIED claim are satisfied. *See Eskin*, 262 S.W.3d at 736 (quoting *Ramsey*, 931 S.W.2d at 531). When viewing this evidence and drawing all reasonable inferences in the light most favorable to Kayla, summary judgment must be denied.

**Shane Bryant's stand-alone NIED claim is supported by the evidence.** Although Shane Bryant spent much of the morning in McEwen attempting to make his way home to Waverly, he did eventually arrive in Waverly when the catastrophic flooding conditions remained. Dkt No. 251-6, Shane Bryant Dep. at 38:7-19. Once arriving in Waverly, Shane attempted to make it all the way to his house at 103 Slayden Street but was unable to "because of all the water that was still there." *Id.* at 40:1-12. Shane was stuck and unable to get to his house despite being less than a football field away because of the height of the water. *Id.* at 40:21-41:5. This is the specific area Dr.

11

Blackler opined was affected by the washout with increased volume and intensity. Dkt No. 257-1, Dr. Blackler Report; Dkt No. 251-4, Dr. Blackler Dep. At 160:1-20 (the model itself, as I said in my report, has the entire city in it."). Moreover, Dr. Newman diagnosed Shane with major depressive disorder and PTSD as a result of Shane's catastrophic flood experience in Waverly, TN that day. Exhibit 1, Dr. Newman Report – Shane Bryant p. 10.[2] Accordingly, sufficient evidence exists to support Shane Bryant's stand-alone NIED claim and summary judgment must be denied.

*Shane Bryant's bystander NIED claim is supported by the evidence.* Similar to Kayla Brake, Shane Bryant's emotional distress was foreseeable and the evidence supports the four foreseeability factors relied on by Tennessee courts. First, Shane was in or around Waverly throughout the entire day. Although he struggled to get from McEwen to Waverly, he did eventually arrive in Waverly and made it within a football field distance of his home when the catastrophic flooding conditions remained. Dkt No. 251-6, Shane Bryant Dep. at 38:7-19, 40:1-41:5. Shane was also aware of the incident in real time. Shane understood the roads were closed going into Waverly because of the conditions (*Id.* at 32:17-34:14) and he also spoke to his daughters, including Lilly Bryant, via videocall where he learned and saw that his neighbors' houses were moving and coming off their foundations and mobile homes were floating. *Id.* at 77:15-80:22. Moreover, Shane testified that his daughters were panicking, fearing that mobile homes were going to collide into their home. *Id.* Moreover, it was immediately apparent to Shane the seriousness of his daughters' injuries. Shane then spent days searching for his young daughter, Lilly, until her death was ultimately confirmed. Ex. 1, Newman Report – Shane Bryant, p. 5. Lastly, Shane and Lilly had a close relationship. Shane testified his relationship with Lilly "was awesome." Dkt No. 251-6 at 101:15-102:9. Accordingly, all four factors set forth in *Eskin* concerning the foreseeability of

---

[2] Plaintiffs have contemporaneously filed a Motion to File Exhibits under Seal, including this Exhibit 1.

Shane's bystander NIED claim are satisfied. *See Eskin*, 262 S.W.3d at 736 (quoting *Ramsey*, 931 S.W.2d at 531). When viewing this evidence and drawing all reasonable inferences in the light most favorable to Shane, summary judgment must be denied.

***Tiffany Bryant's stand-alone NIED claim is supported by the evidence.*** CSXT's assertion that Tiffany subjected herself to the flooding and therefore cannot succeed on her stand-alone NIED claim is meritless. At the time Tiffany was stuck in flood waters, she had just left her job at the post office and was on her way home to help her young daughters who had called her and were nervous about the rising water. Dkt No. 251-7, Tiffany Bryant Dep. at 38:18-39:19. Incredibly, CSXT condemns a loving mother's efforts to make it home to her minor daughters while simultaneously celebrating the purportedly analogous conduct of its own employee, Corey Oakley, who engaged in evacuation efforts, describing them as commendable, even heroic, in the its Statement of Facts to its Omnibus Motion for Summary Judgment. *See* Dkt No. 258 at ¶¶ 52-53. This stark double standard underscores the selective and self-serving nature of the position CSXT has taken throughout the summary judgment briefing.

While on her way back home to get her daughters, Tiffany was submerged in flood waters at Main St. near the Waverly Baptist Church. It was there that Tiffany was stuck in shoulder-high water when she had to turn around because the water kept pulling her back and to the side. Dkt No. 251-7, Tiffany Bryant Dep. at 46:24-47:10. Again, this is in the area where Dr. Blackler opined was impacted by CSXT's wrongdoing. Dkt No. 251-4, Dr. Blackler Dep. At 160:1-20 (the model itself, as I said in my report, has the entire city in it.").While CSXT once again attempts to improperly require Tiffany to prove the precise path of every gallon of water on a plaintiff-by-plaintiff basis, such specificity is not required, especially at the summary judgment phase, and the circumstances of Tiffany's experience present appropriate questions of fact for the jury. *See Mohr*,

