# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MATTHEW RIGNEY et al.,

        Plaintiffs,

        v.

CSX TRANSPORTATION, INC.,

        Defendant.

No. 3:22-cv-00342 (consolidated)

JUDGE WAVERLY D. CRENSHAW, JR.

MAGISTRATE JUDGE LUKE A. EVANS

## PLAINTIFFS TRACY KILBURN, PEGGY BETTY & MICHELLE FELICIANO'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiffs, Tracy Kilburn, Peggy Betty & Michelle Feliciano, by and through counsel and submit this Memorandum of Law in Response to Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and in support thereof state as follows:

## INTRODUCTION

Defendant, CSX Transportation, Inc. ("CSXT"), moves for summary judgment on what is ultimately a quintessential question of fact in personal injury litigation: comparative fault. CSXT asks this Court to usurp the role of the jury by declaring that no reasonable trier of fact could find that Plaintiffs bear less than fifty percent (50%) fault for their respective injuries. More troubling still, CSXT advances this position while casting blame upon individuals who attempted to save a life (Kilburn); a Plaintiff who set out to assist a neighbor (Betty); and a Plaintiff whose daughter tragically drowned while awaiting her sister's arrival, having reasonably believed her vehicle could not safely traverse the floodwater (Feliciano).

1

Most troubling, however, is CSXT's attempt to characterize Plaintiffs' efforts to aid others as "reckless" and "rash" while simultaneously portraying the purportedly analogous conduct of its own employee, Corey Oakley, who engaged in evacuation and rescue efforts, as commendable, even heroic. CSXT goes further, invoking Mr. Oakley's conduct as a basis, in part, to seek dismissal of Plaintiffs' claims, as underscored by its inclusion of this narrative in its Statement of Facts for its Omnibus Motion for Summary Judgment. Dkt No. 258 at ¶ 52-53.

As provided below, CSXT's motion is unsupported by both law and fact and should be denied in its entirety.

## LEGAL STANDARD

"[F]ederal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Applying those principles here, this court should use the federal standard governing the availability of summary judgment, *Id.*, and follow "the decisions of the state's highest court" when determining whether CSXT has established its state-law affirmative defense. *Berrylane Trading, Inc. v. Transp. Ins. Co.*, 754 F. App'x 370, 374 (6th Cir. 2018) (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).

### A. Summary Judgment

A motion for summary judgment should be granted only if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if . . . depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the nonmoving party." *Id.* Where, as here, defendant seeks summary judgment "on an affirmative defense on which it will bear the ultimate burden of proof at trial," the defendant must satisfy a demanding standard. *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014). Under these circumstances, summary judgment is proper "only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary." *Id.* (internal quotations omitted) (quoting *Beck-Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006)). Comparative fault is an affirmative defense, so "the defendant must 'conclusively establish the affirmative defense' by pointing to undisputed facts that prove the defense." *Ellington v. Jackson Bowling & Family Fun Center, L.L.C.*, 2013 Tenn. App. LEXIS 109, at *12-13 (Tenn. Ct. App. Feb. 19, 2013).

## B. <u>Summary Judgment and Comparative Fault</u>

It is well settled that comparative fault is typically a question for the trier of fact. *Id.* at *10; *see also LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997) (holding that "comparative fault is a question of fact within the jury's province, which should not lightly be invaded by the trial court"); *Henley v. Amacher*, 2002 Tenn. App. LEXIS 72, at *18-19 (Tenn. Ct. App. Jan. 28, 2002) ("The task of comparing and allocating fault may be taken from the jury only when it can be determined beyond question (or alternatively, when reasonable minds cannot differ) that the plaintiff's fault is equal to or greater than the defendant's.").

C. **The Adoption of Comparative Fault and the Abolition of Assumption of Risk**

In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992) the Supreme Court of Tennessee adopted comparative fault, thereby supplanting the common law rule of contributory negligence. Under the prior contributory negligence rule, a plaintiff was entirely barred from recovery if found even one percent at fault for his or her own injuries. *Id*. at 54. Shortly thereafter, in *Perez v. McConkey,* 872 S.W.2d 897 (Tenn. 1994) the Tennessee Supreme Court addressed the interplay between the assumption of risk defense and the newly adopted comparative fault framework. Following a comprehensive review of other jurisdictions, the *Perez* court eliminated implied assumption of risk as a distinct defense, holding:

> …the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk. *Id*. at 905.

