# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MATTHEW RIGNEY et al.,

        Plaintiffs,

        v.

CSX TRANSPORTATION, INC.,

        Defendant.

No. 3:22-cv-00342 (consolidated)

JUDGE WAVERLY D. CRENSHAW, JR.

MAGISTRATE JUDGE LUKE A. EVANS

## PLAINTIFFS TRACY KILBURN, PEGGY BETTY & MICHELLE FELICIANO RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS REGARDING ITS MOTION FOR SUMMARY JUDGMENT AS TO THEIR CLAIMS

COMES NOW, Plaintiffs, Tracy Kilburn, Peggy Betty & Michelle Feliciano, Plaintiffs, by and through counsel and submits, pursuant to Local Rule 56.01(e), their Response to Defendant CSX Transportation, Inc's Local Rule 56.01(c) Statement of Undisputed Fact and states as follows:.

1. Plaintiffs Tracy Kilburn, Peggy Betty, and Michelle filed a lawsuit against Defendant CSX Transportation, Inc. ("CSXT" or "Defendant"), generally alleging that Defendant's acts and/or omissions on August 21, 2021, constitute negligence and a nuisance. [Doc. No. 147].

Undisputed Material Facts as to Plaintiff Tracy Kilburn

2. Plaintiff Kilburn resided at 299 Old Linden Road, Waverly, as of August 21, 2021. *T. Kilburn Dep.* at 36:21-37:7 (Apr. 7, 2025).

**RESPONSE: Undisputed.**

1

3.  On the morning of August 21, 2021, Plaintiff Kilburn understood that Scott Kilburn's brother posted a photo on Facebook of flood water in Gorman, Tennessee, prompting Scott to call his brother. *Id.* at 39:18-40:4, 73:17-74:4; *Tracy Kilburn 000061-62.*

**RESPONSE: Undisputed except for Defendant's characterization of the term "flood water". Plaintiff Kilburn stated, "And I - - I think his brother had posted a video of the rising waters." Dkt No. 245-1, Tracy Kilburn Dep. at 39:13-19. Scott's brother posted a video of rainwater or flooding. *Id.* at 40:17-20.**

4.  Plaintiff Kilburn was unable to reach her daughter via phone and decided to drive towards the Briarwood Apartments, where Plaintiff Kilburn's daughter lived with her three children. *T. Kilburn Dep.*, at 40:23-41:13.

**RESPONSE: Undisputed.**

5.  During their drive to Briarwood Apartments, Plaintiff Kilburn observed flooding at Cooley Road and Main Street, such that they couldn't see the road beneath the rising floodwaters. *Id.* at 47:18-48:9.

**RESPONSE:  Undisputed except for Defendant's characterization of "rising floodwaters" which is unsupported by that citation.  Plaintiff Kilburn questioned what counsel meant by flooding and stated she wasn't really paying attention because she was concerned about getting to her daughter. Dkt No. 245-1 at 49:2-17.**

6.  Scott Kilburn and Plaintiff Kilburn turned right from Main Street onto Highway 70 and drove until they had almost reached the turnoff into Briarwood Apartments but were stopped as flood water began overtaking the truck.  *Id.* at 52:18-55:22.

**RESPONSE: Undisputed.**

2

7. Scott got out and onto the roof of the truck, where he helped Tracy move from her position standing on the door of the vehicle, to the roof. *Id.*

**RESPONSE: Undisputed.**

8. While on top of the roof, Plaintiff Kilburn and Scott Kilburn noticed Regina Brake, who was "in the raging water." *Id.* at 57:19-59:16.

**RESPONSE: Undisputed.**

9. Thereafter, Scott Kilburn then made the "split decision" to jump in the "raging" waters in an apparent attempt to assist Ms. Brake. *Id.* at 59:17-61-23.

**RESPONSE:  Undisputed; Plaintiff Kilburn also stated when asked if the waters were raging when Scott jumped in that "It was rough." Dkt No. 245-1 at 60:10-12.**

10. Plaintiff Kilburn remained on the roof of the truck until she was rescued to safety in a tractor driven by a fellow citizen.  *Id.* at 62:14-65:3.

**RESPONSE: Undisputed.**

Undisputed Material Facts as to Plaintiff Peggy Betty

11.  Plaintiff Betty's husband and Decedent, James Betty, had multiple health problems and procedures prior to and leading up to the flood, including cataract surgery in both eyes, surgery to remove his gallbladder, kidney stones and infection, and heart surgery including the placement of four stents. *P. Betty Dep.*, 23:1-34:21 (Mar. 7, 2025).

**RESPONSE: Disputed as to the characterization of "prior to and leading up to the flood" which occurred on August 21, 2021.  Plaintiff Betty admits he had cataract surgery in 2019 which cleared up; his gallbladder removed in 2019; heart surgery with four stents in either 2019 or 2020; and kidney stones. Dkt No. 245-3, Peggy Betty Dep. at 23:1-25.**

3

12.	James Betty underwent a total let knee replacement in early June 2021, approximately two-and-a-half months before the August 21, 2021 flood. *Id.*

**RESPONSE: Undisputed.**

13.	In the weeks after surgery, James Betty underwent physical therapy and could only walk short distances using a walker or cane. *Id.*

**RESPONSE: Undisputed, but not material because two or three weeks after the surgery, James Betty was able to walk on his own, he was not reliant on a walker and able to walk without it. Dkt No. 245-3 at 28:4-17. At the time of the flood, he could walk unassisted.  *Id.* at 29:12-14.**

14.	Four days before the August 21, 2021 flood, James Betty "tweaked" his left knee and sought medical care, complaining that his kneecap was "sliding out of place." *Id.* at 24:22-24.

