# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MATTHEW RIGNEY et al.,** | ) | |
| | ) | **NO. 3:22-CV-00342** |
| **Plaintiffs,** | ) | **(consolidated)** |
| **v.** | ) | |
| | ) | **JUDGE WAVERLY D. CRENSHAW,** |
| **CSX TRANSPORTATION, INC.,** | ) | **JR.** |
| | ) | |
| **Defendant.** | ) | **MAGISTRATE JUDGE ALISTAIR** |
| | ) | **NEWBERN** |
| | ) | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE TO DEFENDANT CSX TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT ON CAUSATION DUE TO THE ABSENCE OF FACTS AS TO CIRCUMSTANCES OF DEATH**

---

COMES NOW, Plaintiffs Thomas Sanders, Nicholas Shawl, Donald Jackson, and William Luten, by and through counsel, and submit this Memorandum of Law in Response to CSX Transportation, Inc.'s ("CSXT") Motion for Summary Judgment Due to the Absence of Facts as to Circumstances of Deaths and in support thereof state as follows:

## BACKGROUND

This lawsuit arises out of the tragic deaths of Joshua Hendrix, Robin Bradley, Donna Bradley, and Mary Luten in the August 21, 2021, Waverly, Tennessee ("Waverly") flood. Doc. No. 147, ¶ 70(g), (k), (l), and (m).

### A. 2010 and 2019 Flooding in the City of Waverly.

Waverly experienced flood events in 2010 and 2019. Ex. A (R. Toungette Dep. 9:19–25, 10:23–25); Ex. B (K. Schultz Dep. 26:7–25). There is testimony in the record from multiple witnesses about the flooding experienced in 2010 and 2019 compared to the flooding experienced in 2021. Ex. A (R. Toungette Dep. 9:19–25, 11:1–13, 20:15–25, 21:1–22, 24:18–25, 25:1–17); Ex.

1

B (K. Schultz Dep. 26:7–25); Doc. No. 248-3 (W. Luten Dep. 1–15). The 2010 and 2019 floods resulted in minor property damage. Doc. No. 248-1 (D. Jackson Dep. 67:8–14); Ex. A (R. Toungette Dep. 10:12–24, 11:1–13); Ex. B (K. Schultz Dep. 26:7–25, 27:1–19). Specifically, there is testimony from multiple witnesses who resided in the area of the Brookside Drive apartments during the flooding in 2010 and 2019. Ex. B (K. Schultz Dep. 26:7–25, 27:1–19); Ex. C (S. Voegeli Dep. 19:8–25, 20:1–25); Ex. D (C. Guy Dep. 41:23–25). These witnesses describe the property damage they experienced in the area near the Brookside Drive apartments in the 2010 and 2019 floods. Ex. B (K. Schultz Dep. 26:7–25, 27:1–19); Ex. C (S. Voegeli Dep. 19:8–25, 20:1–25); Ex. D (C. Guy Dep. 41:23–25). Living through the experience of the past flood events altered the way many citizens responded to the flood event in 2021. Ex. C (S. Voegeli Dep. 40:1–25, 41:1-12); Ex. D (C. Guy Dep. 42:1–23).

### B. The 2021 Flooding in the City of Waverly.

The flooding in Waverly began on a Saturday morning, on August 21, 2021. Doc. No. 257-1 (Blackler Rep. at 2). What started as a slow rise of water, turned into a significant volume of water unleashing on Waverly with the force of a tidal wave. Ex. A (R. Toungette Dep. 20:15–25, 21:1–22, 24:18–25, 25:1–17); Ex. B (K. Schultz Dep. 52:8–14); Ex. C (S. Voegeli Dep. 66:1–25, 67:1–22); Doc. No. 257-1 (Blackler Rep. at 3). The force of the water caused walls to collapse and windows to be sucked out at East Brookside Drive apartments. Doc. No. 245-4 (M. Feliciano Dep. 50:4–25, 51:1–25); Ex. B (K. Schultz Dep. 55:8–20, 56:1–25, 57:1–25); Ex. C (S. Voegeli Dep. 67:10–23). This surge of water rushed down Highway 70. Doc. No. 245-1 (T. Kilburn Dep. 59:13–25); Doc. No. 257-1 (Blackler Rep.). Similarly, the water at West Brookside Drive apartments was rushing and swirling, moving with a force to throw cars and sheds. Doc. No. 257-1 (Blackler Rep. at 22, 26). People thought they would have more time to escape if necessary. Ex. D (C. Guy Dep.

