# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **MATTHEW RIGNEY et al.,** | ) |
| | ) **NO. 3:22-CV-00342** |
| **Plaintiffs,** | ) **(consolidated)** |
| **v.** | ) |
| | ) **JUDGE WAVERLY D. CRENSHAW, JR.** |
| **CSX TRANSPORTATION, INC.,** | ) |
| | ) |
| **Defendant.** | ) **MAGISTRATE JUDGE LUKE EVANS** |
| | ) |
| | ) |

---

## JOINT DISCOVERY DISPUTE STATEMENT REGARDING THE DISCOVERY OF DOCUMENTS GENERATED OR UTILIZED BY DR. WILLIAM NEWMAN

---

Plaintiffs, Matthew Rigney *et al.*, and Defendant, CSX Transportation, Inc. ("CSXT"), respectfully submit their *Joint Discovery Dispute Statement Regarding the Discovery of Documents Generated or Utilized by Dr. William Newman*.

### CERTIFICATION OF COMPLIANCE WITH FED. R. CIV. P. 37(A)(1)

Defendant's counsel certifies that they have in good faith conferred with Plaintiffs' counsel via a telephonic meeting on May 1, 2026, in an effort to reach an agreement as to certain materials specified herein that were generated or utilized by Dr. William Newman throughout the instant lawsuit. The dispute was not resolved during the Parties' meet and confer.

### RELEVANT DISCOVERY BACKGROUND

1. Pursuant to Plaintiffs' Second Amended Complaint [Doc. No. 147], following Plaintiffs' claim(ed) damages for emotional distress:

   a. Matthew Rigney

   b. Danielle Hall

   c. M.R.

1

d.  B.R.

e.  Tracy Kilburn

f.  Michelle Feliciano

g.  Kayla Brake

h.  Kendra Brake

i.  Cameron Guy

j.  Quentin Brake

k.  Joseph Prasnikar

l.  Kimberly Kee

m.  Henry Kersten

n.  Tiffany Bryant

o.  Shane Bryant

p.  Thomas Almond

q.  Brittney McCord

r.  W.S.

s.  K.G.

t.  K.M.

u.  K.B.

v.  Angela Reeves

w.  Joanna Reeves

x.  Susan Voegeli

y.  Kelsey Shultz; and

z.  Charles Voegeli

2

2.	On December 30, 2025, Plaintiffs disclosed Dr. William Newman ("Dr. Newman") pursuant to Federal Rule of Civil Procedure 26(a)(2) as a medical doctor practicing psychiatry and produced reports on the following seventeen (17) Plaintiffs in this matter:

a.	Tracy Kilburn

b.	Tiffany Bryant

c.	Susan Voegeli

d.	Shane Bryant

e.	Michelle Feliciano

f.	Kimberly Kee

g.	Angela Reeves

h.	Cameron Guy

i.	Charles Voegeli

j.	Carrie Brake

k.	Danielle Hall

l.	Eli Reeves

m.	Henry Kersten

n.	Joseph Prasnikar

o.	Kelsey Shultz

p.	Kayla Brake

q.	Kendra Brake

3.	In addition to the seventeen (17) reports drafted by Dr. Newman, Plaintiffs produced (A) Dr. Newman's interview notes with the same seventeen (17) Plaintiffs; (B) Dr.

3

Newman's C.V.; (C) a statement about Dr. Newman's compensation; (D) and Dr. Newman's invoices for the work he conducted in this matter.

4. Defendant took the deposition of Plaintiffs' expert, Dr. Newman, Volume I, on February 12, 2026. **Exh. #1**, *Notice of Dep.* (Feb. 6, 2026)

5. Defendant took the deposition of Dr. Newman, Volume II, on February 18, 2026. **Exh. #2**, *Notice of Cont. Dep.* (Feb. 6, 2026).

6. On December 31, 2025, pursuant to a prior agreement between the parties to dismiss certain claims by agreement, counsel for Plaintiff sent to counsel for Defendant a stipulation dismissing all claims of Plaintiff Quentin Brake, as well as the Negligent Infliction of Emotional Distress claims for Matthew Rigney, Brittney McCord, W.S., and Thomas Almond.  On February 19, 2026, the Stipulation was entered. [Doc. Nos. 219, 220].

