# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW RIGNEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )　　No. 3:22-cv-00342 |
| | ) |
| CSX TRANSPORTATION, INC, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

Nearly twenty people died in the floodwaters that overtook Waverly, Tennessee on August 21, 2021.  Plaintiffs—the survivors and the representatives of those who did not survive—contend that CSX Transportation, Inc. ("CSXT") contributed to that catastrophe.  Their theory is that debris collected at CSXT's railroad bridge ("Trace Creek Bridge"), that water impounded behind the railroad embankment until the embankment failed, that the failure sent a surge of water into the town, and that CSXT failed to warn of that danger.  CSXT has filed an "omnibus" motion for summary judgment (Doc. No. 256) and four additional "plaintiff-specific" motions for summary judgment (Doc. Nos. 244, 247, 250, 253).[1]  After more than four years of litigation—on a record built from numerous depositions, multiple expert reports, and thousands upon thousands of pages of exhibits—CSXT advances a remarkable position: that there is no evidence.  No evidence to support a legal duty.  No evidence of breach.  No evidence of causation.  No evidence to support nuisance or punitive damages.  None whatsoever.  (Doc. No. 257 at 1–2; Doc. No. 290 at 1 ("*This*

---

[1] The Court ordinarily does not permit the filing of multiple summary judgment motions. Nevertheless, based on counsel's representations that such filings were necessary, and in the interest of allowing the parties to be fully heard, the Court granted CSXT leave to do so.  (See Doc. No. 238).

*is a no-evidence motion.*") (emphasis added)).  The record says otherwise.  There are genuine disputes of material fact on every factual issue raised by the omnibus motion, and CSXT's arguments fail on the law.  The omnibus motion will thus be denied in full.  The four plaintiff-specific motions will be resolved as set forth below.

## I.     FACTUAL BACKGROUND[2]

The City of Waverly sits at the bottom of a narrow valley in Humphreys County, Tennessee.  (Doc. No. 278 ("Response SUMF") ¶ 3).  Water from the surrounding area naturally drains downhill toward the town.  (Id. ¶ 4).  Just upstream of Waverly, Trace Creek passes beneath CSXT's Trace Creek Bridge through a culvert—an opening that allows water to flow beneath the railroad embankment—before continuing through the town.  (Response SUMF ¶¶ 1, 5–6; see also Doc. No. 118 at 2).    CSXT has operated the railroad at that location for years. (Response SUMF ¶ 1).

On August 21, 2021, catastrophic flooding struck Waverly.  (See Doc. No. 118 at 3). Weather alerts containing flash flood warnings began being issued to residents of Humphreys County early that morning.  (Response SUMF ¶¶ 22–24, 41, 50).  As conditions worsened, local officials began warning residents, conducting evacuations, and performing water rescues.  (Id. ¶¶ 31, 34–39, 42, 48–49).  By the end of the storm, a rain gauge in nearby McEwen recorded the

---

[2] CSXT filed replies to Plaintiffs' responses to its statements of undisputed facts in connection with the omnibus and plaintiff-specific motions (Doc. Nos. 285, 287, 289, 291).  In its omnibus reply statement (Doc. No. 291), CSXT argues that Plaintiffs' responses violate Local Civil Rule 56.01 because they provide additional factual context or legal argument rather than directly controverting the asserted fact.  To the extent Plaintiffs' responses provide additional factual context rather than directly disputing an asserted fact, the Court has considered the cited evidence for whatever value it has.  CSXT's position, however, is ironic given that Local Civil Rule 56.01 does not authorize replies to a response to a statement of undisputed material facts.  CSXT's criticism also rings hollow because its own statement of undisputed material facts sets forth inappropriate legal argument.  See, e.g., Response SUMF ¶¶ 62–68 (asserting legal conclusions regarding federal regulations, expert opinions, and the nature of Plaintiffs' claims).  The reply statements will be disregarded and stricken.

heaviest rainfall in Tennessee's history.  (Id. ¶ 19).  Nearly twenty people lost their lives, many others suffered injuries, and substantial property damage resulted.  (See Doc. No. 118 at 3).

The parties dispute whether CSXT adequately inspected and maintained the Trace Creek Bridge and its culvert before the August 21, 2021 flood.  Those factual disputes concern CSXT's debris removal efforts several months before, the adequacy of subsequent inspections, and whether the crossing remained free of obstructions before the flooding event.  (Response SUMF ¶¶ 12–17, 44–46).  They also concern whether water pooled north of the railroad embankment, whether the embankment temporarily impounded that water, whether the impounded water overtopped or breached the embankment during the flooding event, and whether any such failure increased downstream flooding in Waverly.  (Id. ¶¶ 44–46, 60–62).  The parties further dispute whether an earlier warning or additional information from CSXT regarding conditions at the Trace Creek Bridge could have altered the emergency response.  (Id. ¶¶ 28–30).

## II.     LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts."  Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003).  In deciding a motion for summary judgment, the Court reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A defendant that will not bear the burden of proof at trial may seek summary judgment by demonstrating that the plaintiff lacks evidence sufficient to establish an essential element of a claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986).  CSXT styles its omnibus motion

3

as such a "no-evidence" motion. That is a permissible basis for summary judgment, but CSXT still bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine dispute of material fact. Id. at 323. If it does so, Plaintiffs need only identify record evidence from which a reasonable jury, drawing all reasonable inferences in their favor, could find for them. Id. at 324. The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter, and instead determines only whether the evidence presented reveals a disputed material issue of fact for the jury to decide. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III.    CSXT'S OMNIBUS MOTION

CSXT advances six arguments in its omnibus motion. It contends that Plaintiffs cannot establish causation. It argues that no common law duty exists or, alternatively, that no breach occurred. It further argues that Plaintiffs' claims are preempted by federal law, that their nuisance and punitive damages claims fail as a matter of law, and that two of Plaintiffs' experts should be excluded. The Court rejects each argument. It begins with duty and breach because those issues logically precede causation. As explained below, Tennessee common law imposed a duty under the circumstances presented here, genuine disputes of material fact preclude summary judgment on breach and causation, CSXT has not established preemption, and its remaining arguments likewise fail. The omnibus motion will thus be denied.

### A.    Duty and Breach

CSXT's frontline argument is that there is no evidence of causation. (Doc. No. 257 at 4–10). It then moves to duty and breach. (Id. at 10–19). That ordering is itself telling and illogical: if there is no duty and no breach, the Court need not reach causation. The Court thus begins with duty and breach.

