| | |
|---|---|
| MATTHEW RIGNEY, et al, | |
| Plaintiffs, | Case No. 3:22-cv-00342 |
| v. | Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Luke A. Evans |
| CSX TRANSPORTATION, INC., | |
| Defendant. | |

## MEMORANDUM ORDER

Pending before the Court is Defendant's motion to compel documents generated or utilized by the Plaintiffs' expert, Dr. William Newman ("Newman"). (Doc. No. 296.) Plaintiffs filed a response in opposition. (Doc. No. 315.) Defendant replied. (Doc. No. 321.) This matter is ripe for decision. For the reasons that follow, Defendant's motion is granted in part and denied in part.

### I.    Background

This case arises from a flood that swept through Waverly, Tennessee on August 21, 2021 "killing at least 20 people, including children." (Doc. No. 147 at 4.) Plaintiffs claim that the flood resulted because Defendant allowed debris to clog one of its culverts, which caused millions of gallons of pent-up water to divert over the banks of Trace Creek and into the city. (*Id.* at 4, 6.) Numerous Plaintiffs initially raised claims of negligent infliction of emotional distress ("NIED"). Plaintiffs retained Newman to "offer opinions and testimony as to those Plaintiffs who sustained clinically diagnosable psychiatric injuries because of the August 21, 2021 flood." (Doc. No. 315

at 3.) Newman interviewed numerous individuals but only produced 17 reports.[1] (Doc. No. 297 at 2.) Those reports were provided to the Defendant. (*Id.*) Newman appeared for six days of depositions. (Doc. No. 297 at 3.) At his deposition, Newman refused, on the advice of Plaintiff's counsel, to answer questions related to the interviews he conducted that did not result in a report. (*Id.*)

Defendant maintains that it is entitled to any notes taken by Newman related to the interviews he conducted where he did not generate a report as well as his schedule of interviews. (*Id.* at 9.) Defendant claims that the requested materials are "highly relevant to Dr. Newman's overall methodology and credibility." (Doc. No. 296 at 2.) Defendant additionally requests that the Court allow an additional full-day deposition of Newman to assess the information that it seeks. (*Id.*)

Plaintiffs assert that Defendant is not entitled to any information generated by Newman for interviews he conducted where no report was generated because the information is not relevant and because he was acting as a consulting expert and thus protected by Federal Rule of Civil Procedure 26(b)(4)(D). (Doc. No. 315 at 7.) Plaintiffs further assert that his schedule of interviews is protected from disclosure because it was done at the request of counsel and not relied upon by the expert in forming his opinion. (*Id.*) Plaintiffs instead have acknowledged that they have not yet served a formal privilege log under Rule 26(b)(5)(A) identifying the withheld materials. Plaintiffs have offered to serve a log within seven days of this order.

## II. Legal Standard

The scope of discovery is within this Court's discretion. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (citation omitted). Generally, Rule 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

---

[1]  The briefing illustrates a stark disagreement about the number of interviews that were conducted. However, the Court need not resolve this dispute to address the merits of Defendant's motion.

Fed. R. Civ. P. 26(b)(1). Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ. P. 26(b)(1) adv. cmte. note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

Rule 26(a)(2)(B)(ii) requires disclosure of "the facts or data considered by the witness in forming" his opinions if the witness must provide a written report, *i.e.,* if the witness may give expert testimony. Fed. R. Civ. P. 26(a)(2)(B)(ii). Rule 26(b)(4)(D) provides:

> **(D)** *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> **(i)** as provided in Rule 35(b); or
>
> **(ii)** on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26.

"Ordinarily, a party may not discover facts known or opinions held by another party's non-testifying consulting expert, except for Rule 35(b) medical exams or on showing exceptional circumstances under which it is impracticable for the other party to obtain the facts and opinions

3

by other means." *Deere & Co. v. FIMCO, Inc.*, No. 5:15-CV-105, 2016 WL 11269254, at *2 (W.D. Ky. Dec. 5, 2016) (cleaned up). "A party seeking discovery of facts or opinions held by a non-testifying consulting expert bears the burden of showing exceptional circumstances." *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189 (M.D. Tenn. 2014) (internal block quotation and citations omitted). The party seeking discovery may meet the exceptional circumstances standard in one of two ways. "First, the moving party may show that the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it. Second, the moving party may show there are no other available experts in the same field or subject area." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1152 (N.D. Ill. 2001) (citations omitted); *see R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899, 905 (N.D. Ohio 2009) ("Rule 26(b)(4)(B) was created to prevent a party from unfairly benefiting from another party's better trial preparation or unfairly using another party's expert to build his own case.") (citations omitted).

Dual-hat experts are single experts who serve both roles, as non-testifying consulting experts and as testifying experts. "[I]n the case of dual-hat experts, only materials generated or considered uniquely in the expert's role as a consultant are exempt from the broader discovery rules for testifying experts." *United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-00061, 2023 WL 1420426, at *4 (W.D. Ky. Jan. 31, 2023) (citation omitted). "If there is any ambiguity regarding the role played by a party's consultant in reviewing or creating documents, it should be resolved in favor of the party seeking discovery." *DaVita Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, No. 2:18-CV-1739, 2025 WL 2088378, at *4 (S.D. Ohio July 25, 2025) (cleaned up).

### III.     Analysis

Before addressing any issues related to Newman's dual role or the applicability of Rule 26(b)(4)(D), which presumes that the information sought is relevant, the Court must first assess whether Defendant has sufficiently made a showing that the information sought is relevant. Defendant argues that requested materials are "highly relevant to his credibility" because Newman testified that he would typically rely on collateral interviews with other people to help him form opinions. (Doc. No. 297 at 9.) Defendant then weakens its argument by conceding that the information sought merely "could be" relevant. (*Id.*)[2] The Court struggles to see how the information gleaned by Newman during interviews of individuals who do not have a pending claim for NIED is relevant to a pending claim or defense. *Genesco*, 302 F.R.D. at 184 (district court "does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided") (citations omitted).

Likewise, Defendant has failed to sufficiently explain how such information would be relevant to his credibility or methodology. For the 17 Plaintiffs who will present NIED claims at trial, Defendant has information from Newman's deposition and reports about exactly what methodology he used to reach his conclusions. Either that methodology is grounded in reliable information such as peer-reviewed literature or it is not, and Defendant already can cross-examine or rebut Newman as it sees fit. Pursuing information about parties who will not submit NIED claims to the jury would serve only one purpose: Attack the Plaintiffs with NIED claims personally by suggesting that they cannot possibly have experienced legally actionable emotional distress

---

[2]     Defendant's argument seems to rest at least in part on *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2025 WL 320590, at *1 (M.D. Tenn. Jan. 28, 2025). However, the Court does not find *Ramsbottom* applicable. Judge Trauger reached the holding based on the rules of evidence that govern trial testimony, not rules that pertain to discovery. *Id.* at *2.

simply because other flood victims are not presenting that claim. *Cf. Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1294–95 (8th Cir. 1997) (vacating Title VII damages award and remanding for damages trial, where plaintiffs were given burden of proving mental anguish separate from pre-existing conditions; defendant must take the victim as defendant finds the victim, "extraordinarily sensitive or not") (collecting cases). The experiences of others in response to the flood, and their decisions about how to seek redress for those experiences, have no relevance to whether the 17 Plaintiffs with NIED claims can prove their allegations by a preponderance of the evidence.

Defendant next argues that Newman's notes and schedules related to individuals he interviewed but for whom he did not generate a report must be produced because he "considered" them in forming his opinions as set forth in the disclosed reports. (Doc. No. 297 at 9.) Newman serves a dual purpose. He serves as a testifying expert for the 17 Plaintiffs with NIED claims; he also was a consulting expert for Plaintiffs who are not submitting that claim to the jury. As a dual-hat expert, materials generated or considered in his role as a consulting expert are not discoverable. Fed. R. Civ. P. 26(b)(4)(D). Defendant's argument that Newman considered the information gleaned as part of the interviews at issue when forming his opinions as to the 17 Plaintiffs is unavailing and is contradicted by the record. In his deposition, Newman testified that he did not evaluate any Plaintiff "through the lens of another." (Doc. No. 315 at 4.) Therefore, the Court does not find that Newman "considered" any of the information gleaned through his interviews with others when rendering his opinions as to the 17 Plaintiffs.[3]

Even assuming that the requested information is relevant, there is no ambiguity in Newman's role as a consulting expert for Plaintiffs who are not pursuing NIED claims, and

---

[3]     Per their agreement, Plaintiffs shall provide any information that was cross-referenced by Newman in forming his opinions as to the Brake siblings, all of whom have claims of NEID. (Doc. No. 315 at 11.)

Plaintiffs have sufficiently shown that Rule 26(b)(4)(D) applies. *See DaVita Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, No. 2:18-CV-1739, 2025 WL 2088378, at *4 (S.D. Ohio July 25, 2025). Therefore, Defendant's only remaining avenue for production would be through a showing of exceptional circumstances. It has failed to do so.

Defendant argues that Newman's notes and schedules are discoverable because without them, it cannot assess his methodology and credibility; cannot fully ascertain the purpose of the work he billed for; and cannot find other reliable information to determine the substance of Newman's conversations with individuals he interviewed where no report was generated. (Doc. No. 297 at 11.) None of these reasons rise to the level of exceptional circumstances.[4] Defendant is in possession of all information relevant to Newman's opinions related to the 17 Plaintiffs who are claiming NIED. The materials generated by Newman related to individuals who are not pursuing a claim of NIED were generated pursuant to his role as a consultant and are exempt from disclosure. Therefore, the Court finds that Defendant is not entitled to discover his notes, unredacted schedules, or to depose Newman again.

### IV.    Conclusion

For the reasons stated, the Court GRANTS IN PART Defendant's motion to compel (Doc. No. 296) to require the following production:

1)    Plaintiffs must serve a privilege log under Rule 26(b)(5)(A) and a redacted copy of the schedule of interviews within seven (7) days of entry of this order.

---

[4]    Defendant claims that Newman's invoice warrants production of the requested information because it does not differentiate work done as a consulting expert and work done as a testifying expert. (Doc. No. 315 at 11.) This does not create an exceptional circumstance or an ambiguity that warrants disclosure. Instead, Plaintiffs shall submit a supplemental invoice that reflects time billed by Newman only in his role as a testifying expert.

7

2) Plaintiffs must submit a supplemental invoice that reflects time billed by Newman only in his role as a testifying expert.

3) Plaintiffs must provide any information that was cross-referenced by Newman in forming his opinions as to the Brake siblings.

The motion to compel is DENIED in all other respects.

It is so ORDERED.

_____
LUKE A. EVANS
United States Magistrate Judge