**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| MATTHEW RIGNEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:22-cv-00342 |
| | ) | |
| CSX TRANSPORTATION, INC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In anticipation of trial, CSX Transportation, Inc. ("CSX") has filed a motion to exclude the expert testimony of Kristin Weivoda, which is fully briefed. (Doc. Nos. 240, 241, 387, 454). For the reasons that follow, the motion will be denied.

This case arises from the catastrophic flooding that struck Waverly, Tennessee, on August 21, 2021. Plaintiffs allege that CSX negligently maintained the Trace Creek Bridge, allowing water to become impounded upstream before the railroad embankment failed and released a surge of water that devastated portions of Waverly. Plaintiffs further allege that CSX failed to notify local emergency officials of the developing conditions, depriving first responders of information that would have altered the emergency response and reduced Plaintiffs' injuries.

To support that theory, Plaintiffs identified Kristin Weivoda to present expert testimony concerning emergency management practices, public safety communications, interagency notification, and the protective actions that reasonably could have followed earlier notification by CSX. (Doc. No. 241-1 at 1). Her report explains that she reviewed, among other materials, deposition testimony, emergency dispatch records, emergency operations plans, NOAA weather information, law enforcement reports, and Dr. Gerald Blackler's hydrologic report. (Id.).

Applying accepted emergency management principles—including the National Incident Management System, the Incident Command System, and recognized public safety communication standards—she opines that earlier notification of the conditions observed by CSX would have provided emergency responders additional opportunities to implement protective measures before "catastrophic inundation" occurred.  (Id. at 1–5).

CSX challenges the admissibility of Weivoda's opinions on two grounds.  First, it argues that Weivoda is not qualified to offer opinions expressed in her report because those opinions depend on specialized knowledge of railroad operations and the conditions observed by CSX employees at the Trace Creek Bridge.  Second, it argues that her opinions are unreliable because they are contrary to the factual record underlying them.  (Doc. No. 241 at 6–15; Doc. No. 454 at 2–5).

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony and opinions at trial.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).  Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d).

Under Rule 702, "a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529 (6th Cir. 2008). First, the witness must be qualified by "knowledge, skill, experience, training, or education." Id. (quoting Fed. R. Evid. 702). In other words, the Court should "investigate the competence a particular proffered witness would bring to bear on the issues, and whether it would aid the trier of fact in reaching its decision." Mannino v. Int'l Mfg. Co., 650 F.2d 846, 850 (6th Cir. 1981).

Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." In re Scrap Metal, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Relevance under Rule 702 is a question of "fit." Daubert, 509 U.S. at 591. The expert's reasoning and methodology must fit the facts of the case so that the testimony is helpful to the trier of fact. Id. at 591–92. When an expert's opinion offers a legal conclusion, attempts to tell the trier of fact what verdict to render, or confuses the trier of fact, it is not helpful and thus must be excluded. Woods v. Lecureux, 110 F.3d 1215, 1220 (6th Cir. 1997).

Third, the testimony "must be reliable." In re Scrap Metal, 527 F.3d at 529 (citing Fed. R. Evid. 702). To determine reliability under Rule 702, the Court must determine not "whether [the expert's opinion] is correct, but rather [] whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." Id. at 529–30. "[T]he key handholds of Rule 702" must be remembered: "[t]o be admissible, any relevant scientific or technical evidence must be the 'product of reliable principles and methods' and must have been 'reliably applied' in the case." Id. (quoting Fed. R. Evid. 702(c), (d)).

In evaluating these requirements, the Court acts as the "gatekeeper" of the expert opinion evidence, Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997), a function it must exercise "with

3

heightened care." <u>United States v. Cunningham</u>, 679 F.3d 355, 380 (6th Cir. 2012) (quotations omitted). The Court will not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." <u>Andler v. Clear Channel Broad., Inc.</u>, 670 F.3d 717, 729 (6th Cir. 2012) (citations omitted). Indeed, Rule 702 does not "require anything approaching absolute certainty." <u>Tamraz v. Lincoln Elec. Co.</u>, 620 F.3d 665, 671–72 (6th Cir. 2010) (citing <u>Daubert</u>, 509 U.S. at 590). Under <u>Daubert</u>, experts are "permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion has a reliable basis in the knowledge and experience of the discipline." <u>Dilts v. United Grp. Servs., LLC</u>, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting <u>Daubert</u>, 509 U.S. at 592). Still, <u>Daubert</u> and Rule 702 require that "the expert testimony be derived from inferences based on a scientific method and that those inferences be derived from the facts of the case at hand," <u>Jahn v. Equine Servs. PSC</u>, 233 F.3d 382, 390 (6th Cir. 2000), and the expert's knowledge must be based on "more than subjective belief or unsupported speculation." <u>Tamraz</u>, 620 F.3d at 670 (citation and quotations omitted).

Lastly, and of note, the party offering expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. <u>Pride v. BIC Corp.</u>, 218 F.3d 566, 578 (6th Cir. 2000) (citing <u>Daubert</u>, 509 U.S. at 592 n.10); <u>see</u> <u>Sigler v. Am. Honda Motor Co.</u>, 532 F.3d 469, 478 (6th Cir. 2008).

With those principles in mind, the Court turns to CSX's first argument. CSX contends that Weivoda is not qualified to offer her opinions because they require specialized knowledge of railroad operations. Specifically, CSX argues that Weivoda cannot reliably opine that CSX possessed information warranting direct notification to emergency responders because she lacks expertise concerning railroad operations, including what conditions a railroad employee would

consider "normal" or "abnormal" during a significant rain event. (Doc. No. 241 at 6–10; Doc. No. 454 at 2–4).

CSX's argument does not accurately characterize the opinions expressed in Weivoda's report. Weivoda does not purport to offer opinions regarding railroad operating practices or the standards by which railroad employees evaluate track conditions during severe weather. Instead, Weivoda applies her emergency management expertise to opine that CSX should have directly communicated known infrastructure conditions to emergency responders. She further opines that earlier communication would have improved situational awareness, expanded opportunities for protective action, and more likely than not saved lives. (Doc. No. 241-1 at 4–5).

Those opinions fall within Weivoda's expertise in emergency management. She has more than two decades of experience in emergency management, emergency medical services, emergency communications, and public-safety operations. (Doc. No. 241-1 at 1). She is a FEMA-certified instructor and has served in numerous leadership roles involving emergency planning, incident command, interagency coordination, and disaster response. (Id.). Those qualifications satisfy Rule 702(a) by a preponderance of the evidence for the opinions she offers here.

CSX's second argument concerns the factual basis for Weivoda's opinions. CSX contends that her opinions are unreliable because they conflict with evidence showing that local officials had already issued warnings, called in additional personnel, and begun protective measures before the time when she believes CSX should have received additional information from CSX. (Doc. No. 241 at 10–15; Doc. No. 454 at 4–5).

That challenge does not justify exclusion. The Sixth Circuit's recent decision in Davis v. Sig Sauer, Inc., explains how courts should apply Rule 702(b)'s requirement that expert testimony rest on "sufficient facts or data." 126 F.4th 1213, 1224–26 (6th Cir. 2025). An expert may base

an opinion on facts or data that the expert "has been made aware of or personally observed." <u>Id.</u> at 1224 (quoting Fed. R. Evid. 702). Weaknesses "in the factual basis" of the resulting opinion ordinarily "bear on the weight of the evidence rather than on its admissibility." <u>Id.</u> (quoting <u>In re Scrap Metal</u>, 527 F.3d at 530).

In reaching that conclusion, <u>Davis</u> relied on two published Sixth Circuit decisions: <u>In re Scrap Metal Antitrust Litig.</u>, 527 F.3d 517 (6th Cir. 2008) and <u>Jahn v. Equine Servs. PSC</u>, 233 F.3d 382 (6th Cir. 2000). <u>Id.</u> at 1225–26. In <u>In re Scrap Metal</u>, the expert relied on "faulty underlying marketplace data" but nevertheless employed a reliable methodology. <u>Davis</u>, 126 F.4th at 1225 (citing <u>In re Scrap Metal</u>, 527 F.3d at 524–27). The faulty data thus affected the weight of the opinion, not its admissibility. <u>Id.</u> (citing <u>In re Scrap Metal</u>, 527 F.3d at 531). Likewise, in <u>Jahn</u>, the experts' analyses were limited by the "lack of records." <u>Id.</u> at 1226 (citing <u>Jahn</u>, 233 F.3d at 390). Again, exclusion was unwarranted because the experts could use only the evidence available, and the Sixth Circuit declined to "hold experts to a more exacting standard than [the] evidence allow[ed]." <u>Id.</u> (citing <u>Jahn</u>, 233 F.3d at 390).

The lesson from <u>Davis</u> is that exclusion of an expert is not justified when facts and data relied upon by an expert are "faulty," as in <u>In re Scrap Metal</u>, or incomplete, as in <u>Jahn</u>. Instead, those are factors the jury can consider in determining how much weight should be given to the expert witnesses' testimony. As <u>Davis</u> aptly noted, during cross-examination it is "up to opposing counsel" to inquire into the expert's factual basis for the jury's consideration. <u>Id.</u> at 1224; <u>see also</u> <u>In re John Richards Homes Bldg. Co., LLC</u>, 439 F.3d 248, 264 (6th Cir. 2006) ("[A]n opposing party who would challenge the facts underlying the expert's opinion must do so by cross-examination.").

The Court has reviewed Weivoda's anticipated trial testimony and finds by a preponderance of the evidence that her opinions satisfy Rule 702(b). As in In re Scrap Metal and Jahn, Weivoda identified the facts and data on which she relied and applied her expertise to the evidence available to her. See Davis, 126 F.4th at 1225–26. Her report explains that she reviewed deposition testimony, dispatch records, emergency operations plans, weather information, law-enforcement records, and Dr. Blackler's hydrologic report before applying accepted emergency-management principles concerning incident command, interagency communication, situational awareness, and protective action. (Doc. No. 241-1 at 1).

CSX's criticisms do not establish otherwise. CSX argues that Weivoda reached the wrong conclusions from the materials she reviewed. It points to evidence that local officials had already undertaken many of the actions that Weivoda believes earlier communication would have prompted and contends that her opinions are therefore unreliable. (Doc. No. 241 at 10–15; Doc. No. 454 at 4–5). Those arguments challenge the conclusions Weivoda drew from the materials she reviewed, not whether she had sufficient facts or data on which to base those conclusions. Under Davis, In re Scrap Metal, and Jahn, that type of disagreement bears on the weight of the testimony rather than its admissibility. See Davis, 126 F.4th at 1224–26; In re Scrap Metal, 527 F.3d at 531; Jahn, 233 F.3d at 390. CSX's contention that Weivoda misunderstood the facts and data is fertile ground for cross-examination, but it does not authorize exclusion at trial. It will be the jury's work to determine what weight, if any, to give her testimony.

Because Weivoda reliably applied those accepted emergency-management principles to the materials she reviewed, Plaintiffs have also established the requirements of Rule 702(c) and (d) by a preponderance of the evidence.

7

Accordingly, for the reasons set forth above, the motion to exclude (Doc. No. 240) is

**DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE