Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW RIGNEY et al., | NO. 3:22-CV-00342 |
| Plaintiffs, | (consolidated) |
| v. | JUDGE WAVERLY D. CRENSHAW, JR. |
| CSX TRANSPORTATION, INC., | MAGISTRATE JUDGE LUKE EVANS |
| Defendant. | |

## PLAINTIFFS' SUR-REPLY ADDRESSING NEW PREEMPTION ARGUMENTS RAISED IN DEFENDANT'S REPLY

With leave of Court, Plaintiffs respectfully submit this limited sur-reply to address preemption arguments and authorities developed or expanded in CSXT's Reply.

### INTRODUCTION

CSXT's Reply expands upon its preemption arguments under both the Interstate Commerce Commission Termination Act ("ICCTA") and the Federal Railroad Safety Act ("FRSA"), relying upon additional authorities and extending its FRSA argument under 49 C.F.R. § 213.33 to Plaintiffs' nuisance theory. [Dkt. No. 529 at 4–5]. Those authorities do not support the broad preemption rule CSXT suggests. To the contrary, they reinforce the distinction drawn in Plaintiffs' Opposition: federal preemption turns upon the particular state-law duty being imposed and whether that duty actually regulates, or is substantially subsumed by federal regulation of, railroad transportation or railroad safety.

### ARGUMENT

**I. CSXT'S NEWLY CITED ICCTA AUTHORITIES DO NOT ESTABLISH THAT AN AWARD OF DAMAGES FOR INTERFERENCE WITH NATURAL DRAINAGE IS PREEMPTED.**

1

CSXT first argues that the fact Plaintiffs seek damages rather than an injunction is immaterial because state regulation can sometimes be exerted through damages. It relies upon *Soo Line Railroad Co. v. Consolidated Rail Corp.*, No. 2:17-CV-106, 2018 U.S. Dist. LEXIS 53839 (N.D. Ind. Mar. 29, 2018), and *Kurns v. Railroad Friction Products Corp.*, 565 U.S. 625 (2012). [Dkt. No. 529 at 4]. However, neither case establishes that every damages remedy affecting railroad property constitutes impermissible regulation.

In *Soo Line*, the plaintiff challenged the terms of a trackage-rights agreement among rail carriers, including the rental rates imposed under that agreement. The plaintiff sought compensatory and punitive damages, disgorgement, rescission of the agreement, and an injunction requiring implementation of a different board resolution governing the trackage-rights arrangement. *Soo Line Railroad Co. v. Consolidated Rail Corp.*, 2018 U.S. Dist. LEXIS 53839 at *3. The court emphasized that the Surface Transportation Board (STB) possessed exclusive authority to establish the terms and compensation governing trackage rights. It therefore concluded that the asserted state-law claims were preempted because granting them would require the court to interfere directly with a matter Congress had expressly committed to the STB. *Id.* at *11-12, 18-19. Accordingly, *Soo Line* does not hold that damages themselves trigger ICCTA preemption. It holds that damages cannot be used to regulate a subject – there, the price and terms of trackage rights – committed to exclusive federal regulation. Indeed, the *Soo Line* court recognized that the preemption inquiry is fact-specific and that ICCTA permits state laws having only a "remote or incidental effect" upon rail transportation. *Id.* at *13. That is the same distinction Plaintiffs have advanced here.

*Kurns*, 565 U.S. 625 (2012) is even further removed as it does not involve ICCTA at all. *Kurns* involved field-preemption under the Locomotive Inspection Act ("LIA"), where controlling

2

Supreme Court precedent had already established that Congress occupied the entire field of locomotive-equipment regulation. *Id.* at 630. The plaintiffs asserted state-law design-defect and failure-to-warn claims directed at asbestos-containing locomotive parts. *Id.* at 628-29. The Supreme Court held those claims preempted because they fell squarely within the federally occupied field of locomotive equipment. Only in that context did the Court observe that a state cannot evade an otherwise categorical field-preemption rule merely by enforcing the same prohibited standard through common-law damages. *Id.* at 635-36. *Kurns* therefore does not eliminate the threshold inquiry that governs here: whether the state-law duty itself falls within the federally preempted subject matter. Plaintiffs do not dispute that damages cannot be used to impose a state requirement that federal law forbids. The dispute is whether Tennessee's generally applicable law governing interference with natural drainage imposes such a requirement in the first place.

## II.    CSXT'S ATTEMPT TO DISTINGUISH *RUSHING* AND *EMERSON* DOES NOT WITHSTAND CAREFUL EXAMINATION OF THOSE DECISIONS.

CSXT asserts that *Rushing v. Kansas City Southern Railway* Co., 194 F. Supp. 2d 493 (S.D. Miss. 2001), is distinguishable because it involved "a discrete noise-abatement berm separate from the operating right-of-way," and that *Emerson v. Kansas City Southern Railway Co.*, 503 F.3d 1126 (10th Cir. 2007), rejected preemption only because the necessary remediation was uncertain. [Dkt. No. 529 at 4–5]. Neither observation eliminates the significance of those cases. *Rushing* is particularly instructive because the court considered two distinct nuisance theories against the same railroad and reached opposite preemption results depending upon what the state-law claim sought to regulate. The plaintiffs alleged that railroad switching operations created excessive noise and vibration. *Rushing*, 194 F. Supp. 2d at 496. They also alleged that an approximately twelve-foot-high earthen berm erected by the railroad altered natural drainage and caused rainwater to

pool on their property. *Id.* The court held that the noise and vibration claims were preempted because they sought to regulate the manner in which the railroad operated its switching yard. But it reached the opposite conclusion regarding the drainage claims. *Id.* at 501. The plaintiffs expressly alleged negligent construction of the berm and sought both monetary damages and an order requiring the railroad to correct the conditions on its property that altered the natural flow and drainage of rainwater. *Id.* Nevertheless, the court held that requiring the railroad to compensate for and correct the resulting drainage problem did not implicate the type of railroad regulation Congress intended ICCTA to preempt. *Id.* The fact that the berm was designed to serve a railroad purpose did not change that result. *Id.* It had been constructed specifically to reflect and absorb noise generated by the switching yard. *Id.* The relevant distinction was not whether the structure belonged to a railroad, but whether application of state law regulated railroad operations. *Id.* That distinction directly addresses CSXT's assertion that the railroad purpose served by the Trace Creek embankment is itself sufficient to require preemption.

The Tenth Circuit subsequently endorsed that very distinction in *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126 (10th Cir. 2007). That court explained that *Rushing* permitted nuisance and negligence claims arising from construction of the earthen berm because the berm's design and construction did not directly regulate switching operations, and it described the holding allowing the railroad to "compensate and correct drainage problems" as being "analogous" to the claims before it. *Id.* at 1130. CSXT's reliance on *Emerson* is misplaced. It is true that the *Emerson* court found the record insufficient to determine what remediation ultimately would be required. *Id.* at 1134. However, that uncertainty supported rejection of the railroad's preemption argument, not acceptance of it. *Id.* The railroad could not establish preemption merely by speculating that remediation might ultimately require alterations to railroad infrastructure. *Id.* CSXT, in this case,

4

commits the same error. Its Reply asserts that a verdict for Plaintiffs would leave "removal or redesign of the embankment as the only logical recourse." [Dkt. No. 529 at 5]. That proposition is not established by the Rule 50 record. Plaintiffs seek no order directing CSXT to lower, relocate, redesign, enlarge, or reconstruct any railroad facility. As *Emerson* confirms, speculation about what future remediation might require does not establish, as a matter of law, unreasonable interference with rail transportation.

### III. 49 C.F.R. § 213.33 DOES NOT COVER THE STATE-LAW DUTY UNDERLYING PLAINTIFFS' NUISANCE CLAIM

CSXT's Reply expands its FRSA argument under 49 C.F.R. § 213.33, now contending that a nuisance claim predicated upon the configuration of CSXT's drainage infrastructure invades an occupied federal field. [Dkt. No. 529 at 5]. But FRSA preemption does not arise merely because a federal regulation and a state-law claim relate generally to the same broad subject. Under the Supreme Court's FRSA jurisprudence, a federal regulation must "cover" the same subject matter as the state requirement, meaning that it must substantially subsume that subject; merely touching upon or relating to the same general subject is insufficient. *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 985-986 (6th Cir. 2004). That claim-specific approach is reflected in the very authorities CSXT cites in its Reply. *See*, e.g., *Ludwig v. Norfolk & Southern Railway Co.*, 50 F. App'x 743 (6th Cir. 2002). *Ludwig* arose from a railroad-crossing collision in which a passenger was killed. *Id.* at 747. The plaintiff alleged that the train operated at excessive speed and that the railroad crossing lacked adequate warning devices. *Id.* at 750. The Sixth Circuit held those particular theories preempted because federal regulations directly governed train speeds and because federally funded warning devices had been installed at the crossing. *Id.* *Ludwig* did not involve drainage, § 213.33, flooding, nuisance, surface-water rights, or an embankment's interference with natural drainage. *Ludwig*,

5

therefore, reinforces the requirement to identify the particular state-law duty and determine whether federal law actually covers it.

Defendant's reference to *Nay v. BNSF Railway Co.*, 2023 U.S. App. LEXIS 23647 (9th Cir. 2023) is similarly misplaced. *Nay* also arose from a railroad-crossing collision. The plaintiffs asserted separate negligence theories based upon failure to sound a horn, inadequate warning devices, and vegetation that obstructed motorists' sightlines. *Id.* at *3. Far from supporting categorical preemption, *Nay* analyzed each theory separately. The court expressly stated that FRSA preemption requires the federal regulation to "cover" the same subject matter and "not merely touch upon or relate to that subject matter." *Id.* at *3 (*citing Shanklin*, 369 F.3d at 985–86). *Nay* held that the horn claim was not preempted. *Id.* The warning-device claim was not preempted under the circumstances. *Id.* And the vegetation claim was preempted only to the extent it concerned vegetation "on or immediately adjacent to" the roadbed – the precise geographic subject addressed by § 213.37. Vegetation outside that federally regulated area remained outside the preempted subject. *Id.* at *3. Nay thus confirms the error in treating the broad concept of "railroad drainage" as the relevant subject matter. The Court must compare § 213.33 with the actual duty Plaintiffs seek to enforce.

*Franklin v. CSX Transportation, Inc.*, 2025 U.S. Dist. LEXIS 113910 (E.D. Ky. June 16, 2025) arose from a CSXT derailment involving hazardous materials. First responders alleged injuries resulting from exposure to sulfur dioxide and asserted numerous negligence theories involving inspection, training, monitoring, operation, transportation, and safety practices. *Id.* at *25. The court concluded that FRSA provided the appropriate preemption framework for claims implicating railroad safety. Importantly, however, it did not hold that all claims related to a federally regulated subject were automatically preempted. The court reiterated that federal

6

regulations must "substantially subsume" the subject matter of the state-law claim. *Id.* Indeed, the court rejected CSXT's preemption argument concerning hot-bearing detectors. Federal regulations addressed overheated wheel bearings, but they did not regulate the particular monitoring method challenged by the plaintiffs. *Id.* The court held that "[t]ouching upon or relating to the same subject matter" was insufficient and distinguished a general duty to use effective bearing monitoring from a duty requiring a specific federally regulated method. *Id.*

The distinction emphasized by *Franklin* supports Plaintiffs' nuisance claim in this case. 49 C.F.R. § 213.33, entitled "Drainage," provides as follows: "Each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." Although the regulation specifically addresses "drainage or other water carrying facilit[ies]" and imposes requirements concerning their maintenance, obstruction, and ability to "accommodate expected water flow," it does not, by its terms, address the broader property-law question whether a railroad embankment may impound, alter, or concentrate the natural flow of surface water and thereby cause an invasion of neighboring property.

Plaintiffs do not contend that CSXT violated § 213.33, that any drainage facility was obstructed, that a culvert was required to have greater capacity, or that CSXT should have employed some different federally regulated drainage design. Tennessee's nuisance rule addresses a different duty: the generally applicable obligation of a landowner not to wrongfully interfere with the natural drainage of surface water onto neighboring property.

*Rooney v. City of Philadelphia*, 623 F. Supp. 2d 644 (E.D. Pa. 2009) is the only case cited in Defendant's Reply that involves both flooding and § 213.33. But its facts demonstrate why it is materially different. In *Rooney,* the plaintiffs alleged that flooding resulted from an artificially

created runoff pattern associated with the railroad tracks and from the failure to clean and maintain drainage facilities, including allegations that mud and railroad ballast clogged storm drains. *Id.* at 648–49. Their expert likewise expressly attributed Plaintiffs' damages to the allegedly negligent construction and maintenance of railroad property. Among other things, he opined that the railroad defendants had "constructed, operated and maintained" the Bridge crossing and adjacent track property that significantly contributed to Plaintiffs' damages, and separately asserted negligent construction of a railroad turnout and failure to maintain the Bridge and adjacent track. *Id.* at 648–49, 658–59. He further opined that stone ballast from the railroad track base washed into and clogged the stormwater collection system, thereby creating the flooding condition. *Id.* at 648–49.

Significantly, the *Rooney* court did not hold that § 213.33 preempts state-law claims whenever railroad property affects the flow of water. Instead, the court examined the particular railroad conditions the plaintiffs claimed were deficient and identified federal Track Safety Standards that it concluded governed those conditions. The court cited 49 C.F.R. §§ 213.59(b) and 213.63 in addressing the plaintiffs' alleged "artificially created runoff pattern"; § 213.31 for the roadbed and immediately adjacent areas; § 213.33 for drainage; § 213.103 for ballast; and § 213.133 for turnouts. *Id.* at 666. Thus, the state-law theories in *Rooney* sought to impose liability based upon the alleged inadequacy of railroad conditions and components that the court found were specifically governed by federal Track Safety Standards. *Id.*

That is not Plaintiffs' nuisance claim here. Plaintiffs do not contend that CSXT negligently constructed or maintained a drainage facility; that mud, debris, or ballast obstructed a drain; that the roadbed or ballast failed to satisfy some state-law standard; that a culvert failed to accommodate expected water flow; or that any federally regulated railroad component should have been designed or constructed differently. Plaintiffs instead invoke Tennessee's generally applicable

8

property-law rule prohibiting a landowner from wrongfully interfering with the natural drainage of surface water. The fact that the existing embankment is the physical instrumentality through which that interference occurred does not transform the nuisance claim into a claim that the embankment was negligently designed or constructed. Nothing in § 213.33 establishes a federal standard governing whether a landowner may impound surface water and subject neighboring property to a concentrated and unnatural discharge. *Rooney*, therefore, confirms rather than undermines Plaintiffs' position: FRSA preemption follows when federal regulations substantially subsume the particular subject matter upon which state-law liability is predicated, not merely because the dispute generally involves water near a railroad.

Indeed, CSXT's own Reply emphasizes that Mr. Rusk found no debris obstruction and that Plaintiffs introduced no evidence that CSXT violated § 213.33. [Dkt. No. 529 at 5]. That point confirms rather than defeats Plaintiffs' position. Plaintiffs are not asking the jury to enforce § 213.33 or impose an alternative federal drainage standard. *Rooney*, therefore, illustrates the distinction: the claims there challenged the condition and performance of federally regulated railroad components; Plaintiffs' nuisance claim does not.

## IV. DEFENDANT'S REPLY CONFIRMS THE CENTRAL DISTINCTION IDENTIFIED IN PLAINTIFFS' OPPOSITION.

Taken together, Defendant's newly cited authorities confirm that preemption turns upon the particular state-law duty being imposed. *Ludwig* involved subjects directly governed by federal regulations; *Nay* applied preemption claim by claim according to the precise scope of the applicable regulation; *Franklin* rejected preemption where federal regulations merely touched upon the general subject of the state-law duty; and *Rooney* involved challenges to railroad conditions and components specifically governed by federal Track Safety Standards. *Soo Line*,

meanwhile, concerned an STB-regulated trackage-rights agreement, and *Kurns* arose under a statute occupying the entire field of locomotive-equipment regulation.

None holds that federal law displaces Tennessee's generally applicable property-law rule governing interference with natural drainage merely because the landowner is a railroad or the structure causing the interference serves a railroad purpose. To the contrary, *Rushing* drew precisely that distinction, holding operational nuisance claims preempted while permitting drainage claims arising from a railroad-created earthen berm to proceed – a distinction *Emerson* subsequently endorsed.

**CONCLUSION**

CSXT's Reply does not identify a federal regulation that substantially subsumes the Tennessee nuisance duty Plaintiffs seek to enforce, nor does it establish that a damages verdict would necessarily prevent or unreasonably interfere with railroad transportation. The Court should deny CSXT's Rule 50 Motion.

Respectfully submitted,

/s/ David C. Landever
Robert Eric Kennedy
David C. Landever
Weisman, Kennedy, and Berris
2900 Detroit Ave, 2nd floor
Cleveland, OH 44113
216-406-8378

Peter J. Flowers
Craig D. Brown
Frank V. Cesarone
Jonathan Mincieli
Meyers & Flowers, LLC
3 N. 2nd Street, Suite 300
St. Charles, IL 60174
(630) 232-6333

10

Timothy V. Potter (BPR #017520)
Andrew E. Mills (BPR #031236)
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, TN 37055
(615) 446-2221

***Attorneys for Plaintiffs***