No. W2006-01382-COA-R3-CV, 2008 Tenn. App. LEXIS 619 at *19 (Ct. App. Oct. 14, 2008). Contrary to CSXT's argument, there is evidence that supports a finding that the washout of CSXT's railroad caused or contributed to the devastating flooding personally encountered by Tiffany Bryant. Further, as a result of that encounter, Tiffany Bryant was diagnosed with PTSD and prolonged grief disorder by Plaintiff's expert psychologist, Dr. Newman, who opined within a reasonable degree of medical certainty that Tiffany's "diagnoses of PTSD and prolonged grief disorder are causally related to the catastrophic flood in Waverly, Tennessee on 8/21/21." Exhibit 2, Dr. Newman Report – Tiffany Bryant p. 12.[3] Based upon the foregoing, there is no basis to grant summary judgment.

*Tiffany Bryant's bystander NIED claim is supported by the evidence.* Like her husband, Tiffany Bryant also presented sufficient evidence in the record to support the foreseeability of her bystander NIED claim relating to her daughter's death. First, Tiffany was in Waverly the entire day and was on Main Street only blocks away from her home on Slayden Avenue where her daughters were. Dkt No. 251-7, Tiffany Bryant Dep. at 43:15-45:2. As such, Tiffany was also aware of the incident in real time. Tiffany received a video call from her daughters, and they showed her that the water was getting high and Tiffany could see a car floating away on the screen and that the girls were getting nervous. *Id.* at 38:18-39:19; Ex. 2, Dr. Newman Report – Tiffany Bryant, pp. 5-6. The girls then called again and asked Tiffany to come get them because the water rose so high. Dkt No. 251-7 at 38:18-39:19. Third, the seriousness of her daughter's injuries were immediately apparent to Tiffany. She herself experienced the raging flood waters and learned that Lilly had been swept away in them. *Id.* at 49:4-25. Tiffany also spent days searching for her young daughter, Lilly, until it was ultimately confirmed that she had died. Ex. 2, Dr. Newman Report –

---

[3] Plaintiffs have contemporaneously filed a Motion to File Exhibits under Seal, including this Exhibit 2.

Tiffany Bryant, p. 6. To no surprise, Tiffany and Lilly had a close relationship. Tiffany testified that Lilly was a great daughter and was "a little ray of sunshine." Dkt No. 251-7 at 69:6-18. Accordingly, all four factors set forth in *Eskin* concerning the foreseeability of Tiffany's bystander NIED claim are satisfied. *See Eskin*, 262 S.W.3d at 736 (quoting *Ramsey*, 931 S.W.2d at 531). When viewing this evidence and drawing all reasonable inferences in the light most favorable to Tiffany, summary judgment must be denied.

## CONCLUSION

Given the clear questions of fact as detailed above, Plaintiffs Kayla Brake, Shane Bryant, and Tiffany Bryant respectfully request that this Court DENY CSXT's Motion for Summary Judgment Regarding the Selected Plaintiffs' Negligent Infliction of Emotional Distress Claims in its entirety and for such other and further relief this Court deems equitable.

/s/Jonathan P. Mincieli

**TIMOTHY V. POTTER**      **#017520**
**ANDREW E. MILLS**      **#031236**
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com
*Counsel for Plaintiffs*

*Pro Hac Vice:*
**PETER J. FLOWERS**      **IL BAR #06210847**
**JONATHAN P. MINCIELI**      **IL BAR #06274091**
**CHRISTOPHER J. WARMBOLD**   **IL BAR #06314229**
**THOMAS M. CONNELLY**      **IL BAR #06332570**
Meyers & Flowers, LLC
3 North Second Street - Suite 300
St. Charles, Illinois 60174
630.232.6333
630.845.8982 Facsimile

pjf@meyers-flowers.com
jpm@meyers-flowers.com
cjw@meyers-flowers.com
tmc@meyers-flowers.com

*Counsel for Plaintiffs*

16

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing *Plaintiffs' Memorandum of Law in Support of Their Response to Defendant CSX Transportation, Inc.'s Motion for Summary Judgment Regarding Negligent Infliction of Emotional Distress Claims of Selected Plaintiffs* has been sent to:

| | | |
|---|---|---|
| Ms. S. Camille Reifers | #019856 | ☐ Via U.S. Mail, postage prepaid |
| Mr. John J. Bennett | #031976 | ☐ Via Facsimile |
| Andrew Todd | #39590 | ☐ Via Email |
| Wai-Lin Danieley | #41433 | ☐ Via UPS overnight |
| Reifers, Holmes & Peters, LLC | | ☐ Via Hand Delivery/Courier |
| 80 Monroe Avenue – Suite 410 | | ☐ Via Service of Process |
| Memphis, Tennessee  38103 | | ■ Via CM/ECF, efile, or other |
| 901.521.2860 | | electronic service format |
| creifers@rhpfirm.com | | |
| jbennett@rhpfirm.com | | |

*Attorney for Defendant CSX Transportation, Inc.*

, this 24th day of April 2026.

s/Jonathan P. Mincieli

**Jonathan P. Mincieli**