In *Eaton v. McLain*, 891 S.W.2d 587 (1994) the Supreme Court of Tennessee further observed that two traditional exceptions to contributory negligence, the sudden emergency doctrine (*Johnson v. Copeland*, 178 Tenn. 431 (1942)) and the rescue doctrine (*Ruth v. Ruth,* 213 Tenn. 82 (1963)), were implicitly subsumed with the adoption of comparative fault in *McIntyre*. In *Ruth*, the court articulated the rescue doctrine, emphasizing that "the law has so high a regard for human life that it will not impute negligence to an effort to preserve it unless done so in a rash or reckless manner." (quoting *Railroad Co. v. Ridley*, 114 Tenn. 727, 734 (1905)).  That principle was subsequently extended to encompass the protection of personal property.

For example, in *Caldwell v. Ford Motor Co*., 619 S.W.2d 534, 536 (Tenn. 1981), a vehicle defect caused the plaintiff's truck to ignite, and the plaintiff was injured while attempting to retrieve personal property from the fire.  There, the court held that it was reasonable for the plaintiff

to confront the danger and that, under the rescue doctrine, it was foreseeable that an individual would make a rational attempt to preserve personal property placed in peril. *Id.* at 536; *see also Hurt v Coyne Cylinder Co.*, 956 F.2d 1319, 1325-1326 (6th Cir. 1992)("Certainly, if it is deemed foreseeable and rational for one to try and rescue one's own personal property, it is even more foreseeable that a man will try to rescue his son, placing him in the zone of danger, and thereafter to stay to save his property.")

Similar to the rescue doctrine, the emergency doctrine similarly operates as a limitation on contributory negligence. As articulated in *Johnson v. Copeland*, 178 Tenn. 431, 436 (1942), "In a negligence case, acts of the plaintiff which would ordinarily be regarded as contributory negligence defeating his suit would not be so regarded if plaintiff acted in an emergency." Accordingly, the *Eaton* court acknowledged the abolition of the assumption of risk as an independent defense and concluded that both the rescue and emergency doctrines had been subsumed within the comparative fault framework, stating:

> In summary, the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth. *Id.* at 592.

The *Eaton* court further clarified that these factors are not exhaustive for apportioning fault between the parties. *Id.* at 593. Rather, "As stated above, the fault apportionment question is ultimately dependent upon all the circumstances of the case; and juries will continue, as they have in the past, to rely upon their common sense and ordinary experience in apportioning fault." *Id.*

**ARGUMENT**

I.  **CSXT IS NOT ENTILED TO SUMMARY JUDGMENT AS ISSUES OF COMPARATIVE FAULT ARE FACT-SPECIFIC INQUIRIES LEFT TO THE PROVINCE OF THE JURY.**

In light of the foregoing legal framework and, particularly, the non-exhaustive fact-intensive inquiries required to determine comparative fault as set forth in *Eaton*, it is evident that CSXT's motion is futile and arguably frivolous. Nonetheless, in an effort to avoid this conclusion, CSXT relies upon three cases for the proposition that, in "unique" circumstances, summary judgment may appropriate on issues of comparative fault. Unsurprisingly, however, none of the three cases bear any meaningful factual or legal similarity to the present matter.

First, CSXT relies upon *Hall v. Owners Ins. Co.*, 2015 Tenn. App. LEXIS 920 at *2-3 (Tenn. Ct. App. 2015), an automobile negligence action arising from a collision at an intersection controlled by a traffic light. In *Hall*, the plaintiff, operating a 2003 Toyota Matrix, attempted a left turn across oncoming traffic while facing a red traffic signal. *Id.* The defendant, operating a tractor-trailer, entered the intersection with a green light. *Id. at* 3. The intersection was well illuminated, and, despite a red signal, the plaintiff proceeded into the path of the defendant's vehicle, resulting in a collision. *Id.* Two video cameras at the intersection captured the collision. The trial court acknowledged that while comparative fault is typically a jury question, the presence of video evidence rendered the case unique. *Id.* at 10. Based on that evidence, the court concluded that no reasonable juror could find the plaintiff less than 50% at fault, a determination affirmed on appeal. *Id.* at 16-17.

Similarly, *Cryer v. City of Algood,* 2022 Tenn. App. LEXIS 14 at *2 (Tenn. Ct. App. 2022), involved a vehicular accident involving a police officer that was captured on video. The plaintiff attempted to turn left across traffic on U.S Highway 70 and was struck by a police officer. *Id.* The

6

plaintiff testified at trial he never saw the officer's vehicle. *Id*. at *9. After trial, the court held that no reasonable factfinder could conclude that the plaintiff was less than 50 percent at fault for pulling into the path of a visible oncoming vehicle and accordingly entered an involuntary dismissal under Rule 41.02 which was affirmed on appeal given the video evidence. *Id*.

The third and final case cited by CSXT, *Lewis v. Norfolk S. Ry. Co*, 618 F. Supp. 2d 833, 837 (W.D. Tenn. 2008), involved a wrongful death claim arising from a fatal incident in which the decedent attempted to cross railroad tracks by stepping between coupled train cars. There, the court determined that decedent was a trespasser to whom the defendant only owed a duty to refrain from willful, intentional, or reckless conduct, none of which was established. *Id*. at 839. Accordingly, the defendant breached no duty of care to the Plaintiff. *Id*. The court further noted that both the decedent and the plaintiff were aware of the dangers associated with crossing a stopped train. *Id*. Accordingly, the court concluded that the decedent's injuries and death resulted from her own failure to exercise ordinary care while she engaged in a knowingly dangerous activity while trespassing on defendant's property. *Id*.

In sum, each of these cases are inapposite. *Hall* and *Cryer* involved motor vehicle accidents supported by undisputed video evidence, eliminating any genuine factual dispute. Moreover, neither case implicated circumstances in which plaintiffs knowingly confronted risks under conditions requiring evaluation of reasonableness, including whether such conduct was rash or reckless, such matters that are fundamentally reserved for evaluation by a jury. The final case, *Lewis*, is distinguishable on the additional grounds that it involved a trespasser to whom no duty of ordinary care was owed.

Based upon the foregoing, there is nothing "unique" about the present matter that would justify removing it from the province of the jury. To the contrary, this case presents precisely the

7

type of fact-intensive inquiry contemplated by *Eaton*, requiring a jury to evaluate what a reasonably prudent person would have done under the circumstances. This is not a case in which this Court can conclude, as a matter of law, that no reasonable trier of fact could find the plaintiffs less than 50% at fault. Each plaintiff's claim is addressed in turn.

## A. <u>Plaintiff Kilburn</u>

Even accepting CSXT's Statement of Facts as true and resolving all inferences and ambiguities in its favor,[1] the record demonstrates, at most, that Scott Kilburn made a split-second decision in an emergency in an effort to save another's life. Under the cases discussed above, including, *Ruth, Perez, Eaton, and Johnson*, this Court cannot conclude that every rational trier of fact would assign fault to the decedent in excess of 50%. As recognized in *Schrader v. Storage Five Clarksville, LLC*, No. 3:21-cv-00983, 2023 U.S. Dist. LEXIS 56458, at *19-20 (M.D. Tenn. Mar. 31, 2023), "[t]he reasonableness of a plaintiff's decision to encounter [a known] risk is a factual determination for the jury," and even "ample evidence" that the plaintiff's decision "was ill-advised and negligent" will not justify summary judgment on the issue. *LaRue*, 966 S.W.2d at 426-27 (quoting *Silcox v. Coffee*, 1993 Tenn. App. LEXIS 603, at *16 (Tenn. Ct. App. Sept. 15, 1993)). The Court in *Schrader* further held that because it "cannot say that a rational trier of fact could not find that the percentage of fault attributable to Plaintiff was less than 50%[,] . . . there are genuine disputed issues of material fact with regard to comparative fault in this case, making summary judgment inappropriate." *Reynolds v. Rich*, 511 S.W.3d 526, 536 (Tenn. Ct. App. 2016). *Schrader,* at *20.

---

[1] Of course, this framing does not reflect the governing standard on summary judgment, as Fed. Civ. P. 56 requires the Court to construe all evidence and reasonable inferences in favor of the non-moving party.

CSXT's position is also logically unsound. Under the common law rule of contributory negligence, both the rescue doctrine and emergency doctrine precluded a finding of negligence where a plaintiff confronted a known risk in an effort to preserve life unless such conduct was rash or reckless. As the *Ruth* court explained:

> This is but another way of saying that the courts recognize that a reasonably and ordinarily prudent person may expose himself to danger in an effort to protect human life, and, if a plaintiff so exposes himself to danger under such circumstances as a jury finds a reasonably and ordinarily prudent person would so expose himself, then the conduct of the plaintiff does not break the legal chain of causation, and the negligence of the defendant may be found to be the proximate cause of plaintiff's injury. *Ruth*, at 88-89.

Despite the adoption of comparative fault in Tennessee, CSXT now asks this Court to declare that conduct previously deemed incapable of constituting negligence, namely, attempting to save another's life, not only constitutes negligence but exceeds 50% fault as a matter of law. Such a conclusion is fundamentally flawed.

CSXT's reliance on *Hurt and Caldwell* for the proposition that Kilburn "assumed the risk" of encountering a known and obvious danger and thereby broke the chain of causation is similarly misplaced. The "breaking the chain of causation" concept arises from the contributory negligence framework wherein any fault of a plaintiff precluded recovery. Moreover, both cases predate the adoption of comparative fault in Tennessee. *Hurt* involved a strict liability claim that proceeded to trial, and *Caldwell* merely extended the rescue doctrine to personal property. Neither alters the governing comparative fault analysis under *Eaton*.

### B. <u>Plaintiff Betty</u>

CSXT's arguments are equally unavailing with respect to Plaintiff Betty. Even if one utilized an inapplicable summary judgment standard favoring the defendant, the record establishes, at most, that decedent Betty had undergone cataract surgery, treatment for kidney stones, cardiac

surgery, and knee replacement surgery months prior to the flood, and, while assisting a neighbor on the morning of the flood, became trapped in the floodwaters causing his death.

During the morning of August 21, 2021, Plaintiff Betty and her husband moved one of their vehicles to a relative's house in Waverly and then returned home to move another vehicle as water levels rose. Upon recognizing the danger, Plaintiff Betty and the decedent relocated to a relative's home from which the decedent later departed to assist a neighbor.

These facts give rise to numerous issues bearing directly on any alleged comparative fault, including those encompassed within the rescue doctrine, and thus preclude any determination, as a matter of law, that every rational trier of fact would find the decedent more than 50% at fault. Parallel actions for one (Corey Oakley) cannot be labeled heroic and rash for another (Betty).

CSXT's reliance on *Chattanooga Light & Power*, 109 Tenn. 331 (1902) is misplaced. *Chattanooga* both predates the extension of the rescue doctrine to personal property, as recognized in *Caldwell*, and the adoption of comparative fault. The relevance of a matter decided in 1902 to the present matter is, therefore, negligible.

When utilizing the proper summary judgment standard by viewing all facts and inferences in favor of the non-moving party, there can be no question that material factual disputes remain. For instance, there is conflicting evidence as to whether the decedent intended to move a boat or rescue a neighbor. Plaintiff Betty testified, "He rolled down the window and he told me—he says 'I've got to get back over there and get Ray," and "Well I've got to try and help him." Dkt No. 245-3, Peggy Betty Dep. at 53:18-54:1. This testimony implicates the fifth *Eaton* factor to be considered by the trier of fact in apportioning fault, that is, the significance of what the decedent was attempting to accomplish by the conduct, such as an attempt to save another's life, in confronting the risk. *Eaton,* 891 S.W.2d at 592.

Additional factual disputes arise from prior flood experiences in 2010 and 2019, which inform the second *Eaton* factor, decedent's reasonableness in confronting the risk. *Id*. Plaintiff Betty testified that they believed the flood conditions would be similar to prior events and acted accordingly. Dkt No. 245-3 at 42:5-17. For instance, Plaintiff Betty relayed, "If [the water] even gets up in the house again, we'll cut the walls out -- halfway out, dry it and repair it. And we'd done that twice before with 2010 and 2019." *Id*. at 42:10-13. "And we thought this would be about the same way. We always just pulled the cars out, got them to dry ground, and stayed with my sister. And we just like thought it was just like any other time." *Id.* at 42:13-17. Plaintiff Betty was referring to the flooding events of 2010 and 2019, during which their home sustained approximately two feet of water. *Id.* at 42:18-25.

Further, disputes exist pertaining to the sixth *Eaton* factor, the decedent's physical capabilities. *Eaton,* 891 S.W.2d at 592. Contrary to Defendant's characterization, testimony indicates that the decedent was ambulatory without assistance at the time of the flood. Dkt No. 245-3 at 29:12-14.

For the foregoing reasons, these contested factual issues alone preclude summary judgment.

C. **Plaintiff Feliciano**

Finally, even accepting all of CSXT's statement of facts as true, Plaintiff Feliciano responded to a flood warning by preparing her 7-year-old daughter for evacuation, contacting her sister for transportation due to unsafe driving conditions, and awaiting assistance when floodwaters rapidly entered her residence. Tragically, while awaiting her sister's arrival, water rushed into her apartment, drowning her daughter.

11

Under these circumstances, it is untenable to conclude that every rational trier of fact would assign more than 50% fault to Ms. Feliciano. Ultimately, a jury must decide whether Ms. Feliciano's actions in electing to wait for her sister to arrive to transport she and her daughter in a pickup truck as opposed to a sedan that she did not believe could safely traverse the floodwaters, is reasonable or reckless.

Additionally, Plaintiff's testimony confirms that she was uncertain regarding the feasibility of reaching safety on foot. Dkt No. 254-4, Michelle Feliciano Dep. at 47:23-48:10. Thus, comparisons to other individuals who may have reached safety are immaterial and in no way dispositive on the reasonableness or unreasonableness of Plaintiff's actions. When viewing the evidence in the light most favorable to Plaintiff, as required, genuine issues of material fact plainly exist. Accordingly, summary judgment must be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Tracy Kilburn, Peggy Betty and Michelle Feliciano respectfully request CSXT's Motion for Summary Judgment be denied in its entirety, along with such other relief the Court deems just and proper.

Date: April 24, 2026                     Respectfully submitted,

Counsel for Plaintiffs,

*/s/ Jonathan P. Mincieli*

| | |
|---|---|
| **PETER J. FLOWERS** | **IL BAR #6210847** |
| **JONATHAN P. MINCIELI** | **IL BAR #6274091** |
| **THOMAS M. CONNELLY** | **IL BAR #6332570** |
| **CHRISTOPHER J. WARMBOLD** | **IL BAR #6314229** |

Meyers & Flowers, LLC
3 North Second Street – Suite 300
St. Charles, Illinois 60174
630.232.6333

630.845.8982 Facsimile
pjf@meyers-flowers.com
jpm@meyers-flowers.com
tmc@meyers-flowers.com
cjw@meyers-flowers.com

**TIMOTHY V. POTTER**                          **#017520**
**ANDREW E. MILLS**                            **#031236**
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com

13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing Plaintiffs Tracy Kilburn, Peggy Betty & Michelle Feliciano's Memorandum of Law in Response to Defendant's Motion for Summary Judgment has been sent via CM/ECF to counsel for the Defendant CSX TRANSPORTATION, INC on this 24th day of April 2026.

*/s/ Patricia A. Dunne-Smith*

14