**RESPONSE: Undisputed.**

15.	Plaintiff Betty testified that during the morning of August 21, 2021, James Betty observed Trace Creek and the ravine near the Bettys' driveway to assess whether the rain had caused the creek water to rise from its banks. *Id*. at 35:6-13.

**RESPONSE: Undisputed.**

16.	Plaintiff Betty testified that the creek "was beginning to come up [the] ravine beside the driveway," so she and Mr. Betty decided to relocate their vehicles to her sister's house at 149 Old Linden Road in Waverly. *Id*. at 35:6-13; 41:23-42:4; 44:20-23.

**RESPONSE: Undisputed.**

17.	Plaintiff Betty drove one car to her sister's house and James Betty followed her in his truck. *Id*.

**RESPONSE: Undisputed.**

4

18. After parking the first car at her sister's residence, Mr. and Mrs. Betty went back together to get another of their cars. *Id*.

**RESPONSE: Undisputed**

19. When they returned to their residence to retrieve the second car, the water had risen close to Plaintiff Betty's knees. *Id*. at 47:20-48:1.

**RESPONSE: Undisputed, but as Plaintiff Betty explained that meant the water was midway up her calf. Dkt No. 245-3 at 48:15-23.**

20. Plaintiff Betty and James Betty were aware that they were in a dangerous situation when they returned to their home the second time. *Id*. at 49:1-5.

**RESPONSE: Undisputed.**

21. After Plaintiff Betty and James Betty returned to her sister's house, Plaintiff Betty learned that James Betty was leaving to help their next-door neighbor move boats. *Id.* at 36:6-19, 53:14-54:1.

**RESPONSE: Disputed as to whether he went to help "move boats" or went to help the next-door neighbor. Plaintiff Betty when asked did he tell you that he was going to help Ray, stated "He rolled down the window and he told me—he says 'I've got to get back over there and get Ray,'" and "Well I've got to try and help him." Dkt No. 245-3 at 53:18-54:1.**

22. Plaintiff Betty stated to her husband "there's nothing you can do . . . [t]he water is coming out of the banks." *Id.*

**RESPONSE: Undisputed.**

23. Plaintiff Betty received a call from James Betty at approximately 7:30 A.M. or a quarter to 8:00 A.M., wherein he informed Plaintiff Betty that he was "trapped" in the flood waters. *Id.* at 36:24-37:4.

5

**RESPONSE: Undisputed.**

<u>Undisputed Material Facts as to Plaintiff Michelle Feliciano</u>

24.     Plaintiff Feliciano resided at 2B East Brookside Drive, Waverly, and lived at that address for approximately two years prior to August 21, 2021. *M. Feliciano Dep.*, Dep. 20:13-21:12, 27:17-20 (Mar. 21, 2025).

**RESPONSE: Undisputed.**

25.     Plaintiff Feliciano owned a car and drove between McEwen and Waverly every day to drop off and pick up Lucy at school. *Id*. at 19:25-20:4.

**RESPONSE: Undisputed, but immaterial to any issues in this cause.**

26.     On the morning of the flood, Plaintiff Feliciano was awakened by a phone call from her next-door neighbor, informing her that there was a flood alert. *Id.* at 39:7-40:10.

**RESPONSE: Undisputed.**

27.     Plaintiff Feliciano then woke her daughter and got her ready to go to her sister's house. During that time, she noticed that the flood waters were rising in her back yard.  *Id*. at 41:22-42-21.

**RESPONSE: Undisputed she woke her daughter and got her ready to go to her sister's house. Undisputed she noticed "the water outside her apartment" "was rising in the backyard." Dkt No. 245-4, Michelle Feliciano Dep. at 41:17-21.  The term "flood waters" is not referenced in citation.**

28.     Around that same time, a firefighter knocked on her door and informed her that she needed to evacuate due to the imminent flood. *Id*. at 42:4-12.

6

**RESPONSE: Undisputed that someone from the Fire Department or fire rescue informed her she needed to evacuate. "Due to the imminent flood" is a characterization supplied by Defendant not contained in the citation.**

29.     Plaintiff Feliciano never asked the firefighter for any help evacuating. *Id*. at 49:8-10.

**RESPONSE: Undisputed, but immaterial as she called her sister who lived 15 minutes away to come get her because she did not feel her car would make it through the water but her sister had a truck. Dkt No. 245-4 at 47:19-48:4; 48:21-49:7.**

30.     Instead of evacuating, Plaintiff Feliciano called her sister to ask if she could pick her and her daughter up in their truck because she didn't think her car would make it through the water. *Id*. 47:20-48:4.

**RESPONSE: Disputed. "Instead of evacuating" is an argumentative characterization of the Defendant. Plaintiff Feliciano was evacuating and called her sister who lived 15 minutes away to ask if she could pick her and her daughter up in her truck because Plaintiff Feliciano didn't think her car would make it through the water. Dkt No. 245-4 at 47:19-48:4; 48:21-49:7. Additionally, while waiting for her sister Plaintiff Feliciano was unaware of whether she could have walked to a higher location in a position of safety. *Id*. at 47:23-48:10. While talking on the phone to her sister who was driving to her, her sister told her to stand next to the window so rescue could see her. *Id.* at 49:22-50:14**

31.     Plaintiff Feliciano estimated that it would take her sister about fifteen minutes to arrive. *Id*. at 49:4-7.

**RESPONSE: Undisputed.**

32. Plaintiffs' expert, Kristin Weivoda, testified that the residents of East Brookside could have driven southeast to Mainstreet, which is at a higher ground, in less than two minutes. *K. Weivoda Dep.*, 83:3-85:8 (Mar. 20, 2026).

**RESPONSE: Undisputed but immaterial because there is no evidence Plaintiff Feliciano has such knowledge and Plaintiff Feliciano called her sister who lived 15 minutes away to ask if she could pick her and her daughter up in her truck because she didn't think her car would make it through the water. Dkt No. 245-4 at 47:19-48:4; 48:21-49:7. Additionally, while waiting for her sister Plaintiff Feliciano was unaware of whether she could have walked to a higher location in a position of safety. *Id*. at 47:23-48:10.**

33. After Plaintiff Feliciano was rescued, she waited for her sister at the Burger King nearby. *M. Feliciano Dep.*, at 53:11-13.

**RESPONSE: Undisputed after Plaintiff Feliciano was rescued she waited at a Burger King. "Nearby" is an argumentative characterization of Defendant. After the wall cracked and water poured in her apartment, Plaintiff Feliciano fought for survival, struggling to keep her head above water. Dkt No. 245-4 at 50:3-51:19. Her brother-in-law showed up in a boat and while trying to get into the boat it tipped and her and her brother-in-law ended up holding onto a tree until another boat came. *Id.* at 52:6-25. Then they were taken by boat to land where she walked through Waverly to the Burger King. *Id.* at 53:5-16.**

34. Witnesses, including other Plaintiffs, indicated that individuals retreated to the McDonald's parking lot for safety after the flood water began to rise. *Greg Vasil Dep.* 35:7-37:5 (Feb. 11, 2025); *D. Tuten Dep.*, 13:4-14:5 (Feb. 28, 2025); *Kayla Brake Dep.* 55:18-56:16 (Mar. 26, 2025); *D. Hall Dep.* 69:18-22 (Apr. 8, 2025); *C. Guy Dep.*, 65:24-68:1 (June 26, 2025); *S. Voegeli Dep.* 68:15-69:8 (June 26, 2025); *M. Rigney Dep.*, 56:3-57:25 (Sept. 30, 2025).

**RESPONSE: Undisputed, but immaterial as no proof Plaintiff has such knowledge and after Plaintiff called her sister to come get her and her daughter in her truck, she testified she did not know if she could have walked to a higher location in a position of safety. Dkt No. 245-4 at 47:23-48:10. While talking on the phone to her sister who was driving to her, her sister told her to stand next to the window so rescue could see her. *Id.* at 49:22-50:14.**

35. McDonald's was approximately 0.2 miles from 2B East Brookside Drive.

**RESPONSE: Undisputed, but Defendant's lack any citation to authority in violation of Local Rule 56.01 and said statement is immaterial because Plaintiff Feliciano was unaware of whether she could have walked to a higher location in a position of safety. Dkt No. 245-4 at 47:23-48:10.**

Date: April 24, 2026

Respectfully submitted,

Counsel for Plaintiffs,

*/s/ Jonathan P. Mincieli*

| | |
|---|---|
| **PETER J. FLOWERS** | **IL BAR #6210847** |
| **JONATHAN P. MINCIELI** | **IL BAR #6274091** |
| **THOMAS M. CONNELLY** | **IL BAR #6332570** |
| **CHRISTOPHER J. WARMBOLD** | **IL BAR #6314229** |

Meyers & Flowers, LLC
3 North Second Street – Suite 300
St. Charles, Illinois 60174
630.232.6333
630.845.8982 Facsimile
pjf@meyers-flowers.com
jpm@meyers-flowers.com
tmc@meyers-flowers.com
cjw@meyers-flowers.com

| | |
|---|---|
| **TIMOTHY V. POTTER** | **#017520** |
| **ANDREW E. MILLS** | **#031236** |

Reynolds, Potter, Ragan & Vandivort, PLC

9

210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing Response to Defendant's Statement of Undisputed Facts regarding its Motion for Summary Judgement as to the claims of Plaintiffs Tracy Kilburn, Peggy Bettty and Michelle Feliciano has been sent via CM/ECF to counsel for the Defendant CSX TRANSPORTATION, INC on this 24th day of April 2026.

*/s/ Patricia A. Dunne-Smith*

11