2

42:17–25, 43:1–24).

## C. Factual Backgrounds Specific to the Decedents at Issue.

### 1. Factual Background Specific to Joshua Hendrix

The morning of August 21, 2021, Joshua Hendrix was at work at Dan Post Boots. Doc. No. 248-4 (T. Sanders Dep. 33:18–22). Thomas Sanders talked to his brother Joshua that morning. *Id.* (T. Sanders Dep. 31:25–32:1–17). Mr. Sanders told Joshua that his wife and child were in danger at their home located at Fairfield Avenue, Waverly, Tennessee. *Id.* (T. Sanders Dep. 32:9–17). In response to this information, Joshua asked Mr. Sanders if he should leave work at Dan Post Boots and come to help Mr. Sanders. *Id.* (32:15–17). Mr. Sanders' home was located on the east side of Waverly. *Id.* (T. Sanders Dep. 31:6–11). Dan Post Boots is located on Highway 70 in Waverly, closer to the west side of town. *Id.* (T. Sanders Dep. 34:1–16). A person could take Highway 70 to reach Plaintiff Sanders' home from Dan Post Boots. *Id.* (T. Sanders Dep. 31:16–21).

Indeed, Tracy Kilburn witnessed Joshua Hendrix on Highway 70 after 9:00 a.m. as floodwaters overtook his vehicle. Doc. No. 245-1 (T. Kilburn Dep. 55:11–25, 56:1–25, 57:1–21 (discussing Joshua Hendrix being stuck on Highway 70), 42:23–25, 43:1–4 (discussing approximate timing of conversation on their way to pick up her daughter at the Briarwood apartment complex)); *see also* Ex. E (Waverly Police Dep't Incident Rep.) (floodwaters overtook his vehicle on Highway 70 just east of the Nashville State College). The floodwaters around this area of Highway 70 were violent and rose quickly. Doc. No. 245-1 (T. Kilburn Dep. 52–62); Doc. No. 257-1 (Blackler Rep. at 34). Ultimately, Joshua Hendrix's body was found under a metal structure in the backyard of 223 Browntown Road, Waverly, Tennessee. Ex. E (Waverly Police Dep't Incident Rep.). Joshua's death certificate states that he died as a result of freshwater drowning after he was swept away by the Trace Creek flood. Ex. F. There is no evidence in the

3

record indicating that Joshua Hendrix died as a result of anything other than freshwater drowning after being swept away by the Trace Creek flood.

2. **Factual Background Specific to Robin Shawl**.

Robin Shawl resided at 26B W. Brookside Drive. Doc. No. 248-2 (N. Shawl Dep. 10:21–25–11:1–2). She lived alone. *Id.* (N. Shawl Dep. 12:18–20). The floodwaters at the West Brookside Drive apartments and the surrounding area were violent and rose quickly. Doc. No. 257-1 (Blackler Rep. at 27). Robin's lifeless body was recovered in the aftermath of the deadly torrent of water sweeping through Waverly. Ex. G (Waverly Police Dep't Incident Rep.). Robin's death certificate states she died of freshwater drowning after she was swept away by the Trace Creek flood. Ex. H There is no evidence in the record indicating that Robin Shawl died as a result of anything other than freshwater drowning after being swept away by the Trace Creek flood.

3. **Factual Background Specific to Donna Bradley.**

Donna Bradley had lived in Waverly since approximately 2009. Doc. No. 248-1 (D. Jackson Dep. 23:10–14). On August 21, 2021, Donna Bradley resided at 28A West Brookside Drive, Waverly, Tennessee. *Id.* (D. Jackson Dep. 22:5–8). She had lived at her 28A West Brookside Drive address for approximately three years. *Id.* (D. Jackson Dep. 22:20–23). Before that, she lived at Creekview Manor apartments, located right beside the Brookside Drive apartments. *Id.* (D. Jackson Dep. 22:24–25, 23:1–2). Donna lived through both the 2010 and 2019 floods in Waverly, Tennessee. *Id.* (D. Jackson Dep. 66:9–15). Donna would have experienced at least the 2019 flood in the same area she resided on August 21, 2021. *Id.* (D. Jackson Dep. 22: 20–23, 66:9–15).

Donald Jackson spoke with his mother, Donna, the morning of August 21, 2021, around 8:00 AM. *Id.* (D. Jackson Dep. 69:20). She was at home and described her surroundings. *Id.* (D.

4

Jackson Dep. 69:23–25–70:1–2). She was not concerned at that point because the water was not fully out of the creek bank yet and Donna lived through Waverly's other floods where the damage was minimal. *Id.* (D. Jackson Dep. 66:9–15, 71:11–15).

Unlike previous flood events, on August 21, 2021, the floodwaters at the West Brookside Drive apartments and the surrounding area were violent and rose quickly. Doc. No. 257-1 (Blackler Rep. at 27). Donna's body was later found lodged in a tree line, pinned down by debris approximately 300 yards southwest of the residence located at 2199 West Trace Creek. Ex. I (Waverly Police Dep't Incident Rep.). Donna Bradley's death certificate states that she died of freshwater drowning after she was swept away by the Trace Creek flood. Ex. J. There is no evidence in the record indicating that Donna Bradley died as a result of anything other than freshwater drowning after being swept away by the Trace Creek flood.

### 4. Factual Background Specific to Mary Luten.

Mary Luten had lived in Waverly her entire life. Doc. No. 248-3 (W. Luten Dep. 24:20–24). On August 21, 2021, Mary lived in the East Brookside Drive apartment complex. *Id.* (W. Luten Dep. 54:14–25). The floodwaters at the E. Brookside Drive apartments were violent and rose quickly. Doc. No. 245-4 (M. Feliciano Dep. 50:4–25, 51:1–25); Ex. B (K. Schultz Dep. 55:8–20, 56:1–25, 57:1–25); Ex. C (S. Voegeli Dep. 67:10–23); Doc. No. 257-1 (Blackler Rep. at 30).

Ultimately, Mary Luten was found dead on August 21, 2021, in the Brookside Drive apartment complex. Ex. K (Waverly Police Dep't Incident Rep.). Mary's apartment experienced a partial building collapse due to the flood. *Id.* Mary Luten's death certificate states that she died of freshwater drowning after she was swept away by the Trace Creek flood. Ex. L. There is no evidence in the record contradicting that Mary Luten died as a result of anything other than freshwater drowning after being swept away by the Trace Creek flood.

5

<u>**LEGAL STANDARD**</u>

Summary judgment should be granted only where the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A dispute of fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the case under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The Court may not weigh evidence, judge witness credibility, or resolve factual disputes; those functions are reserved for the factfinder. *Id.* Importantly, the nonmoving party need not "produce evidence in a form that would be admissible at trial" to defeat summary judgment (*Celotex*, 477 U.S. at 324); it need only show that sufficient evidence exists upon which a jury could reasonably find in its favor. *Anderson*, 477 U.S. at 249. Finally, the Court must reject a motion for summary judgment if "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52.

<u>**ARGUMENT**</u>

CSXT's motion for summary judgment rests on a legally unsupportable premise that Plaintiffs cannot establish causation unless they produce an eyewitness that can testify to the precise final moments of each Decedent's life or a specially designated expert to opine on the precise mechanism of death. That is not the law in Tennessee and is an attempt to impose a heightened evidentiary burden that contradicts longstanding precedent and improperly usurps the

6

resolution of genuine issues of material fact from the jury to the Court. When the record is viewed in the light most favorable to Plaintiffs, it is clear that sufficient circumstantial evidence exists from which a reasonable jury could conclude that CSXT's conduct was a substantial factor in causing the deaths at issue. At a minimum, the evidence presents genuine disputes of material fact that preclude summary judgment.

**A. The Records Plaintiffs Rely Upon Have Been Authenticated and Fall Under Exception(s) to the Hearsay Rule.**

CSXT's effort to discount Plaintiffs' proof begins with an attack on admissibility, but that effort fails under the summary judgment governing standard. At summary judgment, the question is not whether evidence is presented in admissible form, but whether it can be presented in admissible form at trial. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (*citing Celotex*, 477 U.S. at 324). The materials Plaintiffs rely upon, including public records and death certificates unquestionably satisfy that standard.

*1. The Case Files Obtained from the Waverly Department of Public Safety Are Admissible.*

The Waverly Department of Public Safety case files fall squarely within the public records exception, as they contain factual findings from legally authorized investigations and have been authenticated through competent testimony. Under Federal Rule of Evidence 803(8), a "record or statement of a public office" is admissible if it sets out "factual findings from a legally authorized investigation" and the opponent does not demonstrate a lack of trustworthiness. Fed. R. Evid. 803(8)(A)(iii), (B). Notably, this exception does not require personal knowledge, and it expressly permits the admission of conclusions or opinions derived from the investigation. See *Alexander*, 576 F.3d at 562.

Here, Plaintiffs rely on police reports created in the ordinary course of official investigations into the deaths of each Decedent. These reports have been authenticated by Waverly

7

Police Chief Grant Gillespie, who testified to their authenticity and maintenance as official records. *See* Doc. No. 248 (*citing* G. Gillespie Dep., 126:2–128:13 (Oct. 24, 2025)).

2. *The Death Certificates of Each Decedent Are Admissible.*

Likewise, each Decedent's death certificate establishing that they died of drowning is self-authenticating and admissible under the vital statistics exception to the hearsay rule. Fed. R. Evid. 902(4). Courts routinely admit death certificates on this basis. *See, e.g. Brown v. Genworth Life & Annuity Ins. Co.*, No. 3:18-CV-506, 2020 WL 7646413, at *4 (E.D. Tenn. Aug. 28, 2020). Additionally, Rule 803(9) provides that records of death reported to a public office pursuant to a legal duty are not excluded by the rule against hearsay. *See* Fed. R. Evid. 803(9); *see also* Tenn. Code Ann. § 68-3-502.

CSXT cannot avoid summary judgment by disregarding this evidence. The death certificates that Plaintiffs rely on here meet both requirements: they are certified public records and were created pursuant to statutory reporting obligations. As such, they are both competent and admissible evidence of the Decedents' deaths and their causes, including findings consistent with freshwater drowning.

**B. Causation May Be Proven Through Circumstantial Evidence.**

CSXT's central argument that causation fails in the absence of direct eyewitness testimony is directly foreclosed by controlling authority. Evidence in the record shows that CSXT created a manmade dam that broke on the town of Waverly on August 21, 2021, and caused the deaths of Joshua Hendrix, Robin Bradley, Donna Bradley, and Mary Luten. Causation can be proved by direct or circumstantial evidence. *Anderson v. Whittaker Corp.*, 894 F.2d 804, 812 (6th Cir. 1990) (When "a party seeks to establish causation by circumstantial evidence, the evidence must be sufficient to tilt the balance from possibility to probability.") In proving causation through circumstantial evidence, "a plaintiff need not establish beyond all doubt a specific cause of an

8

accident." *Calhoun v. Honda Motor Co.*, 738 F.2d 126, 130 (6th Cir.1984). A jury is permitted to "'find[] as a fact that an event happened by reason of a particular cause when the evidence on behalf of a party, if believed, is sufficient to show that it is more likely than not that the event occurred as a result of the cause so found.'" *Calhoun*, 738 F.2d at 131 (*quoting Fields v. W. Kentucky Gas Co.*, 478 S.W.2d 20, 23 (Ky. 1972)).

In the face of this authority, CSXT asserts as a rule that "[i]n absence of a witness of the death, Plaintiffs must disclose an expert qualified to offer opinions about the causes contributing to their Decedents' deaths." *See* Doc. No. 248. However, the cases CSXT cites to in support of this "rule" are all unavailing, easily distinguishable, and do not support the notion that the same result must result here.

In *Denton v. Taylor*, No. E201501726COAR3CV, 2016 WL 4042051, at *1 (Tenn. Ct. App. July 25, 2016), the injury producing event was a two-car accident with no witnesses, killing one driver and seriously injuring the other. There was no evidence of how the accident happened or where the impact occurred. *Id.* Additionally, *Meador v. Nashville, C. & St. L. Ry.*, 148 S.W.2d 371, 373 (1941), was a wrongful death case based on negligence per se. To recover under the statute, the plaintiff needed to prove that the decedent was an "obstruction" on the rail track at the time of his death. *Id.* Though the decedent's body was dragged by the train, there was no proof the decedent was an obstruction on the track itself at the time of his death. *Id.* Finally, *Harrison v. New York Life Insurance Co.*, 78 F.2d 421 (6th Cir. 1935) is a life insurance case that must be considered in the appropriate context of life insurance awards rather than generally applicable tort principles related to causation which provide proof of causation is made by circumstantial evidence, the evidence must be such that it tends to exclude any other cause; "in other words, it must be proven to be more likely than not." *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 852

9

(Tenn. 2017). None of these cases stand for the sweeping rule CSXT advances. More importantly, each involved a critical absence of evidence as to the injury-producing event itself.

*Anderson v. Whittaker Corp.*, 692 F. Supp. 734, 737, 754 (W.D. Mich. 1987), aff'd, 894 F.2d 804 (6th Cir. 1990), is instructive here. In *Anderson*, the decedents drowned after their boat sank in the middle of Lake Michigan. 692 F. Supp. at 737, 754. There were no witnesses to the injury producing event, and neither the decedents' bodies nor the boat were ever found. *Id.* at 736. The defendant argued that the plaintiffs could not even prove that the decedents drowned, let alone that defendant was responsible, and instead asserted several other possibilities for the boat's disappearance including piracy, suicide of the decedents, and surreptitious flight. *Id.* at 737, 754. The court found that these "possibilities" were not "probabilities" and the evidence in the case made capsizing and sinking the most probable cause of the boat's disappearance. *Id.* at 754–55. The Court was able to find the most probable cause of the boat sinking and the decedent's injuries based on circumstantial evidence, without relying on the expert opinions on the ultimate issue of causation. *Id.* ("In reaching this conclusion, Court does not rely upon the opinions given by any expert on the ultimate issue of causation. Rather, the Court finds that the physical evidence, the experiences of [the former boat owners], and the uncontroverted evidence concerning the boat's stability characteristics yield one reasonable conclusion."). If circumstantial evidence was sufficient in *Anderson,* it is more than sufficient here, where the deaths, their causes, and the catastrophic flood event are all directly documented and corroborated through circumstantial evidence.

That conclusion is reinforced by Tennessee law, which gives independent evidentiary weight to the Decedents' death certificates. A death certificate constitutes prima facie evidence of the facts it contains, including the cause of death. Tenn. Code Ann. § 68-3-202; *Shell v. Parrish*,

448 F.2d 528, 531 (6th Cir. 1971). Once introduced, that evidence stands unless and until the defendant produces competent proof to rebut it. *Boles v. Aluminum Co. of Am.*, 483 S.W.2d 582, 583 (Tenn. 1972).

Here, summary judgment is inappropriate because there is sufficient evidence for the jury to find that CSXT caused the decedents' deaths. The death certificates expressly state that each Decedent died of freshwater drowning after being swept away by the Trace Creek flood—official findings that are not only admissible but presumptively valid. Tenn. Code Ann. § 68-3-202; *Shell*, 448 F.2d at 531. CSXT has not introduced a single piece of evidence to contradict those determinations. Under controlling law, that failure alone creates a jury question and defeats summary judgment. *See Boles*, 483 S.W.2d at 583.

Moreover, in contrast to many of the cases cited by CSX, there is ample proof in the record regarding the injury causing event that ultimately killed the decedents. *See e.g. Williams v. Wal-Mart Stores E., L.P.*, 832 F. Supp. 2d 923, 929 (E.D. Tenn. 2011) (a plaintiff could not prove causation where the injury producing event was a single car crash, killing the decedent and there were no witnesses to the accident and no evidence as to the cause of the accident). The August 21, 2021 flood is not a mystery. It was a widely witnessed, extensively documented catastrophe with witnesses who can testify as to its scope and impact. Notably, Plaintiffs' hydrology expert also opines as to the mechanism, scope, and magnitude of the flooding.[1] On a more granular level, there is ample evidence of the impact of flooding in the E. Brookside Drive neighborhood where Mary Luten resided and was found deceased, the W. Brookside Drive neighborhood where Donna Bradley and Robin Bradley resided, and Highway 70 where Joshua Hendrix was overtaken by

---

[1] To avoid being overly duplicative, the issue of whether CSX was the "but for" cause of the Decedents' deaths is addressed more fully in Plaintiffs' Response to CSXT's Omnibus Motion for Summary Judgment and is incorporated herein by reference.

11

flood waters. *See* Doc. No. 257-1 (Blackler Rep.); Ex. B (K. Schultz Dep. 52:8–14); Ex. C (S. Voegeli Dep. 66:1–25, 67:1–22); Doc. No. 254-4 (M. Feliciano Dep. 50:4–25); Doc. No. 245-1 (T. Kilburn Dep. 59:13–25).

This is not a case built on speculation or evidentiary gaps. It is a case where various categories of proof such as official records, eyewitness testimony, expert analysis, and physical evidence all point to the same conclusion.

## CONCLUSION

Plaintiff Sanders, Shawl, Jackson, and Luten respectfully request this Court deny CSXT's Motion for Summary Judgment because there is sufficient evidence in the record for a jury to find that CSX caused their decedent's deaths.

/s/Timothy V. Potter

**TIMOTHY V. POTTER**          **#017520**
**ANDREW  E. MILLS**          **#031236**
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee  37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com
*Counsel for Plaintiffs*

*Pro Hac Vice:*
**PETER J. FLOWERS**          **IL BAR #06210847**
**JONATHAN P. MINCIELI**          **IL BAR #06274091**
**CHRISTOPHER J.  WARMBOLD**   **IL BAR #06314229**
**THOMAS M. CONNELLY**          **IL BAR #06332570**
Meyers & Flowers, LLC
3 North Second Street - Suite 300
St. Charles, Illinois  60174
630.232.6333

12

630.845.8982 Facsimile
pjf@meyers-flowers.com
jpm@meyers-flowers.com
cjw@meyers-flowers.com
tmc@meyers-flowers.com
*Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Plaintiffs' Response to CSXT's Motion for Summary Judgment Regarding Causation* has been sent to:

| | | | |
|---|---|---|---|
| Ms. S. Camille Reifers | #019856 | □ | Via U.S. Mail, postage prepaid |
| Mr. John J. Bennett | #031976 | □ | Via Facsimile |
| Andrew Todd | #39590 | □ | Via Email |
| Wai-Lin Danieley | #41433 | □ | Via UPS overnight |
| Reifers, Holmes & Peters, LLC | | □ | Via Hand Delivery/Courier |
| 80 Monroe Avenue – Suite 410 | | □ | Via Service of Process |
| Memphis, Tennessee 38103 | | ■ | Via CM/ECF, efile, or other electronic service format |
| 901.521.2860 | | | |
| creifers@rhpfirm.com | | | |
| jbennett@rhpfirm.com | | | |

*Attorney for Defendant CSX Transportation, Inc.*


This 24th day of April, 2026.


s/Timothy V. Potter
**TIMOTHY V. POTTER**