7. Defendant took the deposition of Dr. Newman, Volume III, on March 11, 2026. **Exh. #3**, *Notice of Cont. Dep.* (Mar. 4, 2026).

8. Defendant took the deposition of Dr. Newman, Volume IV, on March 12, 2026. **Exh. #3**, *Notice of Cont. Dep.* (Mar. 4, 2026).

9. Defendant took the deposition of Dr. Newman, Volume V, on April 22, 2026. **Exh. #4**, *Notice of Cont. Dep.* (Mar. 31, 2026).

10. Lastly, Defendant took the deposition of Dr. Newman, Volume VI, on April 23, 2026. **Exh. #4**, *Notice of Cont. Dep.* (Mar. 31, 2026).

11. Dr. Newman's deposition notices contained a rider that requested him to produce "[a]ll materials, tangible items, and documents of any kind that the deponent has received or gathered from Plaintiff or Plaintiff's counsel concerning this case . . . [and] [t]he deponent's entire file(s) relating to this action, including, but not limited to, all materials the deponent has generated

4

or prepared, all correspondence sent to and/or received by the deponent from any party in this litigation, and all other written reports prepared in connection with this case." *See e.g.*, *Notice of Dep.*, 3 (Feb. 6, 2026).

12. During Volume I of Dr. Newman's deposition, Dr. Newman testified that he assessed approximately twenty-five (25) Plaintiffs in the instant lawsuit. **Exh. #5**, *Vol. I, Dr. Newman Dep.*, 18:11-15 (Feb. 12, 2026).

13. Dr. Newman took notes during his interview with each Plaintiff, including approximately eight (8) individuals that he did not draft a report about. *Id.* at 14:5-20.

14. Dr. Newman indicated that he met each Plaintiff alone, except for Plaintiff Feliciano who asked her sister to be present. *Id.* at 15:3-8.

15. Dr. Newman's reports and each set of Dr. Newman's notes that Plaintiffs produced and contained the following categories:

   a. Social History

   b. Education History

   c. Employment History

   d. Military History

   e. Relationship History

   f. Legal History

   g. Substance Use History

   h. Past Medical History

   i. Current Medications

   j. Allergies

   k. Past Psychiatric History

l.   Family Psychiatric History

m.   Mental Status Examination; and

n.   Description of Incident

16.   Dr. Newman was never disclosed by any Plaintiff as a treating physician.

17.   Defendant's counsel asked for Dr. Newman to compile the notes that he took on the other eight (8) Plaintiffs and produce them during his next deposition on February 18, 2026. *Vol. I, Dr. Newman Dep.* at 20:16-22.

18.   Plaintiffs did not produce Dr. Newman's notes during his continued deposition on February 18, 2026, or any other deposition session thereafter.

**DEFENDANT'S POSITION**

19.   It is Defendant's position that it is entitled to discover Dr. Newman's notes on the eight (8) unidentified Plaintiffs that he interviewed, as well as the schedule(s) he utilized to meet with the Plaintiffs.

20.   Dr. Newman testified that he informed each Plaintiff, regardless of whether he drafted a report, that the information disclosed in their interview was not confidential and that he was not their treating physician. *Vol. I, Dr. Newman Dep.* at 15:18-16:1.

21.   Still, during Volume II of Dr. Newman's deposition, Dr. Newman was instructed to not answer any questions concerning the eight (8) individuals that he assessed but did not write a report about. **Exh. #6**, *Vol. II, Dr. Newman Dep.*, 209:2-210:22 (Feb. 18, 2026).

22.   During Volume III of Dr. Newman's deposition, Dr. Newman was asked whether he interviewed Plaintiff Quentin Brake, brother of Plaintiffs Kayla Brake, Kendra Brake, Carrie Brake, and Cameron Guy. **Exh. #7**, *Vol. III, Dr. Newman Dep.*, 511:20-512:12 (Mar. 11, 2026). Dr.

6

Newman indicated that "it was mentioned at some point, and then for some reason that meeting never happened." *Id.* at 512:9-12.

23. However, during Volume IV of Dr. Newman's deposition, Dr. Newman was asked why he noted Plaintiff W.S. in his notes related to Plaintiff Charles Voegeli. **Exh. #8**, *Vol. IV, Dr. Newman Dep.*, 585:9-585:24 (Mar. 12, 2026). Dr. Newman was specifically asked whether he interviewed Plaintiff W.S. *Id.* Dr. Newman responded that he was "advised not to answer questions about individual who [he] didn't write reports about." *Id.* at 585:9-586:9.

24. Similarly, during Volume IV of Dr. Newman's deposition, Dr. Newman was asked about listing Plaintiff Brittney McCord in his notes concerning Plaintiff Charles Voegeli. *Vol. IV, Dr. Newman Dep.*, at 586:11-14. Dr. Newman was specifically asked whether he interviewed Plaintiff Brittney McCord. *Id.* at 586:17-18. Dr. Newman responded that he was "advised not to answer questions about individual who [he] didn't proffer reports about." *Id.* at 586:19-21.

25. In addition to the notes that were not provided to Defendant, during Volume II of Dr. Newman's deposition, Dr. Newman testified that he had a schedule outlining the date and time he planned to meet with specific Plaintiffs, including the Plaintiffs that he did not draft a report about. *Id.* at 303:3-306:19.

26. Plaintiffs did not produce the schedule(s) that Dr. Newman utilized to meet specific Plaintiffs.

27. Federal Rule of Civil Procedure 26 allows for the discovery of any matter, not privileged, and relevant to the claim or defense of any party. Relevant information does not necessarily need to be admissible to be discoverable. *Id.* Federal Rule of Civil Procedure (b)(4)(C) provides that communications between an attorney and "any witness required to provide a report under Rule 26(a)(2)(B), regardless the form of the communications" are protected, except

communications that "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."

28.     While non-binding, other Courts have noted that although "Rule 26(b)(4) provides work-product protection for expert draft reports and for communications between experts and attorneys[,] **an expert's notes are discoverable**. *Ecolab, Inc. v. Ridley*, 2023 U.S. Dist. LEXIS 238047, *24, n.6 (E.D. Tenn. Mar. 28, 2023) (citing *In re Davol, Inc./C.R. Bard, Inc.*, 2021 U.S. Dist. LEXIS 105022, 2021 WL 2280657, at *5 (S.D. Ohio June 4, 2021) (emphasis added).

29.     In fact, other Courts have found that an expert's communications and notes are discoverable among similar circumstances. *United States ex rel. Scott v. Humana, Inc*., 2023 U.S. Dist. LEXIS 84545, *8 (W.D. Ky. May 12, 2023).

The cited *United States ex rel. Scott v. Humana, Inc.* opinion involved a plaintiff that retained a consulting expert in or around June 2018, then subsequently disclosed the same individual as a testifying expert. 2023 U.S. Dist. LEXIS 84545, *3 (W.D. Ky. May 12, 2023). The *Humana* plaintiff produced his reports in April and June 2020. During the expert's July 2020 deposition, the *Humana* defendant learned that the expert "participated in several meetings with government officials from the Department of Justice ('DOJ') and CMS in 2018 and 2019." *Id.* "When questioned about the nature of the meetings, counsel for [the plaintiff] instructed [the expert] not to answer on the basis that [the expert's] communications with CMS and the DOJ concerning this case were privileged." *Id.* at *3-4. After the Western District Court of Kentucky's ordered the plaintiff to produce the communications and a subsequent, limited deposition of the plaintiff's experts, plaintiff, once again, instructed the expert to not answer. *Id.* at *4-7.

Reiterating Federal Rule of Civil Procedure 26(b)(4)(C), the *Humana* Court explained, "The work-product doctrine as codified in Rule 26(b)(4)(C) protects the communications between a party's attorney and that party's testifying expert from disclosure unless the communications relate to the expert's compensation, identifies facts or data that the party's attorney provided that the expert considered, or identifies assumptions the party's attorney provided that the expert relied on in forming the expert's opinion." *Id.* at *7-8.

Rejecting the *Humana* plaintiff's argument, the Court explained that the expert's communications "are only protected to the extent that they include work produced created on [the plaintiff's] behalf by a nonexpert representative, such as [plaintiff's] counsel." *Id.* at *9. The Court further found the plaintiff's assertions as "vague and conclusory," explaining that it was "skeptical that [the expert's] communications at issue included attorney work product because [the expert] was apparently the only person retained by [the plaintiff] present at most of the meetings." *Id.* at *10. The Court further found that redacted portions of the expert's notes were not privileged and required the plaintiff to produce the same. *Id.* at *12-15.

The instant facts are identical to *Humana*. Dr. Newman was disclosed by Plaintiffs as a testifying expert pursuant to Federal Rule of Civil Procedure 26(a)(2). **Exh. #9**. Dr. Newman testified that he met and evaluated twenty-five (25) individuals. *Vol. I, Dr. Newman Dep.* at 18:11-15. Dr. Newman testified that the nature of each meeting was not confidential and stated that he met with each Plaintiff alone, except for Plaintiff Feliciano who asked for her sister be present. *Id.* at 15:3-8. Dr. Newman testified that he met each Plaintiff according to a schedule, which included an image of each Plaintiff, their name, and the time that they were expected to meet. *Vol II, Dr. Newman Dep.* at 303:2-15. Dr. Newman testified that he took notes during each meeting, and that

9

the remaining eight other sets of notes were retained in his office. *Vol I, Dr. Newman Dep.* at 14:5-20. Plaintiffs and Dr. Newman have not provided **_any_** information about the eight other individuals.

30.     Twenty-six (26) individuals originally claimed emotional distress in this matter. [Doc. No. 147]. While Dr. Newman testified that he did not interview Quentin Brake, whose claims were dismissed, twenty-five (25) remaining individuals originally claimed emotional distress in Plaintiffs' Second Amended Complaint. *Vol. III, Dr. Newman Dep.* at 511:20-512:12.

31.     Since Dr. Newman only drafted seventeen (17) reports, Defendant can only speculate that Dr. Newman interviewed the other eight (8) Plaintiffs who originally brought emotional distress claims in this matter.

32.     However, Defendant is still without knowledge as to even the identities of the eight (8) individuals that Dr. Newman interviewed but did not draft a report about since Dr. Newman was advised not to answer any questions about those Plaintiffs.

33.     Overall, Dr. Newman's notes on the eight (8) unidentified Plaintiffs are discoverable because they are not privileged or protected. Dr. Newman testified that he met each Plaintiff alone, except for Plaintiff Feliciano who asked her sister to be present. *Vol. I, Dr. Newman Dep.* at 15:3-8. Dr. Newman was never disclosed as a treating physician. He informed each Plaintiff, regardless of whether he drafted a report, that the information disclosed in their interview was not confidential and that he was not their treating physician. *Vol. I, Dr. Newman Dep.* at 15:18-16:1. Therefore, the notes he took while interviewing the Plaintiffs are not privileged or protected.

34.     Dr. Newman's notes on the eight (8) unidentified Plaintiffs are relevant.

35.     Beyond the Plaintiffs that Dr. Newman drafted a report about and the Plaintiffs that stipulated dismissal of their negligent infliction of emotional distress claims, there are five (5) other Plaintiffs who have not stipulated to dismiss their negligent infliction of emotional distress

claims and that Dr. Newman potentially interview but did not draft a report about: B.R., M.R., K.G., K.M., K.B.

36. If Dr. Newman interviewed these Plaintiffs, his interview notes would be undoubtedly relevant to their negligent infliction of emotional distress claims.

37. As to the discovery of notes concerning the individuals that stipulated to dismiss their negligent infliction of emotional distress claims, during Volume I of his deposition, Dr. Newman testified that he would perform "collateral interviews with other people" to form opinions on a particular individual. *Vol. I, Dr. Newman Dep.*, at 49:1-9.

38. Thus, while Plaintiffs Brittney McCord, Matthew Rigney, W.S., and Thomas Almond stipulated to the dismissal of their Negligent Infliction of Emotional Distress claims, it is expected that any notes taken by Dr. Newman about such Plaintiffs' lives and/or experience during the August 21, 2021 flood is relevant to their wrongful death claims and the claims of other Plaintiffs.

39. More specifically, although Matthew Rigney no longer claims negligent infliction of emotional distress, the standard information that Dr. Newman obtained throughout his interviews with the Plaintiffs, potentially from Plaintiff Matthew Rigney, is relevant to the negligent infliction emotional distress claims of his former spouse, Danielle Hall, and his children, M.R. and B.R. Specifically, a parent or spouse's social history, education history, employment history, military history, relationship history, legal history, substance use history, past medical history, current medication, past psychiatric history, family psychiatric history, mental status examination; and description of incident may provide context or information about a child or spouse's psychiatric status, history, or health.

11

40.     Similarly, although Plaintiff Britney McCord and W.S. no longer claim negligent infliction of emotional distress, the standard information that Dr. Newman obtained throughout his interviews with the Plaintiffs, potentially from Plaintiff Brittney McCord and W.S., is relevant to the negligent infliction emotional distress claims of Brittney McCord's children, K.B., K.M., and K.G. Specifically, a parent or sibling's social history, education history, employment history, military history, relationship history, legal history, substance use history, past medical history, current medication, past psychiatric history, family psychiatric history, mental status examination; and description of incident may provide context or information about a child or sibling's psychiatric status, history, or health.

41.     Lastly, Plaintiff Brittney McCord, W.S., K.B., K.M., and K.G. were neighbors of Plaintiffs Susan Voegeli, Kelsey Schultz, and Charles Voegeli. *See Vol. IV*, *Dr. Newman Dep.* at 586:11-589:11. As demonstrated by his notes, Plaintiffs Charles Voegeli indicated to Dr. Newman that he observed other Plaintiffs Brittney McCord and W.S. on August 21, 2021. A witness's observations of another Plaintiff or Decedent on August 21, 2021, is relevant to any Plaintiffs' claims.

42.     Irrespective of a negligent infliction of emotional distress claim, those who have a wrongful death claim in this matter claim "the loss of decedents' consortium, companionship and society." [Doc. No. 147 ¶ 70-71]. Given the standard information obtained by Dr. Newman during Plaintiffs' interviews, the same information obtained from any Plaintiff claiming wrongful death would be relevant to their alleged "loss of decedents' consortium, companionship and society." For example, an individual who claims loss of consortium, companionship and society would be expected to know background information about their Decedent. In contrast, inconsistent party statements would be relevant to a particular Plaintiffs' credibility.

43. As to Dr. Newman's interview schedule(s), the order in which Dr. Newman received information from a certain person about a particular topic, event, or person would be relevant to Dr. Newman's credibility and the claims of any Plaintiff that he interviewed, including the costs associated with his analysis.

44. First, the order in which Dr. Newman interviewed individuals would be relevant to the reliability of Dr. Newman's report. For example, if witnesses spoke to each other before or after they were interviewed by Dr. Newman about their interview with Dr. Newman, then it calls into question the reliability of Dr. Newman's assessment and the information provided by the witnesses. The confounding statements would be relevant to Plaintiffs' claims and the reliability of Dr. Newman's reports.

45. Alternatively, Dr. Newman's schedule could reveal more about the nature in which he utilized information gathered during "collateral interviews" and whether he assessed the Plaintiffs for malingering symptoms or inconsistent statements. For example, if Dr. Newman interviewed two witnesses on the same day that provided inconsistent statements, then whether Dr. Newman addressed those inconsistent statements would be relevant to the reliability of his report.

46. Second, Dr. Newman produced invoices in this matter related to his analysis of twenty-five (25) Plaintiffs, not just the seventeen (17) Plaintiffs he drafted a report about. Further, Dr. Newman's invoices did not delineate the time spent or costs associated with any particular Plaintiff. *Vol I, Dr. Newman Dep.* at 88:13-22, 111:9-15. In fact, Dr. Newman could not recall the number of Plaintiffs he interviewed on a particular day, nor could he recall whether all the time he billed on a particular day was devoted to Plaintiff interviews. *Id.* at 128:23-129:8. Since Dr. Newman's invoices do not provide delineate the time spent or costs associate with any particular plaintiff, nor could he recall the number of Plaintiffs he interviewed on a particular day or whether

13

all the time he billed on a particular day was devoted to Plaintiff interviews, the schedule that Dr. Newman utilized could assist Defendant estimate the costs of Dr. Newman's analysis on a plaintiff-specific basis.

47.     Lastly, Defendant concedes that the seventeen (17) sets of notes that Dr. Newman provided contain information about the date and time he met with a particular Plaintiff. However, Defendant is still without knowledge as to the identities of the Plaintiffs that he interviewed but did not draft a report about because Plaintiffs have not provided Defendant with the notes that Dr. Newman took while he interviewed the unidentified eight (8) individuals. Therefore, despite the existence of the additional sets of notes and schedule(s), Defendant is without complete information to fully assess Dr. Newman's work in this matter.

<u>PLAINTIFFS' POSITION</u>

48.     Plaintiffs' position is simply that Dr. Newman was retained as a consultant to perform individual assessments of certain Plaintiffs. He did that. He was then disclosed as an expert to testify as to seventeen (17) of those Plaintiffs. For the remaining Plaintiffs he remains a consultant. Any interviews or notes relating to interviews of other Plaintiffs for whom he is not offering opinions do not form the basis of his disclosed opinions and are thus privileged from disclosure pursuant to Fed. R. Civ. P. 26(b)(4)(D). The schedule produced to Dr. Newman is communication between Plaintiffs' attorneys and Dr. Newman and is likewise protected from disclosure by Fed. R. Civ. P. 26(b)(4)(C).[1]

49.     Federal Rule of Civil Procedure 26 governs discovery in general and specifically what information a party is entitled to from another party's expert. Fed. R. Civ. P. 26.

---

[1] CSXT asserts that there are missing interview notes from an addition eight (8) witnesses, however, Dr. Newman testified that he "believes" he interviewed a total of twenty-five (25) Plaintiffs. Deposition of Dr. Newman Vol. 1 pp. 14-15. The actual number is less.

14

50.      For example, Rule 26(b)(4)(B) protects draft reports of a testifying expert from disclosure. Fed. R. Civ. P. 26(b)(4)(B). Rule 26(b)(4)(C) protects communications between the party's attorney and any testifying expert witness, *regardless of the form of the communication*, with narrow exception for communications relating to the expert's compensation, identifying facts or data provided to the expert by the party's counsel and relied upon by the expert and/or those communications identifying assumptions that the party's attorney provided the expert and upon which the expert relied. *Id.* at Section (b)(4)(C) (italics added).

51.      Similarly, Fed. R. Civ. P. 26 governs the disclosure of experts and the information that must be disclosed to the opposition about the expert. That information includes a written report prepared and signed by the expert which contains:

(i)      a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)      the facts or data considered by the witness in forming them;

(iii)      any exhibits that will be used to summarize or support them;

(iv)      the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)      a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)      a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Defendant does not assert that Plaintiffs' disclosure of Dr. Newman or his seventeen (17) individual reports failed to include the required information. They simply did not. Rather, Defendant asserts that it is entitled to non-discoverable communications and consultant notes that do not form the basis of Dr. Newman's opinions.

52.      The schedule sought by CSXT is a communication by Plaintiffs' attorneys to Dr. Newman and is protected from disclosure. Fed. R. Civ. P.  26(b)(4)(C). It does not contain information about Dr. Newman's compensation, or identify facts or data provided to the expert

15

by Plaintiffs' counsel or assumptions that Plaintiffs' counsel provided the expert and upon which the expert relied. Moreover, Dr. Newman's notes that were provided clearly identify the time he spent interviewing each Plaintiff. Consequently, the communication is protected and not discoverable.

53. The disclosure requirements of Rule 26(a)(2) apply to witnesses who it may use at trial to present evidence under Fed. R. Ev. 702, 703 or 705. Fed. R. Civ. P. 26(a)(2)(A). Conversely, an expert hired as a consultant and not to offer opinions at trial is not subject to disclosure and their involvement is considered work-product. Fed. R. Civ. P. 26(b)(4)(D). This concept was recognized in the cases relied upon by CSXT, *Ecolab v. Ridley*, 2023 U.S. Dist. LEXIS 238047 *24 (recognizing that work product protection does not apply to *testifying* experts). In that case, the District Court for the Eastern District of Tennessee recognized that even where an expert is retained as a consultant and then disclosed to offer opinion testimony at trial, the privileges afforded to the expert's materials generated uniquely in the expert's role as a consultant retain the protection from disclosure. *Id.* (citing *In re Davol, Inc../C.R. Bard Inc.* 2021 U.S. Sist. LEXIS 105022 at *4).[2]

54. Here, Dr. Newman was retained solely as a consultant to those Plaintiffs for whom he was not disclosed to offer testimony.

55. The Plaintiffs for whom Dr. Newman is solely a consultant are not alleging NIED claims.

56. Dr. Newman did not testify and CSXT does not state that Dr. Newman relied upon his interviews with any other individuals in forming his opinions as to the seventeen (17) Plaintiffs for whom he is testifying at trial. As a result, Dr. Newman's interviews and related

---

[2] CSXT's claim that an expert's notes are discoverable is correct, where that expert has been disclosed to offer testimony at trial. The opposite is true where, as here, the expert is only a consultant.

16

notes for any other individuals other than the seventeen (17) for whom he is offering testimony, are protected and not discoverable.

57.     Defendant's reliance on *U.S. ex rel. Scott v. Humana, Inc.*, 2023 U.S. Dist. LEXIS 84545 is misplaced. That case did not involve an expert that had been disclosed to offer opinions at trial as to some, but not all parties to a case and whether work product relating to those parties for whom the expert was not offering opinions was discoverable. Rather, it involved an expert who was initially retained as a consultant on behalf of the Plaintiff Relator (although the real party in interest was the Centers for Medicare & Medicaid Services ("CMS")) and who was then disclosed as an expert. *Id.* at *3. After initially being retained, the expert met with individuals from CMS and the Department of Justice. *Id.* at *3-4. Counsel for Relator claimed that the content of the meetings was work product under Fed. R. Civ. P. 26(b)(3) and (4). *Id.* at *5. The Court rejected the argument that the communications contained privileged attorney work product because it was not clear whether the communications contained Relator's counsel's legal strategies. *Id.* at 10. The Court recognized that the work-product protection does not extend to an expert's own development of the opinions to be presented at trial. *Id.* at *8 (citations omitted).

58.     Here, Dr. Newman is not being offered to provide opinions as to issues affecting the case as a whole.  He is offering specific opinions as to some but not all Plaintiffs, only those with active NIED claims. His interviews and corresponding notes of other Plaintiffs were not part of Dr. Newman's development of his opinions as to the seventeen (17) individual Plaintiffs for whom he has been disclosed to offer opinions at trial.

59.     As to those Plaintiffs that Dr. Newman interviewed but for whom he will not testify, he remains a consultant and the information he generated is privileged pursuant to Fed. R. Civ. P. 26 (b)(4)(D). The fact that he interviewed those individuals outside the presence of

17

counsel is irrelevant because the privilege is not one of attorney work-product, but that of a consultant.

Respectfully submitted this 22nd day of May, 2026, by:

/s/ *S. Camille Reifers*
S. Camille Reifers (BPR #19856)
John J. Bennett (BPR #31976)
Andrew Todd (BPR #39590)
Wai-Lin Daineley (BPR #41433)
REIFERS, HOLMES & PETERS LLC
80 Monroe Avenue, Suite 410
Memphis, TN 38103
(901) 521-2860
creifers@rhpfirm.com
jbennett@rhpfirm.com
atodd@rhpfirm.com
wdaineley@rhpfirm.com

**Attorneys for CSX Transportation, Inc.**

And

/s/ *Jonathan P. Mincieli*
Timothy V. Potter  (#017520)
Andrew E. Mills  (#031236)
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com

Peter J. Flowers
Jonathan P. Mincieli
Christopher J. Warmbold
Thomas M. Connelly
Meyers & Flowers, LLC
3 North Second Street – Suite 300

18

St. Charles, Illinois 60174
630.232.6333
630.845.8982 Facsimile
pjf@meyers-flowers.com
jpm@meyers-flowers.com
cjw@meyers-flowers.com
tmc@meyers-flowers.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on May 22, 2026, the forgoing document has been served via the Court's CM/ECF system to the following Counsel of Record:

Timothy V. Potter
Andrew E. Mills
Mary Lane Story
Kirk Vandivort
Jennifer Foster
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com
amills@rprvlaw.com
mstory@rprvlaw.com
kvandivort@rprvlaw.com
jfoster@rprvlaw.com

Peter J. Flowers
Frank V. Cesarone
Jonathan P. Mincieli
Christopher Warmbold
Tom Connelly
Meyers & Flowers, LLC
3 North Second Street – Suite 300
St. Charles, Illinois 60174 630.232.6333
630.845.8982 Facsimile
pjf@meyers-flowers.com
fvc@meyers-flowers.com
jpm@meyers-flowers.com
cjw@meyers-flowers.com
tmc@meyers-flowers.com

*Attorneys for Plaintiff*

*/s/ S. Camille Reifers*
S. Camille Reifers

19