CSXT contends that the "evidence now reveals that most of the duties Plaintiffs allege do not exist" because "discovery has since revealed the alleged sources and bases of these pleaded duties" to be industry codes that do not bind CSXT, internal rules no third party may enforce, regulations that it complied with, and a misunderstanding of the voluntary undertaking doctrine. (Id. at 1, 11). It further contends that Plaintiffs' own expert disclaimed several of these duties, that the one theory resting on "a cognizable duty"—that CSXT permitted debris to obstruct water flow under the bridge—is "flatly contradicted by the undisputed record," and that the washout "was not foreseeable." (Id. at 1-2). On breach, it contends that it complies with the regulations it identifies, complied with the federal drainage regulation, and did not create any obstruction or dangerous condition that required warning. (Id. at 13–14, 15–18).

Duty is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). The existence or nonexistence of a duty is a question of law, Carson v. Headrick, 900 S.W.2d 685, 690 (Tenn. 1995), while whether the defendant breached that duty by conduct falling below the standard of care is a question of fact, Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 366 (Tenn. 2009). Though duty is a question of law, its existence is informed by the facts at summary judgment. Giggers, 277 S.W.3d at 365 (quoting Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 859 (Tenn. 1985)). A "duty arises when the degree of foreseeability of the risk and the gravity of the harm outweigh the burden that would be imposed if the defendant were required to engage in an alternative course of conduct that would have prevented the harm." Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 365 (Tenn. 2008).

At the pleading stage, the Court held Plaintiffs' allegations sufficient as a matter of law to support the existence of several common law duties. (Doc. No. 118 at 4–10). The Court now

5

considers whether the record undermines the factual premises relevant to foreseeability and the public policy underlying that conclusion.

On foreseeability, the Court previously held that "the Amended Complaint is replete with allegations that the torrential rainstorm was foreseeable." (Doc. No. 118 at 6). That conclusion rested on allegations that Waverly had experienced repeated historic flooding before the August 2021 flood, that it sits at the bottom of a narrow valley near Trace Creek and is thus a special flood hazard area, and that CSXT itself had acknowledged weeks before the flood the increasing frequency of extreme rainfall and the need to improve bridge and drainage infrastructure. (Id.; see Doc. No. 65 ¶¶ 35–57).

CSXT does not point to a lack of evidence supporting those allegations. It instead argues that there is no evidence that a washout at this *particular* crossing was foreseeable or that a prior washout at the Trace Creek Bridge put it on notice. (Doc. No. 257 at 18–19). That argument fails for two reasons. First, CSXT ratchets up the foreseeability inquiry beyond what Tennessee law requires. Foreseeability turns on whether the defendant's conduct created a foreseeable risk of the general type of harm, not whether there was a prior one-to-one match between a past event and the event at issue. McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 899–901 (Tenn. 1996) (rejecting a rigid prior similar incidents rule and explaining that foreseeability is assessed through a balancing approach). The Trace Creek Bridge need not have experienced the exact same washout event before for the risk to have been foreseeable. Second, Plaintiffs have presented additional evidence that CSXT knew heavy rainfall threatened the Trace Creek Bridge. (Doc. No. 277 at 9–11). The risk of harm thus remains foreseeable.

Having concluded that the risk was foreseeable, the Court must next determine whether public-policy considerations support imposing a duty. Giggers, 277 S.W.3d at 365–66; Satterfield,

266 S.W.3d at 365–66. That inquiry balances the foreseeability and gravity of the risk against the burden that recognizing a duty would impose on the defendant. Satterfield, 266 S.W.3d at 365. The Court concludes that, on balance, CSXT owed Plaintiffs a duty of reasonable care to prevent dangerous conditions from forming on and around its property and to warn those placed at risk by such conditions. (See Doc. No. 118 at 8). The foreseeable risk of downstream flooding and the threat to Plaintiffs' life and property substantially outweigh the burden imposed on CSXT by recognizing that duty. Because the Court has determined, as a matter of law, that the common law imposes that duty, none of CSXT's arguments that follow changes that conclusion.

Instead of addressing the duty analysis that Tennessee law requires, CSXT attacks what it contends are the sources of duty in this case.[3] CSXT argues that the "evidence now reveals that most of the duties Plaintiffs allege," "do not exist or apply." (Doc. No. 257 at 1, 10–19). It points to several asserted sources of duties: an industry operating code that Plaintiffs' expert conceded does not govern CSXT, CSXT's internal rules and policies, several inspection and training regulations, CSXT's sustainability reports, the drainage regulation governing railroad culverts, and "clogging" at the Trace Creek Bridge. (Id. at 11–18).

CSXT's argument fails because it cherry-picks particular sources it says give rise to a duty, attempts to disprove them, and then declares that a duty does not exist altogether. Yet the Court has already held—and reaffirms here—that Tennessee common law imposes a duty on CSXT to prevent dangerous conditions from forming on or around its property and to warn those placed at

---

[3] The organization of CSXT's argument on duty and breach lacks logical flow. It alternates between arguing that no duty exists (Sections IV.B.1–2), that CSXT committed no breach (Section IV.B.3), that no duty exists (Section IV.B.4), that CSXT committed no breach (Section IV.B.5), and again that no duty exists (Section IV.B.6). (Doc. No. 257 at 10–19). The confusion is illustrated by CSXT's assertion that the absence of evidence of "clogging" "dooms Plaintiffs' reliance on clogging as a source of any duty." (Id. at 16–17). Whether the culvert was obstructed is evidence relevant to breach. It is not itself a source of the common law duty.

risk by such conditions. (Doc. No. 118 at 8). Whether industry operating codes apply, whether CSXT's internal policies create enforceable duties, or whether its sustainability reports amount to a voluntary undertaking does not disturb those common law duties.

Even if the Court accepted each of CSXT's arguments regarding the purported sources of its duty, summary judgment on duty as a whole would still not be warranted. Those arguments would establish only that certain authorities do not independently create enforceable legal duties, but they would not eliminate the common law duty recognized in the Court's prior Memorandum Opinion and again here. The remainder of CSXT's argument basically concedes as much by contending not that the common law or applicable regulations impose no duty, but that CSXT satisfied whatever duties they imposed. (See, e.g., Doc. No. 257 at 13–14 (conceding that regulations imposed inspection requirements on CSXT, but contending that "CSXT undeniably exceeded" those requirements)); (id. at 16–17 (conceding that drainage regulations apply to CSXT, but that "CSXT fully complied with the duty and standard of care" set forth by them)). Accepting CSXT's arguments regarding those purported sources of duty—its only arguments that no duty existed—would thus not entitle it to summary judgment on duty.[4]

The Court thus reaffirms that Tennessee common law imposed a duty on CSXT under the circumstances presented here. Because CSXT's motion only attacks particular asserted sources of that duty, it fails to establish that no duty exists as a matter of law. The Court therefore turns to breach.

---

[4] It is not clear what relief CSXT seeks with respect to these individual alleged sources of duty. As the Court has explained, even accepting CSXT's arguments that certain regulations, industry codes, or internal policies do not independently create legal duties would not resolve whether CSXT owed Plaintiffs a common law duty. If CSXT asks the Court to decide piecemeal whether each asserted source independently creates a legal duty, the Court declines to do so. CSXT did not clearly request that relief, and the Court has already determined the only duty question necessary to resolve this issue.

Having concluded that Tennessee common law imposed a duty, the remaining question is whether a reasonable jury could find that CSXT failed to conform to the standard of care that duty imposes. Giggers, 277 S.W.3d at 364. CSXT argues that its conduct did not amount to breach because it complied with certain inspection and training regulations, it complied with the federal drainage regulation, and it complied with the so-called "Tennessee law of natural water flow and warnings." (Doc. No. 257 at 13–14, 15–18).

The Court need not resolve whether CSXT complied with each of the inspection, training, and drainage regulations upon which it relies. Even assuming it did, compliance with those regulations is merely evidence relevant to whether CSXT acted reasonably under the circumstances. That evidence does not conclusively resolve that factual determination one way or the other. The only theory that could potentially resolve the breach inquiry as a whole is CSXT's contention that the Trace Creek culvert remained free of obstruction on the morning of the flood. If the undisputed evidence established that fact, Plaintiffs' theory that CSXT failed to reasonably maintain the Trace Creek Bridge (both under the common law and applicable regulations) and failed to warn of the danger would fail.

The evidence does not establish as undisputed that CSXT reasonably maintained the Trace Creek Bridge. CSXT asserts that water "flowed freely" beneath the bridge and that no obstruction existed on the morning of the flood. (Doc. No. 257 at 16). That assertion rests on the testimony of two CSXT employees: Mr. Orr, who testified that water was flowing beneath the bridge around 5:45 a.m. to 6:00 a.m., and Mr. Oakley, who later observed water flowing near the bridge and took photographs while hi-railing through the area. (Id.; Doc. No. 257-15; Doc. No. 257-16). Plaintiffs respond by attacking the quality of those observations. They point to evidence that Mr. Oakley made his observations while traveling over the bridge at twenty-five miles per hour, that his

9

inspection was not focused on Trace Creek, and that he could not recall whether he exited his vehicle to inspect the crossing more closely. (Doc. No. 277 at 11–12). They also cite testimony by Mr. Orr and CSXT's expert that they could not see through the water to determine whether debris was building underneath it. (Id. at 12, 14). The jury could credit CSXT's witnesses and conclude that the culvert was unobstructed. But the jury could also conclude that those limited observations do not resolve whether debris beneath the water's surface impeded its flow. That factual dispute remains the jury's work to resolve.

All in all, CSXT's motion fails on duty and breach. As to duty, it attacks purported sources of legal duties that are not the exclusive sources of the common law duty to prevent dangerous conditions from forming on and around its property and to warn those placed at risk by them. As to breach, it relies on regulatory compliance and its contention that the Trace Creek Bridge remained unobstructed. Regulatory compliance does not conclusively establish reasonable care, and whether the Trace Creek Bridge remained unobstructed is factually disputed. Summary judgment on duty and breach will thus be denied.

### B.     Causation

CSXT argues that Plaintiffs cannot establish causation because the August 21, 2021 flood had multiple causes, Plaintiffs have not individually traced their injuries to CSXT's conduct, and Plaintiffs' expert modeled only the Trace Creek watershed rather than each Plaintiff's specific circumstances. (Doc. No. 257 at 4–10). It repeatedly states that there is no evidence of causation whatsoever. (See id. at 5 ("Plaintiffs have no evidence of causation-in-fact."); id. ("There is nothing competing."); id. ("None of Plaintiffs' experts offers opinions or conclusions on cause-in-fact."); id. at 6 ("No Plaintiff evidence."); id. at 7 ("No other evidence in the record can fill the void[.]"); id. at 7 ("The no-warning theory lacks cause-in-fact evidence.")).

Cause in fact asks whether the injury would not have occurred but for the defendant's conduct. Hale v. Ostrow, 166 S.W.3d 713, 718 (Tenn. 2005). "It is not necessary that the defendants' act be the *sole* cause of the plaintiff's injury, only that it be *a* cause." Id. Cause in fact is ordinarily a jury question "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." Id. (quoting Haynes v. Hamilton Cnty., 883 S.W.2d 606, 612 (Tenn. 1994)).

CSXT's causation argument—like its argument on foreseeability—ratchets up the causation standard far beyond what Tennessee law requires. It argues that there is no evidence of causation because Plaintiffs have not affirmatively disproved every competing cause and have not traced "CSXT water" to each Plaintiff individually. (Doc. No. 257 at 5–9). That framing is mistaken both legally and factually. Legally, Tennessee law does not require Plaintiffs to eliminate every competing cause or trace each drop of "CSXT water" to each individual—it requires only that CSXT's negligence be a cause of Plaintiffs injuries. Hale, 166 S.W.3d at 718. Factually, Plaintiffs have produced expert testimony, eyewitness accounts, and other circumstantial evidence from which a reasonable jury could find that CSXT's alleged negligence was a cause of their injuries. (Doc. No. 257-1 at 12–14, 19–30; Doc. No. 277 at 18–21). Little surprise, then, that CSXT finds "no evidence" because it measures Plaintiffs' proof against an artificially heightened standard that Tennessee law does not recognize. The Court nevertheless addresses each of its arguments in turn.

CSXT first faults Plaintiffs' hydrologic and hydraulic analysis expert, Dr. Blackler, for examining the water from only the Trace Creek Bridge rather than also examining and eliminating every other source of floodwater in or around Waverly as a but-for cause of Plaintiffs' injuries. (Id. at 5–6). It next argues that Plaintiffs themselves cannot identify whether they were injured by

11

"CSXT water" as opposed to rainfall or other water not connected to CSXT. (Id. at 6–7). Finally, it argues that no other evidence in the record connects CSXT's conduct to Plaintiffs' injuries. (Id. at 7). Those arguments all seek proof eliminating every other possible contributing source of water and tracing CSXT's alleged contribution to each Plaintiff individually. Tennessee law imposes no such burden.[5]

Applying the proper standard, the question is whether a reasonable jury could find that CSXT's alleged negligence was a cause of Plaintiffs' injuries. Hale, 166 S.W.3d at 718 (holding that summary judgment was inappropriate because a reasonable jury could find that the defendant's conduct was a cause of the plaintiff's injury, even though it was not necessarily the sole cause); see also Bernard v. Amazon.com Servs., LLC, 795 F. Supp. 3d 1042, 1052–53 (M.D. Tenn. 2025) (applying Hale and denying summary judgment where a reasonable jury could find that the defendant was at least partly a cause of the plaintiff's injuries). The record permits that finding. Plaintiffs have come forward with evidence of impoundment behind the Trace Creek Bridge, expert testimony modeling the resulting washout and downstream surge, eyewitness testimony describing that surge, and evidence that Plaintiffs suffered the injuries alleged during that flooding event. (Doc. No. 257-1 at 12–14, 19–30; Doc. No. 277 at 18–21). Taken together, that evidence permits a reasonable jury to infer that CSXT's alleged negligence was a cause of Plaintiffs' injuries.

---

[5] CSXT makes the heightened standard it advances explicit in its reply. Relying on TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021)—a case addressing Article III standing—it argues that causation, like standing, "is not dispensed in gross," and thus each Plaintiff must individually trace his or her injuries to CSXT. (Doc. No. 290 at 1–2). That argument is without legal support and plainly wrong. It should go without saying that nothing in the law supports importing the principles of Article III standing recited in TransUnion to the Tennessee common law of negligence. And to the extent that CSXT presented that argument as an analogy, it is a faulty one.

Dr. Blackler performed a hydrologic and hydraulic analysis of the watershed's flow through the Trace Creek Bridge. He modeled the accumulation of water behind the railbed and opined that overtopping caused the embankment to fail, causing the sudden release of floodwaters into Waverly. (Doc. No. 257-1 at 12–14, 19–30; Doc. No. 277 at 18–21). CSXT contends that Dr. Blackler's analysis cannot establish cause in fact because he did not eliminate every other source of floodwater. (Doc. No. 257 at 5–6). For the reasons already explained, that argument carries no weight, and CSXT offers no legal support for it. Because Tennessee law requires only that CSXT's alleged negligence be a cause of Plaintiffs' injuries, Hale, 166 S.W.3d at 718, Plaintiffs were not required to produce expert testimony tracing every drop of water to every Plaintiff. A reasonable jury could conclude from Dr. Blackler's analysis that CSXT's alleged negligence was a cause of Plaintiffs' injuries notwithstanding the presence of other contributing causes. Id.; Bernard, 795 F. Supp. 3d at 1052–53.

Plaintiffs have also presented eyewitness testimony corroborating Dr. Blackler's opinions. Multiple witnesses described a sudden, violent surge of floodwater rather than a gradual accumulation from rainfall alone. (Doc. No. 277 at 20). CSXT argues that Plaintiffs cannot attribute any of that water to CSXT because "they are lay people" that are "not qualified in hydrogeology, meteorology, topography or other expert disciplines that might speak to water flow and might distinguish 'CSXT water' from other water sources." (Doc. No. 257 at 6–7). Yet the circumstances here do not dictate that causation be proven by expert testimony rather than by circumstantial proof. Adkins v. Marathon Petroleum Co., LP, 105 F.4th 841, 852 (6th Cir. 2024) (reasoning that expert testimony on causation is only necessary when the cause of the injury "would not be obvious to the lay juror").

Taken together, Dr. Blackler's hydrologic and hydraulic analysis and the eyewitness testimony permit a reasonable jury to find that CSXT's alleged failure to maintain the Trace Creek Bridge contributed to the impoundment and release of floodwaters into Waverly and that those floodwaters were a cause of Plaintiffs' injuries. Hale, 166 S.W.3d at 718.

CSXT's causation argument on Plaintiffs' failure-to-warn theory fares no better. It relies principally on a chart comparing the opinions of Plaintiffs' emergency-management expert, Kristin Weivoda, regarding what additional actions a warning from CSXT would have allowed emergency responders to take with record evidence describing the actions emergency responders were already taking before the alleged warning should have been given. (Doc. No. 257 at 8–9). That comparison does not entitle CSXT to summary judgment. Ms. Weivoda's opinions may assist the jury, but they are not conclusive of what emergency responders would have done had they received earlier or more specific information regarding conditions at the Trace Creek Bridge. Likewise, CSXT's descriptive evidence of what responders did during the flood says little about the normative question of what responders would have done had they been provided different information.

That distinction is underscored by Waverly Police Chief Grant Gillespie's own testimony. He testified that earlier information regarding a potential track washout "would have changed the response" and that "more information and more warning would always help a response or putting together a plan of action." (Doc. No. 277-9; Doc. No. 277 at 22). A reasonable jury could credit that testimony and conclude that earlier or more specific warnings from CSXT would have affected the emergency response in a manner that reduced Plaintiffs' harm.

In the end, CSXT would require Plaintiffs to eliminate every other contributing cause, reconstruct the flood's path to each Plaintiff individually, and prove that a warning would have

changed the emergency response with certainty. Tennessee law requires none of that. Plaintiffs need only produce evidence from which a reasonable jury could find that CSXT's alleged negligence was a cause of their injuries. Hale, 166 S.W.3d at 718. They have done so. Summary judgment on causation will thus be denied.

C. Preemption

CSXT renews the preemption defenses the Court rejected at the pleading stage under both the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §§ 10101 *et seq.* ("ICCTA"), and the Federal Railroad Safety Act, 49 U.S.C. §§ 20101 *et seq.* ("FRSA"). (Doc. No. 257 at 20–26). The Court discussed the governing preemption law at length in its prior Memorandum Opinion and incorporates that discussion here. (Doc. No. 118 at 10–17). The Court held that CSXT had not properly framed its ICCTA argument and had failed to establish that any FRSA regulation substantially subsumed Plaintiffs' claims. (Id.). CSXT now clarifies that it asserts an as-applied preemption challenge under the ICCTA. (Doc. No. 257 at 20–24). On the FRSA, it argues that Plaintiffs' experts' reliance on various federal regulations demonstrates that those regulations substantially subsume the subject matter of this suit. (Id. at 24–26).

The ICCTA preempts state actions that prevent or unreasonably interfere with railroad transportation. CSX Transp., Inc. v. City of Sebree, 924 F.3d 276, 283 (6th Cir. 2019). CSXT's argument depends on the same factual premise the Court has already rejected—that the Trace Creek Bridge was not obstructed. According to CSXT, because no obstruction existed, Plaintiffs' claims can only be an attack on the design, construction, or operation of CSXT's railroad infrastructure. (Doc. No. 257 at 21–24). But whether the culvert beneath the Trace Creek Bridge was obstructed is genuinely disputed. See supra Section III.A (discussing the genuinely disputed evidence regarding the culvert's obstruction). Plaintiffs' claims thus remain what they have always been: backward-looking tort claims. They allege not that CSXT was required to design or

15

construct the Trace Creek Bridge differently, but that CSXT allowed the culvert to become obstructed with debris, causing the impoundment and release of floodwaters on Waverly, and failed to warn Waverly's citizens of that danger.

CSXT nevertheless conjures up a parade of horribles. It asserts that if Plaintiffs prevail, CSXT will be forced to alter, monitor, manage, maintain, and operate the Trace Creek Bridge differently; railroad traffic will need to stop for bridge renovations or revisions; trains will need to be rerouted through other hubs; and important regional and national rail operations will be disrupted. (Doc. No. 257 at 23–24). None of those consequences—real or imagined—follow. Plaintiffs do not contend that the Trace Creek Bridge or its culvert should have been designed or constructed differently. Their claims, moreover, do not require CSXT to do anything different in the future. If Plaintiffs prevail, nothing in the judgment would require CSXT to redesign the Trace Creek Bridge or alter its maintenance practices or railroad operations, there or elsewhere. The ICCTA thus does not preempt Plaintiffs' claims because their claims do not prevent or unreasonably interfere with railroad transportation. City of Sebree, 924 F.3d at 283. Summary judgment will be denied as to ICCTA preemption.

CSXT's FRSA preemption argument likewise fails. FRSA preemption applies only when federal regulations substantially subsume the subject matter of the suit. Nickels v. Grand Trunk W. R.R., Inc., 560 F.3d 426, 429 (6th Cir. 2009). CSXT argues that because Plaintiffs' experts rely on various federal inspection, drainage, and training regulations, those regulations substantially subsume Plaintiffs' claims. (Doc. No. 257 at 25–26).

The Court previously found that CSXT had offered "no explanation, analysis or discussion" of how those regulations substantially subsumed Plaintiffs' claims. (Doc. No. 118 at 16). That conclusion rested not only on CSXT's failure to explain whether and how the cited

regulations applied, but also on its failure to cite authority establishing that any of them preempted Plaintiffs' claims. (Id.). Indeed, being mindful "not to invent argumentation that CSXT does not advance" (id.), the Court examined the regulation that appeared most directly implicated by Plaintiffs' theory—the drainage regulation, 49 C.F.R. § 213.33. (Id. at 16–17). In doing so, the Court explained that authority—unaddressed by CSXT—undermined, rather than supported, preemption under that regulation. (Id.). It discussed MD Mall Assocs., LLC v. CSX Transp., Inc., in which the Third Circuit held that § 213.33 was intended to protect railroad tracks from standing water, not neighboring property from floodwaters discharged by a railroad, and therefore did not preempt a claim involving stormwater runoff. 715 F.3d 479, 492–93 (3d Cir. 2013).

The Court thus identified two deficiencies in CSXT's FRSA argument. First, CSXT needed to analyze the regulations it invoked with specificity and explain how each substantially subsumed the subject matter of Plaintiffs' claims. Second, it needed legal authority supporting that conclusion. CSXT does little here to address those concerns. It attempts to address the first point by arguing that Plaintiffs' experts rely on various federal regulations. Yet still, it analyzes those regulations only in the aggregate. It does not explain, regulation by regulation, why any particular regulation substantially subsumes Plaintiffs' claims. Nor does it cite any authority supporting such a conclusion, much less authority addressing the regulations individually. That is insufficient to carry its burden of establishing FRSA preemption.

Plaintiffs' experts' reliance on those regulations does not alter that conclusion. As already explained, the duty imposed on CSXT is a common law duty to exercise reasonable care in maintaining its property. Whether particular regulations apply, and whether CSXT complied with them, may bear on whether CSXT acted reasonably under the circumstances. That does not, however, transform the subject matter of this suit into one substantially subsumed by federal

17

regulation.  A jury could conclude that CSXT breached its common law duties regardless of whether any particular regulation applies or whether CSXT complied with every regulation it invokes.

Because CSXT has not established that any federal regulation substantially subsumes Plaintiffs' claims, the Court need not decide whether the local safety or security hazard exception, 49 U.S.C. § 20106(a)(2)(A)–(C), would independently preserve them.  Summary judgment on FRSA preemption will be denied.

> D.      Nuisance

CSXT argues that Plaintiffs cannot establish a nuisance claim because they allege no actionable interference with their property rights or lasting property damage. (Doc. No. 257 at 26–27). Tennessee law does not define nuisance so narrowly.  Though nuisance includes interference with the reasonable use and enjoyment of property, it also extends to "everything that endangers health or life." Oakley v. Simmons, 799 S.W.2d 669, 671 (Tenn. Ct. App. 1990).  Tennessee law likewise recognizes that the wrongful interference with the natural drainage of surface water constitutes an actionable nuisance. Zollinger v. Carter, 837 S.W.2d 613, 614–15 (Tenn. Ct. App. 1992).  CSXT's contention that nuisance is limited to claims involving lasting property damage therefore misstates Tennessee law.  For the reasons discussed above, genuine disputes of material fact remain as to whether CSXT created or maintained the alleged nuisance and whether that condition caused Plaintiffs' injuries.  Summary judgment on nuisance will thus be denied.

> E.      Punitive Damages

CSXT argues that Plaintiffs have no evidence—let alone clear and convincing evidence— that it acted recklessly.  (Doc. No. 257 at 27–30).  Punitive damages "are to be awarded only in the most egregious of cases," Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992), and require proof by clear and convincing evidence that the defendant acted maliciously, intentionally,

18

fraudulently or recklessly.  Tenn. Code Ann. § 29-39-104(a)(1).  As discussed above, genuine disputes remain concerning CSXT's knowledge of recurring debris accumulation and flooding conditions, the adequacy of its inspection and maintenance of the Trace Creek Bridge, and its response to the flood on August 21, 2021.  Whether Plaintiffs present evidence at trial from which a jury could conclude that CSXT acted in conscious disregard of a substantial and unjustifiable risk is a question for the jury.  In a case involving multiple deaths and catastrophic injuries allegedly caused in part by CSXT, the Court cannot resolve that question as a matter of law. Summary judgment on punitive damages will thus be denied.  Consistent with Tennessee law and this Court's normal practice, the issue of punitive damages will be bifurcated at trial.  Tenn. Code Ann. § 29-39-104(a)(2); see also Hodges, 833 S.W.2d at 901.

F.    Plaintiffs' Experts

Finally, CSXT argues that summary judgment is independently warranted because two of Plaintiffs' experts should be excluded under Rule 702.  (Doc. No. 257 at 30).  That argument is unavailing.  As discussed above, genuine disputes of material fact remain even without considering the challenged opinions.  The Court will address their admissibility at the Daubert hearings.

## IV.    CSXT'S PLAINTIFF-SPECIFIC MOTIONS

CSXT's four plaintiff-specific motions seek summary judgment on: (1) comparative fault as to the claims of Tracy Kilburn, Peggy Betty, and Michelle Feliciano (Doc. No. 244); (2) causation regarding the deaths of Donna Bradley, Robin Shawl, Mary Luten, and Joshua Hendrix (Doc. No. 247); (3) the negligent infliction of emotional distress ("NIED") claims of Kayla Brake, Shane Bryant, and Tiffany Bryant (Doc. No. 250); and (4) Thomas Sanders's standing to pursue Joshua Hendrix's wrongful death claim (Doc. No. 253).  At their core, the motions do three things. One motion blames the Plaintiffs for their own losses (comparative fault).  Two motions revisit issues the Court has already confronted and rejected more broadly in resolving the omnibus

motion, now focused on particular deaths and particular claims (death causation, nuisance as a basis for NIED, and standalone NIED). And one contests a Plaintiff's legal right to sue at all (standing). Those motions will be resolved as set forth below.

A.      CSXT's Comparative Fault Motion

CSXT moves for summary judgment against Tracy Kilburn, Peggy Betty, and Michelle Feliciano based on comparative fault. (Doc. No. 244). Those Plaintiffs assert emotional distress and wrongful death claims arising from the August 21, 2021 flood. CSXT's theory is that each of them—or the loved one they lost—is more to blame for the resulting death than CSXT, whose alleged negligence created or substantially worsened the flood conditions in the first place. It contends that the evidence establishes as much "conclusively" and that the Court should thus take the inherently fact-bound question of comparative fault from the jury. (Doc. No. 245 at 5–14).

Under Tennessee's modified comparative fault regime, a plaintiff who is fifty percent or more at fault cannot recover, Phillips v. McCraw, 2026 WL 810933, at *2 (M.D. Tenn. Mar. 24, 2026), and comparative fault is "a question of fact within the jury's province, which should not lightly be invaded by the trial court." LaRue v. 1817 Lake Inc., 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997). Thus, on a motion for summary judgment, the task of comparing and allocating fault may be taken from the jury only when "it can be determined beyond question," or "when reasonable minds cannot differ" that the plaintiff's fault is equal to or greater than the defendant's. Jones v. Kroger Ltd. P'ship I, 2026 WL 36268, at *6 (Tenn. Ct. App. Jan. 6, 2026) (quoting Henley v. Amacher, 2002 WL 100402, at *6 (Tenn. Ct. App. Jan. 28, 2002)). Traditional defenses such as assumption of the risk and the so-called "rescue doctrine"—both of which CSXT raises—are folded into the comparative fault analysis. Perez v. McConkey, 872 S.W.2d 897, 905 (Tenn. 1994) (assumption of the risk); Eaton v. McLain, 891 S.W.2d 587, 592 (Tenn. 1994) (rescue doctrine).

That is a demanding standard applied to an inherently fact-bound inquiry. This makes CSXT's request all the more extraordinary. When viewing the three scenarios that follow in the light most favorable to the Plaintiffs, consider whether it is "beyond question" or whether "reasonable minds" cannot differ that the individual was at least as much at fault as CSXT. Jones, 2026 WL 36268, at *6. Scott Kilburn and his wife, Tracy Kilburn, were on the roof of a vehicle when Scott made a split-second decision to enter raging water to reach Regina Brake and save her life. (Doc. No. 270 ¶¶ 8–10). He did not survive. James Betty, aware of the danger and burdened by multiple health conditions, left a place of relative safety to help a neighbor. (Id. ¶¶ 11–13, 20–22). CSXT calls that decision unreasonable, characterizing it as an effort to help the neighbor secure a boat—though his wife, Peggy, testified that before James left, he told her that he had to "get Ray" and "try and help him." (Id. ¶ 21). He did not survive. Instead of leaving her home the moment she was warned, Michelle Feliciano prepared her seven-year-old daughter and called her sister to pick her up in a truck because she did not believe her own car could safely pass through the water. (Id. ¶¶ 26–32). Her daughter did not survive.

The Court cannot conclude that it is "beyond question," or that "reasonable minds" could not differ, over whether any of those individuals were at least as much at fault as CSXT because those scenarios present quintessential jury questions. It could not reach that conclusion even if every disputed fact broke CSXT's way, which is not the applicable standard for summary judgment. A jury—not the Court—must decide how much danger each person perceived, and how much time each believed he or she had. A jury must decide what a reasonable person would have done in Scott Kilburn's place, on the roof of a car with someone drowning within reach; in James Betty's place, weighing a neighbor's plea against his own frailty; in Michelle Feliciano's place,

choosing how to transport a seven-year-old through rising water. And a jury must decide how any fault it assigns compares to CSXT's alleged role in creating the danger that forced those choices.

Even a jury persuaded that one or more of those individuals acted unreasonably could still assign them little or no fault compared to CSXT. That is because a reasonable jury could well conclude that CSXT is completely at fault for putting them in those situations in the first place. Consider the starkest version: a person who, seeing the floodwaters rise and overcome by hopelessness, deliberately enters the water. Even that decision—unreasonable by any measure—would not compel a jury to assign majority fault, because a jury could find that the despair itself was a result of the catastrophe to which CSXT contributed a cause to. If fault need not be allocated "conclusively" in CSXT's favor in that scenario, it surely need not be here.

Far from establishing fault "conclusively," CSXT cannot show that fault should be allocated as it argues even if every fact broke its way. Worse yet, CSXT cannot show that fault should be allocated as it argues even on hypothetical worse facts. All that is to say the motion (Doc. No. 244) will be denied.

### B. CSXT's Death Causation Motion

CSXT moves for summary judgment on causation as to the deaths of Donna Bradley, Robin Shawl, Mary Luten, and Joshua Hendrix. (Doc. No. 247). According to CSXT, because no eyewitness observed each decedent's final moments and Plaintiffs did not retain a cause-of-death expert, no reasonable jury could find that CSXT caused those deaths. (Doc. No. 248 at 4–12).

The motion narrows the issue from flood causation generally to the causation of four individual deaths. Yet still, it repeats the same mistakes that doomed the broader argument. First, CSXT insists that Plaintiffs reconstruct the precise circumstances of each death. (Doc. No. 248 at 4–12). Second, CSXT insists that, without an eyewitness to those circumstances, Plaintiffs needed a cause-of-death expert to supply them. (Id.). Both arguments assume a burden the law does not

impose: Plaintiffs need only produce evidence from which a reasonable jury could find that CSXT's alleged negligence was "a cause" of these deaths. Hale, 166 S.W.3d at 718; see also supra Section III.B (discussing causation standard).

The Court has already held that genuine disputes remain over whether CSXT's alleged negligence was a cause of the harm that the August 21, 2021 flood inflicted on Plaintiffs. See supra Section III.B. As to these four decedents, Plaintiffs add evidence (1) that eyewitnesses described violent flood conditions in the areas where the decedents were located (Doc. No. 271 at 2–5); (2) that each decedent was in those conditions (id.); (3) that each decedent's body was recovered in the flood's aftermath (Doc. No. 273 ¶¶ 2–6); and (4) that official records identify the cause and circumstances of each death (id.). From that evidence a jury could reasonably infer that the flood killed these four people and that CSXT's alleged negligence was a cause of it. Cause in fact asks only whether the defendant's conduct was "a cause" of the harm, not the sole cause and not a cause proved to a certainty. Hale, 166 S.W.3d at 718.

CSXT nevertheless contends that a cause-of-death expert must opine on the specific circumstances of each death. Yet the circumstances here do not dictate that causation be proven by expert testimony rather than by circumstantial proof. Adkins v. Marathon Petroleum Co., LP, 105 F.4th 841, 852 (6th Cir. 2024). That people found drowned in the wake of a catastrophic flood died because of that flood is precisely the kind of obvious inference a jury may draw from circumstantial evidence alone.

That leaves CSXT's objections to the official records themselves, which come in two forms: a hearsay challenge to their admissibility, and a challenge to inconsistencies in their content. Start with hearsay. The Waverly Police Department reports (Doc. Nos. 271-5, 271-7, 271-9, 271-11) and the Office of the State Chief Medical Examiner's Medicolegal Death Investigation Reports

(Doc. No. 271-14) appear to fall within the public-records exception, Fed. R. Evid. 803(8), because public officials prepared them in the course of their official investigation of these deaths and set out the factual findings of those investigations.  If offered in certified form, they likewise appear self-authenticating.  Fed. R. Evid. 902(4).

CSXT responds that the records fall outside the exception because their "source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8)(B); (Doc. No. 286 at 1–5).  These records were prepared by police officers, medical personnel, and public officials responding to one of the deadliest floods in Tennessee's recent history.  Their purpose was to identify victims, document deaths, coordinate the emergency response, and discharge official duties.  If records prepared under those circumstances are too untrustworthy to qualify under Rule 803(8), it is difficult to imagine what public records would be trustworthy.  In any event, the Court need not resolve every evidentiary question that may arise at trial.  The question at summary judgment is whether the evidence can be presented in admissible form. Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 430 (6th Cir. 2018) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Plaintiffs have made that showing.

The inconsistencies CSXT identifies (Doc. No. 286 at 1–5) fare no better.  They go to the weight of the evidence rather than admissibility.  Kalamazoo River Study Grp. v. Menasha Corp., 228 F.3d 648, 661 (6th Cir. 2000) ("Questions as to the documents' content and completeness bear upon the weight to be accorded the evidence[.]").

In short, the motion demands certainty that the law of causation does not require and that the Federal Rules of Evidence do not support.  CSXT would have Plaintiffs pinpoint each death, retain an expert to narrate it, and produce records immune from every conceivable objection, all

24

to prove what circumstantial evidence already reasonably permits a jury to infer.  The motion (Doc. No. 247) will thus be denied.

      C.      <u>CSXT's NIED Motion</u>

CSXT moves for summary judgment on the NIED claims asserted by Kayla Brake, Shane Bryant, and Tiffany Bryant.  (Doc. No. 250).  It first argues that Plaintiffs cannot recover for NIED under a nuisance theory.  (Doc. No. 251 at 4–6).  It next argues that the standalone NIED claims fail because these Plaintiffs were not physically located in a place where CSXT's alleged negligence could have caused the flood conditions they encountered.  (<u>Id.</u> at 7–12).  Finally, it argues that the bystander claims fail because none of these Plaintiffs observed the actual or apparent death or serious physical injury of their loved one.  (<u>Id.</u>).

      **1.**      **Nuisance**

To the extent CSXT argues that Plaintiffs cannot recover for NIED under a nuisance theory, those arguments are rejected for the reasons stated above.  <u>See</u> <u>supra</u> Section III.D.

      **2.**      **Standalone NIED**

The standalone NIED claims stand on the same causation footing the Court has already addressed, now focused on the emotional harms these three Plaintiffs say the flood inflicted on them.  Tennessee recognizes a standalone NIED claim when a defendant's negligence causes a serious mental injury.  <u>Camper v. Minor</u>, 915 S.W.2d 437, 446 (Tenn. 1996).  CSXT does not dispute that these Plaintiffs suffered serious mental injury.  It disputes only causation, arguing that their physical locations during the flood place them beyond any conditions its alleged negligence could have caused.  (Doc. No. 251 at 7–12).

The Court has already held that genuine disputes remain over whether CSXT's alleged negligence was a cause of the August 21, 2021 flood.  <u>See</u> <u>supra</u> Section III.B.  The only question

left is a narrower one: whether a jury could find that same alleged negligence was a cause of the flood conditions that produced these Plaintiffs' emotional injuries.

Each Plaintiff testified to a personal, direct encounter with the floodwaters that a jury could trace to the conditions at issue. Kayla Brake testified that she encountered rapidly rising floodwater in south Waverly that reached her chest, pulled her underwater, forced her to cling to a barbed-wire fence, and required rescue. (Doc. No. 263 ¶¶ 8–11; Doc. No. 264 at 9–10). Shane Bryant testified that flood conditions prevented him from reaching Waverly and his children. He observed by videocall floodwaters carrying away mobile homes, shifting houses from their foundations, igniting fires, and entering his home where his young daughter remained. (Doc. No. 263 ¶¶ 27–32; Doc. No. 264 at 11–12). Tiffany Bryant testified that she entered floodwater near Main Street and Waverly Baptist Church while attempting to reach her daughters and turned back after the water reached her shoulders and repeatedly pushed her backward and sideways. (Doc. No. 263 ¶¶ 38–42; Doc. No. 264 at 13–14).

Each account describes severe flood conditions that these Plaintiffs met in Waverly or while fighting to reach it. Because a jury could find CSXT's alleged negligence was a cause of those conditions, it could likewise find its negligence a cause of the emotional injuries the conditions produced. The motion (Doc. No. 250) will be denied as to the standalone NIED claims.

### 3. Bystander NIED Claims

Unlike the standalone claims discussed above, Plaintiffs' bystander NIED claims do not arise from the flood conditions Plaintiffs themselves encountered. They seek recovery for the emotional injuries they suffered as a result of the deaths of their loved ones.

CSXT frames much of its argument in terms of "foreseeability." (Doc. No. 251 at 8–10, 12). That framing is not particularly helpful. The issue is more straightforward. Tennessee law recognizes two distinct forms of negligent infliction of emotional distress arising from injury to

26

another.  The first applies when the plaintiff is a witness to the injury-producing event itself. Ramsey v. Beavers, 931 S.W.2d 527, 531 (Tenn. 1996).  The second applies when the plaintiff did not witness the injury-producing event.  In that circumstance, Tennessee permits recovery only if the plaintiff observed "the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered."  Eskin v. Bartee, 262 S.W.3d 727, 739 (Tenn. 2008).

This case presents the second scenario.  None of these Plaintiffs witnessed the injury-producing event the moment the floodwaters took their loved ones.  Their claims therefore rise or fall on whether they observed the actual or apparent death or serious physical injury at the scene before it was materially altered.  Id.

They did not.  Tiffany Bryant testified that she received video calls from her daughters as floodwaters rose, immediately attempted to reach them, entered floodwaters near Main Street and Waverly Baptist Church, learned that her daughter had been swept away, and searched for her throughout the day.  (Doc. No. 263 ¶¶ 38–49).  Shane Bryant likewise attempted to reach his children, watched catastrophic flooding unfold by video call, and searched for his daughter before later learning that she had passed.  (Doc. No. 263 ¶¶ 27–33).  Though those events are heartbreaking, neither parent observed their daughter's actual or apparent death or serious physical injury before the scene had been materially altered.  Eskin, 262 S.W.3d at 739.

Kayla Brake saw her mother's home engulfed by floodwaters, desperately attempted to reach her, and later learned that her mother had been swept away before seeing her mother's body at the hospital.  (Doc. No. 263 ¶¶ 13–19; Doc. No. 264 at 10–11).  Those events are again heartbreaking, but the hospital was not the scene.  However tragic, that is not what Tennessee law requires.  Eskin, 262 S.W.3d at 739.

The Court does not reach this conclusion lightly. The record reflects devastating circumstances endured by each of these Plaintiffs. Catastrophic natural disasters may make compliance with Eskin's observation requirement far more difficult than in the ordinary accident case. Each of these Plaintiffs attempted to reach a loved one, but the flood conditions prevented them from witnessing what Eskin requires. Nevertheless, Plaintiffs have not produced evidence from which a reasonable jury could conclude that they observed the actual or apparent death or serious physical injury of their loved ones before the scene had been materially altered. The bystander NIED claims thus cannot proceed, and the motion (Doc. No. 250) will be granted as to them.

> D.     CSXT's Standing Motion

CSXT moves for summary judgment on Thomas Sanders's wrongful death claim for lack of standing. (Doc. No. 253). It argues that Sanders, as Joshua Hendrix's brother, cannot pursue the claim because Hendrix's mother is alive and therefore has priority to pursue the claim under Tennessee's wrongful death statutes. (Doc. No. 254 at 2–4). In response, Plaintiffs submitted a declaration from Hendrix's mother, Carolyn Nicholas, stating that she reached a private agreement with Sanders in 2023, knowingly and voluntarily waived her right to bring or control the wrongful death action, and authorized Sanders to pursue and resolve the claim on Hendrix's behalf. (Doc. No. 275-1).

Tennessee law permits a superior beneficiary to waive, relinquish, or otherwise allow an inferior beneficiary to prosecute and control a wrongful death action "by permitting an inferior beneficiary's action to stand without objection." Haynes v. Wayne Cnty., 2017 WL 1421220, at *4 (Tenn. Ct. App. Apr. 19, 2017) (citing Busby v. Massey, 686 S.W.2d 60, 62 (Tenn. 1984)). Nicholas's declaration is evidence that she knowingly permitted Sanders to prosecute and control the action.

28

CSXT nevertheless argues that Nicholas's declaration creates a sham factual dispute because Sanders could not identify her last name or current residence during his deposition. (Doc. No. 292 at 3–4). CSXT asks the Court to infer that Nicholas falsely executed the declaration, that Sanders falsely accepted the authority it confers, or both. The Court declines that invitation. CSXT has not identified any testimony in which Sanders denied that Nicholas had waived, relinquished, or otherwise allowed Sanders to pursue the claim, or was asked about the subject. Sanders's inability to recall Nicholas's current surname or residence is not evidence that the declaration is fabricated. At most, CSXT has identified a factual dispute concerning the validity or effect of the purported waiver and assignment. The motion (Doc. No. 253) will thus be denied.

## V. CONCLUSION

For the reasons set forth above, CSXT's omnibus motion for summary judgment (Doc. No. 256) will be denied; the plaintiff-specific motion for summary judgment on comparative fault (Doc. No. 244) will be denied; the plaintiff-specific motion for summary judgment on causation (Doc. No. 247) will be denied; the plaintiff-specific motion for summary judgment on NIED (Doc. No. 250) will be granted in part and denied in part; and the plaintiff-specific motion for summary judgment on standing (Doc. No. 253) will be denied.

CSXT has filed replies to Plaintiffs' responses to its statements of undisputed material facts (Doc. Nos. 285, 287, 289, 291). They will be stricken. Local Civil Rule 56.01 does not authorize such filings, and CSXT did not seek leave from the Court.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE